# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| Ryan Sweeney and Bryan Marshall, as individuals, and on behalf of all others similarly situated, and on behalf of the Nationwide Savings Plan, | CASE NO.   2:20-CV-01569-JLG-CMV |
| Plaintiffs, | AMENDED CLASS ACTION COMPLAINT |
| vs. | |
| Nationwide Mutual Insurance Company; Nationwide Life Insurance Company; and the Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach, | |
| Defendants. | |

## I.    NATURE OF ACTION

1.     This is a civil enforcement action brought pursuant to Sections 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3), for violations of ERISA's fiduciary duty and prohibited transactions provisions. It is brought as a class action by Ryan Sweeney and Bryan Marshall, participants in the Nationwide Savings Plan (the "Plan" or "Savings Plan"), on behalf of all similarly situated participants and beneficiaries in the Savings Plan.

2.     This suit is about Defendants' failure to adhere to governing Plan instruments, the prohibited transfer of employees' retirement savings to Defendants, and the detrimental effect these violations of ERISA had on Plaintiffs' retirement security. Defendants are all fiduciaries and

parties-in-interest to the Savings Plan. When dealing with the Plan and its assets, they were required by ERISA to act prudently, in accordance with governing instruments, solely in the interest of the Plan's participants, and for the exclusive purpose of providing benefits to participants.

3.     ERISA fiduciaries are bound to act with an "eye single" to the interest of the plan participants and beneficiaries to whom they owe a duty. *Chao v. Hall Holding Co.*, 285 F.3d 415, 426 (6th Cir. 2002). Defendants in this case violated that bedrock principle by favoring the economic interests of Nationwide Mutual Insurance Company ("Nationwide") over those of the Plan participants to whom they owe the highest duty.

## II.     JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1).

5.     This Court has personal jurisdiction over Nationwide Mutual Insurance Company because it transacts business in, employs people in, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

6.     This Court has personal jurisdiction over Nationwide Life Insurance Company because it transacts business in, employs people in, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

7.     This Court has personal jurisdiction over the Investment Committee because it transacts business in and has significant contacts with this District, and because ERISA provides for nationwide service of process.

8.     ERISA permits an action in a district where the plan is administered, where the breach took place, or where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2).

9.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because: (1) Defendant Nationwide's headquarters are located in Columbus, Ohio; (2) the Plan is administered in this District; and (3) many of the breaches alleged in the Complaint occurred in this District.

### III.    PARTIES

#### A.    Plaintiffs

10.     Ryan Sweeney ("Plaintiff Sweeney") resides in Rutland, Massachusetts. He was an employee of Nationwide for four years from 2012 until 2016 and is a participant in the Savings Plan. Plaintiff Sweeney's individual account in the Plan was invested in various investment options offered under the Plan's investment menu during the Class Period, including the Guaranteed Investment Fund.

11.     Bryan Marshall ("Plaintiff Marshall") resides in Monrovia, Maryland. He was an employee of Nationwide for 14 years from 2005 until 2019 and is a participant in the Savings Plan. Plaintiff Marshall's individual account in the Plan was invested in various investment options offered under the Plan's investment menu during the Class Period, including the Guaranteed Investment Fund.

12.     Plaintiffs Sweeny and Marshall, like substantially all Savings Plan participants, were not provided any information regarding the substance of deliberations, if any, concerning the Plan's menu of investment options or selection of service providers during the Class Period.

13.     Plaintiffs Sweeny and Marshall otherwise had no knowledge of the substance of the deliberations, or of the nature of the investments to which their Plan accounts were allocated.

14.     Plaintiffs Sweeny and Marshall discovered their claims shortly before commencing this action.

**B.    Defendants**

15.    Every employee benefit plan must provide for one or more named fiduciaries that jointly or severally possess the authority to control and manage the operation and administration of the plan. 29 U.S.C. § 1102(a)(1). Further, a person who functions as a fiduciary is a fiduciary, even if he or she is not named as such, so long as the person exercises any discretionary authority or control over the administration of the plan or any authority or control over the disposition of plan assets. 29 U.S.C. §1001(21)(A).

