IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RYAN SWEENEY ET AL.,** | Case No. 2:20-CV-1569 |
| Plaintiffs, | |
| v. | Judge Graham |
| **NATIONWIDE MUTUAL INSURANCE COMPANY ET AL.,** | Magistrate Judge Vascura |
| Defendants. | |

**OPINION AND ORDER**

Plaintiffs Ryan Sweeney and Bryan Marshall ("Plaintiffs") bring this putative class action asserting violations of the Employment Retirement Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. 1001 *et seq*. This action is before the Court on Defendants' motion to dismiss, Doc. 41, and Plaintiffs' motion to exclude, Doc. 48. For the reasons stated below, Plaintiffs' motion to exclude is **GRANTED IN PART** and Defendants' motion to dismiss is **DENIED**.

**I. Background**

**A. Factual Background**

At the center of Plaintiffs' lawsuit is the Nationwide Savings Plan ("the Plan"). The Plan is a tax-qualified defined contribution pension plan available to eligible employees of Nationwide Mutual Insurance Company ("Nationwide Mutual") and subsidiaries of Nationwide Mutual with U.S.-based employees. Doc. 26 at 7. The Plan is sponsored by Nationwide Mutual Insurance and managed by the Benefits Investment Committee ("BIC"). Doc. 26 at 4-5. The BIC is comprised of employees of Nationwide and its affiliates (collectively "the BIC Defendants").[1] Doc. 26 at 5.

---

[1] The Complaint alleges the BIC is comprised of David Berson, Senior Vice President and Chief Economist of Nationwide or its affiliate, Nationwide Life; David LaPaul, Senior Vice President

1

The Plan is intended to encourage saving and provide retirement income for Nationwide employees, former employees, and their beneficiaries. Doc. 26 at 7. Plan participants do so by making tax-deferred contributions which are matched by their employer. Doc. 26 at 8. This money is allocated to a Plan participant's individual account. Doc. 26 at 8. Plan participants have some control over how the assets in their individual accounts are invested. Doc. 26 at 8. They can choose among the fund options selected by the BIC. Doc. 26 at 8.

The most popular Plan investment option is the Guaranteed Investment Fund. Doc. 26 at 9. The Guaranteed Investment Fund is a benefit-responsive group annuity contract between the Plan and Nationwide Life Insurance Company ("Nationwide Life"). Doc. 26 at 10. Nationwide Life is owned by Nationwide Financial Services, Inc., an indirect subsidiary of Nationwide Mutual. Doc. 26 at 6-7. Contributions to the Guaranteed Investment Fund are transferred to and maintained in Nationwide Life's general account. Doc. 26 at 10. Nationwide Life invests the assets in its general account.

The Plan is credited a percentage of its investment in the Guaranteed Investment Fund as the assumed growth on investment. Doc. 26 at 10. This percentage is called a crediting rate. Doc. 26 at 11. The crediting rate is set annually by Nationwide Mutual through Nationwide Life. Docs. 26 at 10; 41-2 at 9. The crediting rates were as follows:

| Year | Rate |
|---|---|
| 2019 | 3.14% |

and Treasurer of Nationwide Mutual or its affiliate, Nationwide Life; Kevin O'Brien, Senior Vice President and Chief Financial Officer and Procurement Officer of Nationwide Mutual or its affiliate, Nationwide Life; Klaus Diem, Vice President of Nationwide Mutual or its affiliate, Nationwide Life; Michael Mahaffey, Senior Vice President, Chief Risk Officer and Chief Strategy and Corporate Development Officer of Nationwide Mutual or its affiliate, Nationwide Life; and Michael P. Leach, Senior Vice President and Chief Financial Officer-Property and Casualty of Nationwide Mutual or its affiliate, Nationwide Life. Doc. 26 at 5-3

| | |
|---|---|
| 2018 | 3.09% |
| 2017 | 3.08% |
| 2016 | 3.30% |
| 2015 | 3.35% |
| 2014 | 3.59% |
| 2013 | 4.05% |
| 2012 | 4.36% |

Doc. 26 at 11. For comparison, Defendants offered another entity a retirement plan with a guaranteed minimum crediting rate of 3.5%. Doc. 26 at 13.

Nationwide Life provides custodial, actuarial, investment, and accounting services to the Plan related to the Guaranteed Investment Fund. Doc. 26 at 11. In return, Nationwide Life compensates itself by reducing the credit otherwise owed to the Plan. Doc. 26 at 12. The amount of compensation is not dictated by contract. Doc. 26 at 12. Instead, Nationwide Mutual determines the amount of compensation it will earn. Doc. 26 at 12. Nationwide Life is also compensated for the opportunity cost of having to set aside money to meet its contracted-for guaranteed obligations. Doc. 26 at 12. This opportunity cost charge is ▓%. Doc. 26 at 12.

