COHENMILSTEIN

January 3, 2023

The Honorable Chelsey M. Vascura
United States District Court
Southern District of Ohio

    Re:    *Sweeney et al. v. Nationwide Mut. Ins. Co. et al.*, No. 2:20-cv-01569 (S.D. Ohio)

Dear Judge Vascura:

Pursuant to Your Honor's December 2, 2022 Order (ECF 96), Plaintiffs submit this position statement regarding certain remaining disputes relating to Defendants' ESI searches.

### Background

As previously discussed, Defendants did not provide their proposed ESI custodians and search terms until November 21, 2022, nearly seven months after Plaintiffs served their Requests for Production. *See* ECF 98-1 at PageID #3278-83 (outlining Defendants' proposed searches). Plaintiffs then provided Defendants with a proposed supplemental set of search parameters on November 23, consisting of five additional custodians and nine additional searches. *Id.* at PageID #3284-89 (last two pages attached as Exhibit A). The parties met and conferred on November 28, but Defendants would not agree to any of the supplemental custodians or search terms in advance of the December 1 hearing. Following the Court's Order, the parties again met and conferred on December 7. The parties have now reached agreement on most of the supplemental custodians (subject to further negotiation regarding Alan Stalnacker), but have not reached agreement on supplemental searches. Of the nine supplemental searches that Plaintiffs proposed, Defendants have only agreed to one and have not even responded to Plaintiffs' most recent compromise proposals. The eight disputed supplemental searches are addressed below.

**Searches that Defendants Categorically Refuse to Conduct (Supplemental Searches 1, 2 & 5)**
Defendants' proposed search terms did not include any searches relating to: (i) the fees and expenses charged in connection with the Guaranteed Fund, (ii) the profits (*i.e.*, margin or "spread") to Nationwide in connection with the Fund, or (iii) the investment of the Fund's assets in Nationwide's general account (or pools or cells within the general account) and associated risks. To remedy this oversight, Plaintiffs proposed Supplemental Searches 1, 2, and 5. *See* Exhibit A. However, Defendants still have refused to conduct any ESI searches of this nature (or to produce any documents outside of the ESI search process relating to these subjects). This is prejudicial for the reasons stated in Plaintiffs' letter brief on November 3, 2022, as further elaborated upon in their pending Rule 56(d) motion. *See* ECF 98 at 14-17. Plaintiffs' investment expert, Richard Kopcke, has opined that "all of this information would be useful for purposes of analyzing the Guaranteed Fund and assessing whether it is an appropriate investment for the Plan." ECF 98-2, at ¶ 36; *see also id.* ¶¶ 25(a)-(b), 28, 41-48. The Plan's investment consultant, Callan LLC, also has emphasized the importance of fees and the spread to its investment analysis, objecting that it had "no line of sight" into these matters. *See* ECF 98 at 4, 14-15. Moreover, aside from the relevance to the fiduciary investment analysis, the fees charged to the Plan and the spread retained by Nationwide are relevant to Defendants' asserted prohibited-transaction exemption under 29 U.S.C. § 1108(b)(5) (which requires them to show that "the Plan pays no more than adequate consideration" to Nationwide) and the Transition Policy safe harbor under 29 C.F.R. § 2550.401c-1 (which requires compliance with 29 U.S.C. § 1108(b)(5)). *See* ECF 98 at 16-17.

**Searches Defendants Rejected as Overbroad with No Counterproposal (Searches 3, 6 & 7)**
Defendants' searches also contain other fundamental deficiencies. For example, Defendants only included two searches relating to the Plan's investment committee (known as the Benefits Investment Committee or BIC), which is a named Defendant in this action, and neither of those searches are tied to the Guaranteed Fund that is the subject of the lawsuit. *See* ECF 98-1 at PageID #3281.  Similarly, Defendants omitted to include any search terms relating to the potential removal, replacement, or withdrawal of the Guaranteed Fund from the Plan (or associated concerns about liability exposure). Further, Defendants omitted to include searches relating to guaranteed minimum interest rates for the Guaranteed Fund.  To remedy these deficiencies, Plaintiffs proposed supplemental searches 3, 6, and 7, respectively.  Defendants rejected these proposed searches as overbroad, but did not make a counterproposal. Instead, Defendants asked Plaintiffs to unilaterally narrow these searches. Plaintiffs then offered to narrow the searches as follows:

> **Supplemental Search 3:** ("benefits investment committee" OR "investment committee" ~~OR committee~~ OR BIC) AND ("guaranteed investment fund" OR "guaranteed fund" OR "guaranteed investment contract" OR "guarantee fund" OR "group annuity contract" OR GIF OR GF OR GIC OR GAC ~~OR 401k OR "401(k)"~~ OR captive ~~OR plan~~)
> **Supplemental Search 6:** (remov! OR replac! OR withdraw! OR liab! OR expos!) AND ("guaranteed investment fund" OR "guarantee fund" OR "guaranteed fund" ~~OR "guaranteed investment contract" OR "group annuity contract"~~ OR GIF OR GF ~~OR GIC OR GAC~~)
> **Supplemental Search 7:** ("guaranteed minimum interest rate" or "guaranteed interest rate!" OR GMIR) & ("guaranteed investment fund" OR "guaranteed fund" ~~OR "guaranteed investment contract"~~ OR "guarantee fund" ~~OR "group annuity contract"~~ OR GIF OR GF ~~OR GIC OR GAC~~ OR "Nationwide Savings Plan" OR NSP ~~OR 401k OR "401(k)"~~ OR captive ~~OR plan~~)

However, Defendants have not agreed even to these narrowed searches. The relevance of the first two searches (Searches 3 and 6) is self-evident. Supplemental Search 7 is also relevant based on the expert testimony of Mr. Kopcke, who has opined that "crediting rate minimums" are an important consideration for any guaranteed investment product. ECF No. 98-2, at ¶¶ 25(e), 28.

**Searches that Defendants Have Excessively Narrowed (Supplemental Searches 4 & 8)**
Finally, the parties have been unable to reach agreement on Supplemental Searches 4 and 8. Because of the central importance of the Guaranteed Fund to this case, Plaintiffs believe that "Guaranteed Fund" should be included as a standalone search term in Search 8. But Defendants will only agree to include the policy numbers associated with the Fund (L941 or APO-3243) as standalone terms. As a compromise, Plaintiffs offered to include "Guaranteed Fund" as a standalone term only for BIC members. However, Defendants have not agreed to this compromise.

With respect to Search 4 relating to Callan, Defendants seek to restrict this term as follows:

> Callan AND ("benefits investment committee" OR BIC OR "investment committee" ~~OR committee~~ OR "guaranteed investment fund" OR "guaranteed fund" OR "guarantee fund" OR "guaranteed investment contract"~~ OR "group annuity contract" OR GIF OR GF OR GIC OR GAC OR "stable value" OR 401k OR "401(k)" OR captive~~ OR plan~~).

Plaintiffs are willing to agree to many of these restrictions as a compromise, but seek to re-include the synonymous terms "GIF", "GF", "GIC" or "GAC", and also "captive" as a term of art. Nationwide referred to its in-house benefits plans as "captive" plans, and Defendants agreed to include the word "captive" in Supplemental Search 9. Moreover, based on documents already provided, Nationwide frequently referred to its "Guaranteed Fund" simply as a "GIC." *See, e.g.*, ECF 98-1, Ex. 27 (reports from a Nationwide affiliate referring to Guaranteed Fund as the "GIC").

Respectfully Submitted,

Kai Richter

cc: Defendants' counsel of record (via email)