1.    <u>Defendant Nationwide</u>

16.    Nationwide Mutual Insurance Company ("Nationwide") is an Ohio company with its principal place of business located at One Nationwide Plaza, Columbus, Ohio. Nationwide, by and through its affiliates, is an insurance and financial services companies, focusing on domestic property and casualty insurance, life insurance and retirement savings, asset management and strategic investments.

17.    Nationwide is the Savings Plan Sponsor within the meaning of 29 U.S.C. § 1002(16)(B).

18.    Defendant Nationwide is also a party in interest to the Plan within the meaning of 29 U.S.C. §1002(14) because, among other things, it is an employer whose employees are covered by the Plan.

19.    As it relates to the Plan, Nationwide acts through various agents, including the Human Resources Committee of the Boards of Directors of Nationwide Mutual Insurance Company (the "Board"). The Board is responsible for overseeing Nationwide's human resources, compensation and benefit practices for associates, officers and members of the Boards of Directors.

20.     The Board was granted the power to make appointments to Defendant Benefit Investment Committee ("Investment Committee" or "Investment Committee Defendants"). To the best of Plaintiffs' knowledge based on the available information, the Board appointed the members of the Investment Committee who served during the Class Period. Nationwide's exercise of its authority to appoint the fiduciaries of the Plan also confers functional fiduciary status on the Board Defendants. 29 C.F.R.§ 2509.75-8 (D-4).

21.     The Board was required by the Board's charter to perform annual reviews of fiduciary actions taken by the Investment Committee each year.

22.     Therefore, Defendant Nationwide is also a fiduciary with respect to the Plan within the meaning of 29 U.S.C. § 1002(21)(A) because Nationwide, through its Board and other agents, exercises discretionary authority and control with respect to the Plan and its assets.

2.     <u>Defendant Benefits Investment Committee</u>

23.     Defendant Benefits Investment Committee of the Nationwide Savings Plan is a named fiduciary within the meaning of 29 U.S.C. § 1102(a) with the authority to manage the assets of the Plan.

24.     The Benefits Investment Committee consisted of the following individuals, each of whom were employees of Nationwide or its affiliates and are named as Defendants here:

1)  David Berson was a Senior Vice President and Chief Economist of Nationwide or its affiliate, Nationwide Life;

2)  David LaPaul was a Senior Vice President and Treasurer of Nationwide or its affiliate, Nationwide Life;

3)  Kevin O'Brien was a Senior Vice President and its Chief Financial Officer and Chief Procurement Officer of Nationwide or its affiliate, Nationwide Life;

4) Klaus Diem was a Vice President of Nationwide or its affiliate, Nationwide Life;

5) Michael Mahaffey was a Senior Vice President, Chief Risk Officer, and Chief Strategy and Corporate Development Officer of Nationwide or its affiliate, Nationwide Life;

6) Michael P. Leach was a Senior Vice President and Chief Financial Officer-Property and Casualty of Nationwide or its affiliate, Nationwide Life;

25.     The Benefits Investment Committee and its individual members during the Class Period are collectively referred to as the "**Investment Committee Defendants**."

26.     The Investment Committee Defendants were responsible for periodically selecting and monitoring the investment options available through the Plan during the Class Period.

27.     During the Class Period, the Investment Committee Defendants added and retained several products as investment options for participants in the Plan.

28.     As such, during the Class Period, the Investment Committee Defendants were/are fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A)(i) because they (1) exercised discretionary authority or discretionary control respecting management of the Plan and (2) exercised authority or control respecting management or disposition of its assets.

29.     The Investment Committee Defendants were/are also fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A)(iii) by virtue of their discretionary authority or discretionary responsibility over the administration of the Plan.

3.     <u>Defendant NLIC</u>

30.     Nationwide Life Insurance Company ("NLIC") is a stock life insurance company organized under Ohio law in 1929 and headquartered in Columbus, Ohio. NLIC is owned by

Nationwide Financial Services, Inc. ("Nationwide Financial"), which, in turn, is an indirect subsidiary of Nationwide.