Defendants hired Callan, an investment consulting firm, to examine the Guaranteed Investment Fund. Doc. 26 at 13. Callan noted that "fees are an important component of the analysis of any investment product" but that "our analysis has no line of sight to the spread of the Guaranteed Fund." Docs. 26 at 13; 55-1 at 11. Callan concluded that "the Plan could eliminate the Guaranteed [Investment] Fund." Docs. 16 at 14; 55-1 at 26.

3

### B. Procedural Background

Plaintiffs filed the present putative class action on January 26, 2020. Doc. 1. They then filed an amended complaint on October 5, 2020. Doc. 26. The putative class consists of the participants and beneficiaries of the Plan from March 26, 2014 through the date of judgment. Doc. 26 at 14. Plaintiffs' amended complaint alleges that four provisions of ERISA were violated: (1) the fiduciary duties listed in 29 U.S.C. § 1104 (Claim I); (2) the prohibited transactions listed in 29 U.S.C. § 1106(a) (Claim II); (3) the prohibited transactions listed in 29 U.S.C. § 1106(b) (Claim III); and (4) the prohibition of assets of the plan inuring to the benefit of the employer in 29 U.S.C. § 1103(c) (Claim IV).

As for Claim I, Plaintiffs allege that the BIC Defendants breached fiduciary duties by:

a. Maintaining the Guaranteed [Investment] Fund on unreasonable terms considering the Guaranteed [Investment] Fund's performance relative to those realized by other investors in [Nationwide Life's] general account; [Nationwide Mutual's] obligation and failure to pay expenses associated with the Guaranteed [Investment] Fund; and their inherent conflict;

b. Failing to seek reimbursement of expenses from Nationwide Mutual associated with the Guaranteed [Investment] Fund; [and]

c. Permitting prohibited transfers of [] Plan assets to [Nationwide Life], from which Nationwide [Mutual] profited.

Doc. 26 at 18-19. Plaintiffs allege that Nationwide Mutual breached its fiduciary duties by:

a. Failing to reimburse the expenses associated with the Guaranteed [Investment] Fund as required by the Plan Document;

b. Dealing with the Savings on terms that were beneficial to Nationwide [Mutual] at the expense of employees' retirement savings; [and]

c. Earning compensation that was prohibited by ERISA's prohibition against self-dealing.

Doc. 26 at 19.

As for Claim II, Plaintiffs allege that the BIC Defendants, Nationwide Life, and Nationwide Mutual engaged in transactions between the Plan and a party in interest in violation of 29 U.S.C. § 1106(a) by causing the Plan to transfer Plan assets to Nationwide Life's general account, by causing the Plan to benefit Nationwide Life by permitting Nationwide Life to use Plan assets to earn compensation and support its business operations, by causing the Plan to continue, authorize, and renew the service agreement with Nationwide Life, and by causing the Plan to transfer assets to Nationwide Life that were used to compensate Nationwide Mutual and support Nationwide Mutual's business. Doc. 26 at 20-22.

As for Claim III, Plaintiffs allege that the BIC defendants, Nationwide Life, and Nationwide Mutual engaged in transactions between the Plan and a fiduciary in violation of 29 U.S.C. § 1106(b) by making decisions on the investment of Plan assets in self-interested ways and Nationwide Mutual's receipt of compensation through Nationwide Life in connection with the Guaranteed Investment Fund. Doc. 26 at 23-24.

As for Claim IV, Plaintiffs allege that the BIC, Nationwide Life, and Nationwide Mutual had plan assets inure to the benefit of Nationwide Life and Nationwide Mutual, employers of employees in the Plan, in violation of 29 U.S.C. § 1103(c). Doc. 26 at 25-26

Defendants filed a motion to dismiss all of Plaintiffs' claims on November 5, 2020. Doc. 41. Attached to their motion to dismiss are declarations of Dustin M. Koenig and John M. Towarnicky. The declaration of Dustin M. Koenig contained a copy of the group annuity contract at issue in this case, a copy of the enrollment guide provided to employees eligible to participate in the Plan, copies of annual disclosures, and a copy of an excerpt from Nationwide Life's Annual Statement filed for the year ended December 31, 2019.