31.     Defendant NLIC is a party in interest to the Savings Plan within the meaning of 29 U.S.C. §1002(14) because, among other things, (1) it is an employer whose employees are covered by the Plan and (2) it is an indirect wholly owned subsidiary of Nationwide, so more than 50% of the total value of shares of all classes of stock of NLIC is owned directly or indirectly, or held by Nationwide.

32.     NLIC does not operate independently of Nationwide and Nationwide is the ultimate controlling person of NLIC.

33.     NLIC is managed as an operating segment of Nationwide rather than as a separate legal entity.

34.     Nationwide prepares combined GAAP financial statements, which includes the financial results of NLIC into Nationwide's own finances.

## IV.     FACTS

### A.     The Savings Plan.

35.     The Savings Plan is a tax-qualified defined contribution pension plan subject to the provisions of ERISA. At all relevant times, the Plan was an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A).

36.     Nationwide is the sponsor of the Savings Plan. As Plan sponsor, Nationwide intended for the Savings Plan to encourage savings and provide retirement income for Nationwide employees and former employees and their beneficiaries.

37.     The Savings Plan covers eligible employees of Nationwide, including all subsidiaries of Nationwide with U.S.-based employees.

38.     The Savings Plan's benefits are funded by participants' voluntary tax-deferred contributions and by employer matching contributions. The Plan is intended to qualify under Internal Revenue Code § 401(k).

39.     Participants in the Savings Plan can direct the investment of all the assets allocated to their respective individual accounts in the Savings Plan into investments selected by Defendants, and the return on those investments is credited to each participant's account. Participants can only invest in the fund options selected for the Savings Plan by the Investment Committee.

40.     The value of each participant's individual account in the Savings Plan depends on contributions made on behalf of each employee by his or her employer, deferrals of employee compensation and employer matching contributions, and on the performance of investment options net of fees and expenses. 29 U.S.C. § 1002(23)(B). Participants pay fees and expenses (both direct and indirect) based on the fund options selected and maintained by the fiduciaries of the Plan.

41.     As of December 31, 2018, the Savings Plan had approximately $5.7 billion in assets and 50,000 participants. Each year, thousands of Nationwide employees and former employees contribute, on average and in the aggregate, over $250 million of their income to the Plan.

42.     The Savings Plan is considered a "mega" plan given its large size. Combined with the investment sophistication of all the Plan fiduciaries and their unique access to information, the Plan and its fiduciaries have enormous bargaining power to receive superior investment products and services at extraordinarily low cost.

**B.      The Plan Document**

43.     Every plan, including the Savings Plan, must be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1).

44.     The Savings Plan is and was established and maintained pursuant to the written instrument titled Nationwide Savings Plan (herein, the "Plan Document").

8

45. ERISA requires that fiduciaries with respect to the Plan discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III." 29 U.S.C. § 1104(a)(1)(D).

46. The Plan Document provides that "[t]he payment of any expenses not eligible to be paid by Plan assets shall be paid by the Plan Sponsor, which is also responsible for funding the Employer Matching Contributions specified in Section 4.01."

47. The Plan Document specifies that expenses not eligible to be paid by Plan assets include "contract charges under the insurance contract related to the guaranteed investment fund available to Participants as an investment option under the Plan."

### C. Plan Fiduciaries Selected and Retained the Guaranteed Fund in Breach of their Duties to Participants.

48. The Investment Committee selected and maintained the Guaranteed Investment Fund ("Guaranteed Fund") as an investment option for the Plan. Defendants' conduct in connection with the Guaranteed Fund impaired Plaintiffs' retirement security while providing Nationwide enormous profits and billions of dollars to be used for its own business purposes.

49. Defendants were required by the Plan Document and ERISA to pay the expenses associated with the Guaranteed Fund but failed to do so, harming Plaintiffs and participants.