On December 11, 2020, Plaintiffs filed a response to Defendants' motion to dismiss and a motion to exclude. Docs. 46, 48. In their motion to exclude, Plaintiffs request the Court to exclude from consideration all exhibits attached to Defendants' motion to dismiss except for the copy of the group annuity contract. Doc. 48. Defendants filed a reply to their motion to dismiss and a response to Plaintiffs' motion to exclude on January 8, 2021. Docs. 55, 57. Defendants withdrew Towarnicky's declaration and, in their reply brief, attached the Callan Report, disclosures provided by Nationwide Life to the Plan, and the Plan as amended and restated on January 1, 2019. Doc. 57 at 3, 55-1 at 1-2. The reply brief also directed the Court's attention to a website called MissionSquare Plus Fund. Doc. 55 at 29 n.10. Plaintiffs filed their reply to the Motion to Exclude on January 22, 2021, requesting that the Court also exclude the exhibits attached to Defendants' reply brief. Doc. 60.

## II.     Motion to Exclude

The Court must first determine whether the items attached to Defendants' motion to dismiss and reply brief may be considered. Courts reviewing a motion to dismiss are generally limited to the complaint and the exhibits attached thereto. *See Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997); Fed. R. Civ. P. 12(d). However, courts may consider public records and items in the record of the case. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). Courts may also consider items attached to a motion to dismiss, but only if those items are "referred to in the [c]omplaint and are central to the claims contained therein." *Id*. (citation omitted). These items should only "fill[] in the contours and details of the plaintiff's complaint . . . ." *Yeary*, 107 F.3d at 445. They may not generally be used to add new information. *Id.* This is not to say that a defendant facing definitively false allegations may not obtain relief through a motion to dismiss. "If a written instrument plainly contradicts the

6

pleadings, the instrument trumps the allegations." *Jones v. Select Portfolio Servicing, Inc.*, 672 F. App'x 526, 531 (6th Cir. 2016) (internal quotation and citation omitted). This evidence may be considered for the truth of the matter asserted only if it is not subject to reasonable dispute. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

Defendants want the Court to consider seven documents: (1) the group annuity contract; (2) the enrollment guide provided to employees eligible to participate in the Plan; (3) Annual disclosures provided by Nationwide Life to the Plan pursuant to 29 C.F.R. § 2550.401c-1(c)(4) for the periods of May 1, 2013 to April 30, 2020; (4) an excerpt from Nationwide Life's statutory annual statement filed with state departments of insurance for the year ended December 31, 2019; (5) the Callan report; (6) documents related to initial and separate disclosures provided by Nationwide Life to the Plan pursuant to 29 C.F.R. § 2550.401c-1(c)(3), and (7) the Plan as amended and restated on January 1, 2019.[2]

Of these documents, only three are both referenced in the amended complaint and central to Plaintiffs' claims – the group annuity contract, the Callan report, and the Plan as amended and restated on January 1, 2019. The only additional document the Court may consider on the pending motion to dismiss is Nationwide Life's statutory annual statement filed with state departments of insurance. While not referenced in the amended complaint and arguably not central to Plaintiffs' claims, this annual statement is a public record. No other document presented can be considered on the pending motion to dismiss.

---

[2] Defendants also request the Court to judicially notice information located at https://www.icmarc.org/prebuilt/static/funds/profile/70710450.html. Defendants have not shown that the accuracy of this information cannot be reasonably questioned. Accordingly, the Court declines to take judicial notice of the information contained within the website.

Plaintiffs additionally ask the Court to decline to consider the Callan Report and the Plan as amended and restated January 1, 2019 because Defendants presented those documents in their reply brief to their motion to dismiss. Doc. 60 at 10. Plaintiffs are correct that courts generally refuse to consider new evidence and arguments presented in reply briefs. *See Abraitis v. United States*, No. 1:11-CV-2077, 2012 WL 2885586, at *1 (N.D. Ohio July 13, 2012). To do otherwise would generally deprive the moving party of an opportunity to respond. However, Plaintiffs were afforded and, in fact, exercised the opportunity to respond to the new evidence in their reply brief to their motion to exclude. Therefore, it is appropriate for the Court to consider the Callan Report and Plan as amended and restated January 1, 2019.

Thus, the Court will consider the group annuity contract, the Callan report, the Plan as amended and restated January 1, 2019, and the annual statement filed with the state departments of insurance in deciding Defendants' motion to dismiss.

### III. Motion to Dismiss Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a claim must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted).

### IV. Motion to Dismiss Analysis

Defendants move for dismissal on three grounds: (1) the alleged violations involving plan assets are meritless because the assets in Nationwide Life's general fund were not plan assets; (2) Plaintiffs inadequately pleaded a claim of wrongful and excessive compensation; and (3) the defense in 29 U.S.C. § 1108(b)(5) defeats the alleged violations of 29 U.S.C. § 1106(a) and (b).