50. The Guaranteed Fund is the single largest investment in the Savings Plan. As of December 31, 2018, $1.7 billion or 30% of the Plan's assets were invested in the Guaranteed Fund.

51. To the best of Plaintiffs' knowledge based on the available information, approximately $1 billion of the Savings Plan's assets were transferred to the Guaranteed Fund over the past six years.

52.     The Guaranteed Fund is a benefit-responsive group annuity contract between the Savings Plan and NLIC. Through this group annuity contract, participants' contributions to the Guaranteed Fund are transferred to and maintained in NLIC's general account. The Plan's assets invested in NLIC's general account are credited a periodic rate of return and charged for participant withdrawals and contract expenses.

53.     Nationwide, by and through NLIC, provides custodial, actuarial, investment and accounting services. Nationwide, by and through NLIC, is compensated for such services through contract charges

54.     Each year, Nationwide, by and through NLIC, sets a rate of return and credits interest to Guaranteed Fund investors based on a crediting rate set by NLIC.

55.     NLIC's general account assets are subject to claims by its creditors and are subject to the liabilities arising from any of its businesses.

56.     The assets within NLIC's general account include corporate bonds, high yield "junk" bonds, common stocks, and mortgage-backed securities.

57.     NLIC's ability to satisfy its obligation to the Savings Plan is subject to its financial strength and claims-paying ability. There is a risk that NLIC may default on its obligations to the Savings Plan.

1.     The Crediting Rate for the Guaranteed Fund is Improperly Reduced.

58.     Each quarter, Nationwide, by and through NLIC, sets the "crediting rate" for the Guaranteed Fund. The crediting rate is an annualized rate of return that NLIC will credit to the Savings Plan's investment in its general account. For instance, Nationwide, by and through NLIC, set the annualized crediting rate for the Plan at 3.07% for the period starting January 1, 2020 and

ending March 31, 2020. For that quarter, NLIC will assume the Plan's investment in the Guaranteed Fund grew at an annualized rate of 3.07%.

59. The group annuity contract between NLIC and the Savings Plan does not specify what the crediting rate that will be paid to the Savings Plan. Instead, Nationwide, through NLIC, sets the crediting rate that will be paid to the Savings Plan.

60. The following table describes the annual crediting rates that Nationwide, by and through NLIC, set for the Savings Plan from 2012 to 2019.

| Nationwide Savings Plan Crediting Rates | |
|---|---|
| Year | Rate |
| 2019 | 3.14% |
| 2018 | 3.09% |
| 2017 | 3.08% |
| 2016 | 3.30% |
| 2015 | 3.35% |
| 2014 | 3.59% |
| 2013 | 4.05% |
| 2012 | 4.36% |

61. In the absence of a guaranteed monthly annuity like that available to traditional pension plan participants, Savings Plan participants rely on the crediting rate to grow their retirement assets to provide enough savings for retirement.

   a)  The Cost of, and Expenses Associated with, the Guaranteed Fund are Excessive and Improperly Imposed.

62. NLIC provides services to the Savings Plan under the insurance contract related to the Guaranteed Fund, including custodial, actuarial, investment and accounting services.

63. Nationwide, by and through NLIC, is compensated through contract charges for its services to the Savings Plan.

64. █████████████████████████████████████

████████████████████████████████████████

65. █████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████

66. █████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

67. █████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

68. █████████████████████████████████████

██████████████████████████

| Nationwide Savings Plan Crediting Rates | | | |
|---|---|---|---|
| Year | Crediting Rate | Rate Owed | Lost Retirement Savings |
| ███ | ███ | ███ | ███ |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

69.     Nationwide, by and through NLIC, credits higher rates of return to certain retirement plans that are not under its control. During the Class Period, Nationwide offered a product to unaffiliated retirement plans that guaranteed a minimum crediting rate of 3.5%. The Savings Plan would have earned tens of millions in additional retirement savings had Nationwide crediting the Savings Plan a minimum of 3.5% during the Class Period.