**A. The Existence of Plan Assets**

Defendants first argue that several of Plaintiffs' claims fail because the assets paid by the Plan and placed into Nationwide Life's general account, as well as the proceeds earned on those assets, do not constitute plan assets for purposes of ERISA. Doc. 41-1 at 16-17. More specifically, Defendants move for dismissal of the portions of Claim I which allege breaches of the duty of prudence and loyalty as well as the portions which allege self-dealing; the prohibited transactions claim in Claim III; and the anti-inurement claim in Claim IV.[3] Doc. 41-1 at 22-23.

Defendants' argument is based on a safe harbor provided to transition policies. A transition policy is a "policy or contract of insurance . . . that is issued by an insurer to, or on behalf of, an employee benefit plan on or before December 31, 1998, and which is supported by the assets of the insurer's general account. 29 C.F.R. § 2550.401c-1(h)(6)(i). When a plan has acquired a transition policy, "the plan's assets include the Transition Policy, but do not include any of the underlying assets of the insurer's general account . . . ." 29 C.F.R. § 2550.401c-1(a)(2). Defendants argue that the Guaranteed Investment Policy is a transition policy and therefore the assets

---

[3] Defendants argue for the first time in their reply brief that the anti-inurement claim also fails because "Plaintiffs have failed to adequately plead that the amounts received were excessive or unreasonable." Doc. 55 at 33. The Court finds that Defendants waived this argument by raising it only on their reply brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

9

Nationwide Life collects from the Plan cease being "plan assets" when they enter Nationwide Life's general account. *See* Doc. 41-1 at 21-22.

But Defendants put the cart before the horse. The safe harbor applies only if certain conditions are met. First, the insurer must have made certain initial disclosures. 29 C.F.R. § 2550.401c-1(c)(3), (d). Second, the insurer must make certain annual disclosures. 29 C.F.R. § 2550.401c-1(c)(4). Third, where the Transition Policy is issued by an issuer wholly owned by the employer that maintains the employee benefit plan, the statutory immunity from the prohibited transactions rules set forth in 29 U.S.C. 1108(b)(5) must apply. 29 C.F.R. § 2550.401c-1(b)(2)(ii). Finally, the policy must have certain termination procedures. 29 C.F.R. § 2550.401c-1(e). Defendants attempt to show that they satisfy these conditions by attaching documents to their motion to dismiss and reply brief. As already explained in this opinion, it is inappropriate for the Court to consider the disclosures at this stage. Therefore, the Court cannot now determine whether Defendants are entitled to the safe harbor and does not reach the issue of what, if any, impact the safe harbor has on Plaintiffs' claims.

### B. Pleading Adequacy of Fiduciary Duty Claim

Under ERISA, fiduciaries are required to act:

> Solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104(a)(1)(A)-(D). The Sixth Circuit has broken down ERISA's fiduciary duties into three parts:

10

> The first is a "duty of loyalty" pursuant to which "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" The second obligation imposed under ERISA, the "prudent man" obligation, imposes "an unwavering duty" to act both "as a prudent person would act in a similar situation" and "with single-minded devotion" to those same plan participants and beneficiaries. Finally, an ERISA fiduciary must "act for the exclusive purpose" of providing benefits to plan beneficiaries.

*Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995) (quotation and internal citations omitted).

Defendants moved to dismiss parts of Claim I, asserting that the complaint fails to adequately plead a breach of fiduciary duty related to excessive compensation under 29 U.S.C. § 1104(a)(1)(A)-(B). The three specific allegations within Claim I on which Defendants move are: (1) that the BIC breached its fiduciary duties by "permitting prohibited transfers of [Plan] assets to [Nationwide Life], from which Nationwide profited[;]" (2) that Nationwide Mutual breached its fiduciary duties by "dealing with the [Plan] on terms that were beneficial to Nationwide [Mutual] at the expense of employees' retirement savings[;]" and (3) that Nationwide Mutual breached its fiduciary duties by "[e]arning compensation that was prohibited by ERISA's prohibition against self-dealing." Docs. 41-1 at 26.

Two issues are implicated by Defendants' argument: (1) the construction of Claim I and (2) the pleading requirements for Claim I.

1. *Construction of Claim I*

Defendants construe the at-issue portions of Claim I as allegations that Defendants were paid excessive compensation. Doc. 41-1 at 22. Plaintiffs object to this characterization. Doc. 46 at 32. Plaintiffs explain that Claim I presents breach of fiduciary duty claims premised on Defendants' self-interested decision making process. *See* Doc. 46 at 32. The assertions of excess compensation, Plaintiffs posit, is merely "circumstantial evidence" of this flawed process. Doc. 46 at 32.