70.     As a result of the foregoing, Nationwide controlled all aspects of the Savings Plan's investment in the Guaranteed Fund and the compensation it earned. It controlled the compensation and actions of the Investment Committee Defendants; it controlled the actions of the Savings Plan's service provider, NLIC; and it controlled the amount of compensation it would earn from the Guaranteed Fund.

71.     ████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████

72. 

73.

## V.      CLASS ALLEGATIONS

74.     Plaintiffs bring this action on behalf of the following Class:

> All participants and beneficiaries in the Nationwide Savings Plan from March 26, 2014 through the date of judgment. Any individual Defendants are excluded from the class.

75.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1) and/or (b)(3).

76.     **Numerosity.** The Class satisfies the numerosity requirement because it is composed of thousands of persons. The Plan currently has approximately 50,000 participants. The number of Class members is so large that joinder of all its members is impracticable.

77.     **Commonality.** As to the members of the Class, this case presents numerous common questions of law and fact, among them:

(a)     Whether the Investment Committee Defendants were and are ERISA fiduciaries responsible for selecting, retaining, removing and monitoring the Plan investments;

(b)     Whether Nationwide is and was an ERISA fiduciary for exercising discretionary authority and control over the management of the Savings Plan.

(c)     Whether the Investment Committee Defendants breached their ERISA fiduciary duties in monitoring or failing to monitor the investment options in the Plan during the Class Period;

(d)     Whether the Nationwide and the Investment Committee Defendants caused the Plan to engage in multiple prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106, throughout the Class Period;

(e)     Whether Nationwide was required by the Plan Document and 29 U.S.C. § 1104(a)(1)(D) to pay the expenses stemming from the Guaranteed Fund;

(f)     Whether the Plan and its participants suffered losses as a result of Defendants' fiduciary breaches and prohibited transactions.

78.     **Typicality.**  Plaintiffs' claims are typical of the claims of the Plan Class because (a) to the extent that Plaintiffs seek relief on behalf of the Plan pursuant to § 502(a)(2) of ERISA their claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other Class Member; (b) to the extent that Plaintiffs seeks equitable relief, that relief would affect all Class Members equally; all of the Class members were injured and continue to be injured in the same manner by the alleged breaches of fiduciary duty. Plaintiffs have no interests that are antagonistic to the claims of the Class. They understand that this matter cannot be settled without the Court's approval.

79.     **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous representation of the Class. Plaintiffs retained counsel, Cohen Milstein Sellers and Toll PLLC ("Cohen Milstein"), who is experienced in class action and ERISA litigation, and Plaintiffs have no interests antagonistic to or in conflict with the interests of the Class.

80.     Plaintiffs' counsel has agreed to advance the costs of the litigation contingent upon the outcome. Counsel are aware that no fee can be awarded without the Court's approval.

81.     A class action is the superior method for the fair and efficient adjudication of this controversy. Joinder of all members of the Class is impracticable. The losses suffered by some of

the individual members of the Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights.

82.     Moreover, the fiduciary defendants to the Savings Plan named herein were and are obligated to treat all Class members similarly because ERISA imposes uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Plaintiffs are unaware of any difficulty in the management of this action as a class action.

83.     The Class may be certified under Rule 23(b).

A.      **Rule 23(b)(1) requirements.**  As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants, or (B) adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.      **Rule 23(b)(2) requirements**. Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, the challenged conduct at issue— Defendants' investment of plan assets and improper use thereof—not only can be, but must be, enjoined or declared unlawful only as to all of the Class members or as to none of them. Because the focus of Plaintiffs' claims is on Defendants' actions, and because the relief

sought is equitable plan-wide relief, there are simply no individual issues. The requirements for Rule 23(b)(2) certification are plainly met.

C.      **Rule 23(b)(3) requirements**.  This action is suitable to proceed as a class action under Rule 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter.