The Court is persuaded by Plaintiffs' interpretation of its amended complaint. The amended complaint asserts outright that "Defendants in this case violated [the bedrock principle of acting solely in the interest of the plan participants and beneficiaries] by favoring the economic interests of [Nationwide Mutual] over those of the Plan participants . . . ." Doc. 26 at 2. This statement sets the tone of the amended complaint, which then generally alleges that Nationwide Mutual influenced Nationwide Life and the BIC to take actions involving the Plan, including setting crediting rates and fees, with an eye towards benefiting Nationwide Mutual. This context makes clear that the at-issue assertions in Claim I are general allegations that the BIC and Nationwide Life breached their fiduciary duties by making decisions in a self-interested manner.

Thus, the Court construes the at-issue portions of Claim I as asserting (1) that BIC permitted transfers of Plan assets to Nationwide Life with the intention of profiting Nationwide Mutual; (2) that Nationwide Mutual's dealings with the Plan were intended to benefit Nationwide Mutual; and (3) that Nationwide Mutual earned compensation which resulted from its self-interested actions.

2. *Pleading Adequacy*

Defendants assert that even if the at-issue portions of Claim I are not premised on excessive compensation, those allegations are still insufficient because the amended complaint does not allege procedural imprudence and the amended complaint does not allege facts sufficient to show that "an adequate investigation would have revealed to a [hypothetical] prudent fiduciary that the investment at issue was improvident." Doc. 55 at 15.

Defendants' first argument relies on an improperly narrow construction of Plaintiffs' complaint. It is true that Plaintiffs do not state in their amended complaint that the process Defendants utilized to make decisions was flawed. But the amended complaint does generally

12

allege that Defendants made decisions to benefit Nationwide Mutual, which is prohibited by ERISA. In doing so, Plaintiffs adequately allege that Defendants' decisions were procedurally imprudent because they were based on self-interested considerations.

Defendants' second argument is also meritless. Defendants correctly assert that where a claim of disloyalty is premised on a claim of imprudence, the disloyalty claim fails if the imprudence claim is inadequately pled. Doc. 29 at 20; *see Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 824 (8th Cir. 2018). But the at-issue portions of Claim I center around allegations of self-dealing, not necessarily allegations that Defendants acted otherwise imprudently. Plaintiffs assert that the structure of control was such that the BIC and Nationwide Life, the two entities which created the Guaranteed Investment Fund, are under the influence of Nationwide Mutual. Plaintiffs believe that this structure resulted in Defendants making self-interested decisions, such as setting crediting rates lower than those offered to unaffiliated plans. Plaintiffs further support their belief by claiming that when the BIC hired Callan, an investment consultant, to provide fee benchmarking for the Guaranteed Investment Fund, they failed to provide the consultant all of the necessary information. Doc. 26 at 13. [4] This is enough to adequately plead a breach of fiduciary duty claim.

### C. Pleading Adequacy of Prohibited Transactions Claims

Plaintiffs assert in Claims II and III that Defendants engaged in transactions prohibited by 29 U.S.C. § 1106(a) and (b). Doc. 26 at 20-25. Defendants posit that Plaintiffs' allegations are

---

[4] The Callan report explained that "fees are an important component of the analysis of any investment product" but that "our analysis has no line of sight to the spread of the Guaranteed Fund." Doc. 26 at 13. Defendants assert that "[t]his benign observation does not suggest that any of the Defendants actually refused to provide Callan with 'spread' (that is, compensation) information . . . ." Doc. 55 at 17. The Court concludes that a reasonable inference can be made from the Callan report that Defendants refused to provide such information.

13

insufficient because the affirmative defense in 29 U.S.C. § 1108(b)(5) applies and provides an exemption to those prohibited transactions. Doc. 41-1 at 29-30. In other words, Defendants take the position that because an affirmative defense exists, Plaintiffs had the duty of pleading adequate facts to show that the affirmative defense does not apply. *See* Doc. 41-1 at 29-30.

Defendants are wrong. Courts may grant motions to dismiss "where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (citation omitted). 29 U.S.C. § 1108(b)(5) requires, among other things, that the plan pay no more than adequate consideration to the insurer. Plaintiffs' amended complaint does not assert facts which conclusively establish that the Plan pays no more than adequate consideration. Therefore, Defendants have not shown that Claims II and III fail as a matter of law.

## V. Conclusion

For the above reasons, Plaintiffs' motion to exclude, Doc. 48, is **GRANTED IN PART** and Defendants' motion to dismiss, Doc. 41, is **DENIED**.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: March 18, 2022