## VI.     CAUSES OF ACTION

### Count I
Breach of Fiduciary Duties in Violation of ERISA § 404, 29 U.S.C. § 1104
(Against Investment Committee and Nationwide)

84.     Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

85.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires plan fiduciaries to act "solely in the interest" of plan participants and beneficiaries.

86.     Subsection (A) of this section requires that the fiduciary act for the "exclusive purpose" of providing benefits to plan participants and defraying reasonable expenses of plan administration. 29 U.S.C. § 1104(a)(1)(A).

87.     Subsection (B) adds the duty of prudence, requiring a plan fiduciary to act with the "care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

88.     Subsection (D) of this section further requires that the fiduciary act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III." 29 U.S.C. § 1104(a)(1)(D).

89.     ERISA's duty of prudence required the Investment Committee Defendants to follow reasonable standards of investment due diligence by giving appropriate consideration to those facts and circumstances that, given the scope of their fiduciary investment duties, they knew or should have known were relevant to the particular investments of the Plan, and then to act accordingly. 29 C.F.R. § 2550.404a-1. Such facts and circumstances include Nationwide's obligation and failure to pay expenses associated with the Guaranteed Fund.

90.     ERISA's duty of loyalty required that Nationwide and the Investment Committee Defendants avoided using the Savings Plan's assets for its own purposes. *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Michigan*, 722 F.3d 861, 868–69 (6th Cir. 2013)*. The duty of loyalty operates similarly to the prohibited transaction restrictions discussed in Count II, which provide an absolute bar against self-dealing, but is "undeniably broader." *Id.*

91.     As set forth in detail above, the Investment Committee Defendants breached all of these fiduciary duties by, *inter alia*:

      a.     ██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████;

      b.     ██████████████████████████████████████████████████████
████████████████

    c.   ██████████████████████████████████████

██████████████ .

92.     As set forth in detail above, the Nationwide breached these fiduciary duties by, *inter alia*:

    a.   Failing to reimburse the expenses associated with the Guaranteed Fund as required by the Plan Document;

    b.   Dealing with the Savings on terms that were beneficial to Nationwide at the expense of employees' retirement savings;

    c.   Earning compensation that was prohibited by ERISA's prohibition against self-dealing.

93.     As a direct and proximate result of the above breaches of fiduciary duties, the Savings Plan and its participants have suffered millions of dollars of losses in retirement assets, for which all Defendants named in this Count are jointly and severally liable.

94.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

95.     ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

96.     Pursuant to ERISA §§ 502(a)(2) and 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiffs seek all available and appropriate remedies against Nationwide and the Investment Committee Defendants to redress violations of 29 U.S.C. § 1104 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

97.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

98.     Pursuant ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against the Nationwide and the Investment Committee Defendants to redress the violations of 29 U.S.C. § 1104 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

**Count II**
Violations of ERISA § 406(a), 29 U.S.C. § 1106(a) for
Engaging in Prohibited Transactions
(Against Investment Committee Defendants, NLIC, and Nationwide)

99.     Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

100.    ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), prohibits fiduciaries from causing plans to engage in transactions that that they know or should know constitute direct or indirect furnishing of goods, services, or facilities between the plan and a party in interest.

101.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits fiduciaries from causing plans to engage in transactions that that they know or should know constitute direct or indirect transfers of the Plans' assets to, or use of the Plans' assets by or for the benefit of, parties in interest.

102.   NLIC is a party in interest to the Plan because, among other things, it is an employer of employees in the Plan. 29 U.S.C. § 1002(14)(C).

103.   The Investment Committee Defendants, among other Defendants, caused the Plan to engage in multiple party-in-interest transactions, by causing the Plan to repeatedly transfer property (i.e., the Plan's assets) to NLIC's general account.

104.   The Investment Committee Defendants, among other Defendants, caused the Plan to engage in multiple party-in-interest transactions, by causing the Plan to repeatedly benefit NLIC because NLIC used the Plan's assets to earn various forms of compensation and support its business operations.

105.   Each transfer by the Plan of the Plan's assets to NLIC during the Class Period constituted a separate violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

106.   The Investment Committee Defendants, among other Defendants, caused the Plan to engage in multiple party-in-interest transactions, by causing the Plan to periodically continue, authorize, and/or renew its service engagement with NLIC.

107.   Each periodic transaction by the Plan to during the Class Period constituted a separate violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C).

108.   As an affiliate of the Investment Committee, a party-in-interest employer of the Plan, and a corporate insider, NLIC had knowledge of all facts relevant to its transactions with the Plan.

109.   NLIC keeps detailed financial records which would show the transfer of assets from the Plan to NLIC and internal flows of money within its general account.

110.   Nationwide is a party in interest to the Plan because, among other things, it is an employer of employees in the Plan. 29 U.S.C. § 1002(14)(C).

111.    The Investment Committee Defendants, among other Defendants, caused the Plan to engage in multiple party-in-interest transactions with Nationwide, by causing the Plan to repeatedly transfer assets to NLIC that were used to compensate Nationwide and support Nationwide's business operations.

112.    Each use of the Savings Plan's assets through the Guaranteed Fund to compensate to Nationwide during the Class Period constituted a separate violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

113.    Nationwide keeps detailed financial records which would show the financial relationship and flow of assets between NLIC and Nationwide.

114.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

115.    ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

116.    Pursuant to ERISA §§ 502(a)(2) and 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiffs seek all available and appropriate remedies against the Investment Committee Defendants and Nationwide to redress violations of 29 U.S.C. § 1106 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

117.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

118.    Pursuant ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against the Investment Committee Defendants, NLIC, and Nationwide to redress the violations of 29 U.S.C. § 1106 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

**Count III**
Violations of ERISA §406(b), 29 U.S.C. § 1106(b)
(Against Investment Committee, NLIC, and Nationwide**)**

119.    Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

120.    ERISA § 406(b), 29 U.S.C. § 1106(b) prohibits fiduciary self-dealing.

121.    Subsection (1) provides that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).

122.    Subsection (3) provides that a fiduciary shall not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3).

123.    Nationwide and Investment Committee Defendants made decisions about the investment of the Plan's assets in ways that benefitted themselves or were in their own self-interest because : (a) Nationwide received many direct and indirect fees and other compensation from the Plan's investment in Guaranteed Fund; (b) affiliates were provided assets that were used for business functions; and/or (c) upon information and belief, the Investment Committee Defendants

were all Nationwide executives whose compensation and promotion levels increased when they acted to increase revenue for Nationwide.

124.     Nationwide's and Investment Committee Defendants' decisions based on Nationwide's and their own self-interest violated ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

125.     As a direct and proximate result of the above violations of ERISA §§ 406(b)(1), 29 U.S.C. §§ 1106(b)(1), the Plan and its participants have suffered millions of dollars of losses in retirement assets, for which all Defendants named in this Count are jointly and severally liable.

126.     Further, Nationwide, a fiduciary with respect to the Savings Plan with ultimate control over the Plan and NLIC, received compensation through NLIC in connection with the Guaranteed Fund. As a result, a fiduciary (Nationwide) received consideration for its own account from a party dealing with the Plan (NLIC) in connection with a transaction involving the assets of the Savings Plan.

127.     As a direct and proximate result of the above violations of ERISA §§ 406(b)(3), 29 U.S.C. §§ 1106(b)(3), the Plan and its participants have suffered millions of dollars of losses in retirement assets, for which all Defendants named in this Count are jointly and severally liable.

128.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

129.     ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall

be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

130.    Pursuant to ERISA §§ 502(a)(2) and 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiffs seek all available and appropriate remedies against Nationwide and Investment Committee Defendants to redress violations of 29 U.S.C. § 1106(b) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

131.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

132.    Pursuant ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against Investment Committee Defendants, Nationwide, and NLIC to redress the violations of 29 U.S.C. § 1106(b) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

**Count IV**
Violations of ERISA §403(c)(1), 29 U.S.C. § 1103(c)
(Against Investment Committee, NLIC, and Nationwide**)**

133.    Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

134.    ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1) provides that the "assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

135.    NLIC is an employer of employees in the Plan.

136.    Nationwide is an employer of employees in the Plan.

137.   Savings Plan assets were transferred out of the Plan's trust into the general account of NLIC.

138.   NLIC used the Plan's assets held within its general account for its own purposes and to benefit itself and Nationwide, by, *inter alia*, (a) earning compensation from the Savings Plan's assets; (b) retaining for their own uses returns earned with the Savings Plan's assets in NLIC's general account; (c) imposing higher costs on the Savings Plan's assets than were permitted by the Plan Document and ERISA; and (d) expanding NLIC's risk pool while exposing the Plan to credit risk of a singly company.

139.   ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

140.   Pursuant ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against all Defendants named in this Count to redress the violations of 29 U.S.C. § 1103 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

## VII.   <u>PRAYER FOR RELIEF</u>

Plaintiffs, on behalf of the Savings Plan and the Class, respectfully requests that the Court award the following relief for all Counts:

141.   A declaration that the Investment Committee Defendants and Nationwide have breached their fiduciary duties to the Class in the manner described herein;

142.   Order each fiduciary found to have breached his/her/its fiduciary duty to the Plan to jointly and severally pay such amount or surcharge to the Plan as is necessary to make the Plan

whole for any losses which resulted from said breaches, plus pre-judgement and post-judgment interest;

143.    Order that all fiduciaries and parties-in interest disgorge and pay to Plan participants any profits obtained from violations of 29 U.S.C. § 1103, 1104, or 1106;

144.    Order Nationwide to reimburse the Savings Plan contract charges it was obligated to but failed to pay on behalf of the Savings Plan;

145.    Order Defendants to provide all accountings necessary to determine the amounts Defendants must remit to the Plan under 29 U.S.C. § 1109(a) to restore losses and any profits fiduciaries obtained from the use of Plan assets or other violations of 29 U.S.C. § 1103, 1104, or 1106;

146.    To the extent necessary, issue an injunction or order creating a constructive trust into which all ill-gotten gains, fees and/or profits paid to any of the Defendants in violation of ERISA shall be placed for the sole benefit of the Plan and its participants and beneficiaries.  This includes, but is not limited to, the ill-gotten gains, fees and/or profits paid to any of the Defendants that have been wrongly obtained as a result of breaches of fiduciary duty or prohibited transactions or other violations of ERISA;

147.    Issue an injunction requiring Nationwide to pay all contract charges stemming from the Guaranteed Fund;

148.    Issue an injunction removing the fiduciaries who have breached their fiduciary duties their roles as fiduciaries for the Plan, and an order appointing an independent fiduciary to manage the assets of the Plan;

149.    Issue an injunction requiring all fiduciaries to avoid all prohibited transactions and future ERISA violations, including but not limited prohibited profiting through the Guaranteed Fund from the Plan;

150.    An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

151.    An award of Plaintiffs' attorneys' fees, expenses and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

152.    An order awarding, declaring or otherwise providing Plaintiffs and the Class any other appropriate equitable relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems just and proper.

October 5, 2020                         Respectfully submitted,

                                        /s/ Eric H. Zagrans
                                        Eric H. Zagrans (OH #0013108)
                                        **ZAGRANS LAW FIRM LLC**
                                        5077 Waterford Drive, Suite 302
                                        Elyria, Ohio 44035
                                         (216) 771-1000 (telephone)
                                        eric@zagrans.com (e-mail)

                                        **Cohen Milstein Sellers & Toll PLLC**
                                        Karen Handorf (admitted *pro hac vice*)
                                        Michelle C. Yau (admitted *pro hac vice*)
                                        Scott M. Lempert (admitted *pro hac vice*)
                                        Daniel R. Sutter (admitted *pro hac vice*)
                                        1100 New York Ave. NW ● Fifth Floor
                                        Washington, DC 20005
                                        (202) 408-4600

                                        ***Attorneys for Plaintiffs***