## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Ryan Sweeney and Bryan Marshall, as individuals, and on behalf of all others similarly situated, and on behalf of the Nationwide Savings Plan, | CASE NO.   2:20-CV-01569-JLG-CMV |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| Nationwide Mutual Insurance Company; Nationwide Life Insurance Company; and the Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach, | |
| Defendants. | |

## <u>MOTION</u>

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Ryan Sweeney and Bryan Marshall (collectively "Plaintiffs") hereby move this Court for entry of an Order: (i) certifying this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1), or alternatively 23(b)(3); (ii) appointing Plaintiffs as Class Representatives; and (iii) appointing Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Zagrans Law Firm LLC as Class Counsel pursuant to Fed. R. Civ. P. 23(g). The proposed Class is defined as follows:

> All participants and beneficiaries in the Nationwide Savings Plan who were invested in the Guaranteed Fund at any time from March 26, 2014 through the date of final judgment in this action, excluding the individual Defendants.

This Motion is based on **(1)** the accompanying Memorandum of Law; **(2)** the contemporaneously-filed Declarations of Kai H. Richter, Eric Zagrans, Ryan Sweeney, and Bryan Marshall (and exhibits thereto); **(3)** the materials previously filed by the parties in connection with Defendants'

Motion for Summary Judgment, Plaintiffs' Motion Under Fed. R. Civ. P. 56(d) to Defer

Consideration of Defendants' Motion for Summary Judgment (or Alternatively, Deny the Motion),

and Plaintiff's Motion to Compel Discovery; **(4)** the Amended Class Action Complaint (ECF 34);

**(5)** the arguments of counsel; and **(6)** all other files, records, and proceedings in this action.

Plaintiffs have met and conferred with Defendants regarding the motion, and have been advised

that Defendants are unwilling to stipulate to class certification.

Dated: January 31, 2023                                  Respectfully submitted,

*s/ Eric H. Zagrans*
Eric H. Zagrans (OH #0013108)
    *Trial Attorney*
**ZAGRANS LAW FIRM LLC**
1640 Roundwyck Lane
Columbus, Ohio 43065-8416
Telephone: (440) 452-7100
Email: eric@zagrans.com

Michelle C. Yau (admitted *Pro Hac Vice*)
Kai H. Richter (admitted *Pro Hac Vice*)
Daniel R. Sutter (admitted *Pro Hac Vice*)
Eleanor Frisch (admitted *Pro Hac Vice*)
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
krichter@cohenmilstein.com
dsutter@cohenmilstein.com
efrisch@cohenmilstein.com

<u>**MEMORANDUM IN SUPPORT**</u>

**INTRODUCTION**

Plaintiffs bring this motion for class certification to provide participants in the Nationwide Savings Plan ("NSP" or "Plan") the same opportunity for class-wide relief that is typically granted to 401(k) plan participants in other cases involving ERISA claims for breaches of fiduciary duty and prohibited transactions. Under ERISA, plan participants have an express statutory right to bring suit in a representative capacity on behalf of a retirement plan. *See* 29 U.S.C. §§ 1132(a)(2), 1109. "[B]ecause ERISA § 502(a)(2) breach of fiduciary duty claims are derivative in nature, such claims 'are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class….'" *Yost v. First Horizon Nat. Corp*, 2011 WL 2182262, at *13 (W.D. Tenn. June 3, 2011) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)); *see also Dudenhoeffer v. Fifth Third Bancorp*, 2016 WL 9343955, at *2 (S.D. Ohio July 11, 2016). This Court and other courts in the Sixth Circuit and elsewhere have repeatedly granted class certification in ERISA breach of fiduciary duty cases such as this. *See, e.g.*, *Shanehchian v. Macy's, Inc*., 2011 WL 883659 (S.D. Ohio Mar. 10, 2011); *Shirk v. Fifth Third Bancorp*, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008); *Iannone v. AutoZone, Inc.*, 2022 WL 5432740, at *14 (W.D. Tenn. Aug. 12, 2022), *report and recommendation adopted*, 2022 WL 17485953 (W.D. Tenn. Dec. 7, 2022); *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018); *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009); *accord Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *10-12 (S.D. Ohio Feb. 18, 2021) (approving class certification for purposes of settlement).[1] Indeed, other defendants have *stipulated* to class

_____

[1] *See also, e.g., Falberg v. Goldman Sachs Grp., Inc.*, 2022 WL 538146 (S.D.N.Y. Feb. 14, 2022), *leave to appeal denied sub nom. Goldman Sachs 401(k) Plan Ret. Comm. v. Falberg*, 2022 WL 4126112 (2d Cir. June 29, 2022); *Beach v. J.P. Morgan Chase Bank, Nat'l Ass'n*, 2019 WL

1

certification for litigation purposes in similar cases. *See, e.g.*, *McGinnes v. FirstGroup Am., Inc.*, No. 1:18-cv-00326, ECF 92 (S.D. Ohio Sept. 8, 2022) (order approving stipulation).[2]

Although Defendants swim against the tide and resist class certification here, they have no reasonable basis for challenging the relevant Rule 23 criteria. As discussed below: (1) there were tens of thousands of Plan participants during the class period who invested in the at-issue Guaranteed Fund ("GF" or "Fund"); (2) Plaintiffs are typical of those participants, as they likewise participated in the Plan and invested in the GF, and assert typical claims on behalf of the Plan as a whole; (3) there are common issues regarding, *inter alia*, whether Defendants breached their fiduciary duties and engaged in prohibited transactions under ERISA; and (4) Plaintiffs and their counsel are adequate to represent the class. Further, certification under Rule 23(b)(1) is necessary to: (A) avoid creating incompatible standards of conduct for Defendants with respect to the management of the Plan (which must be administered uniformly under ERISA); and (B) protect the interests of absent class members, since adjudication of Plaintiffs' claims on an individual basis

---

2428631 (S.D.N.Y. June 11, 2019); *Fuller v. SunTrust Banks, Inc.*, 2018 WL 3949698 (N.D. Ga. June 27, 2018); *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017); *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149 (N.D. Cal. July 26, 2017); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017); *Sims v. BB&T Corp.*, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678 (C.D. Cal. June 15, 2017); *Brotherston v. Putnam Invs., LLC*, No. 1:15-cv-13825, ECF 88 (D. Mass. Dec. 8, 2016); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559 (D. Minn. 2014) (all granting class certification in ERISA cases involving proprietary funds affiliated with the plan sponsor).

[2] *See also Turner v. Schneider Elec. Holdings, Inc.*, No. 1:20-cv-11006, ECF 72 (D. Mass. Aug. 27, 2021); *Reetz v. Lowe's Cos., Inc.*, No. 5:18-cv-00075, ECF 97 (W.D.N.C. Nov. 5, 2020); *Moitoso v. FMR LLC*, No. 1:18-cv-12122, ECF 83 (D. Mass. May 7, 2019); *Velazquez v. Mass. Fin. Servs. Co.*, No. 1:17-cv-11249, ECF 94 (D. Mass. June 25, 2019); *Cates v. Trs. of Columbia Univ. in the City of N.Y.*, No. 1:16-CV-06524, ECF 210 (S.D.N.Y. Nov. 8, 2018); *Pledger v. Reliance Tr. Co.*, No. 1:15-cv-4444, ECF 101 (N.D. Ga. Nov. 7, 2017); *Feinberg v. T. Rowe Price Grp., Inc.*, No. 1:17-cv-00427, ECF 77-3 (D. Md. May 1, 2019); *In re GE ERISA Litig.*, No. 1:17-cv-12123, ECF 138 (D. Mass. Dec. 13, 2019); *accord Baker v. John Hancock Life Ins. Co.*, No. 1:20-cv-10397, ECF 53, at 1 (D. Mass. Feb. 12, 2021) (noting that "Defendants do not oppose Plaintiffs' motion for class certification").

would be dispositive of the interests of other class members. Accordingly, Plaintiffs respectfully request that the Court grant their motion for class certification.

**FACTUAL BACKGROUND**

**I.     The Nationwide Savings Plan**

The NSP is a 401(k) deferred compensation plan sponsored by Nationwide Mutual Insurance Company ("Nationwide Mutual") for its employees and those of its affiliates. ECF 87 ("Defs.' SJ Mot."), Page.ID 1299. As of December 31, 2021, the Plan had approximately $8.2 billion in assets and 43,000 participants, making it one of the largest 401(k) plans in the country. *See* Declaration of Kai Richter in Support of Motion for Class Certification ("Richter Decl."), Ex. 1, at 2, 19, 29-30, 36.

Nationwide Mutual appoints the members of the Plan's Benefits Investment Committee ("BIC") through its Board of Directors. *See* ECF 87-1, App. 1 ("Plan Document") ¶ 1.12, Page.ID 1331; ECF 74 ("Answer") ¶¶ 19-20, Page.ID 1224. The BIC is responsible for oversight of the Plan's investments, and has the responsibility to select and monitor the various investment options offered to Plan participants. Defs.' SJ Mot., Page.ID 1298-99. This is a fiduciary role. *See* Plan Document ¶ 12.02(a)(i), Page.ID 1388. Under the governing Plan Document and applicable law, the BIC and its members must act "for the exclusive benefit of the Participants or their beneficiaries." *Id.* ¶ 15.03, Page.ID 1398; ECF 92-6 ("LaPaul Aff.") ¶ 3, Page.ID 2932-33; *see also* 29 U.S.C. § 1104(a)(1). They are also responsible for ensuring that "plan assets are properly invested, and plan expenses are reasonable." Richter Decl. Ex. 2, at NMIC_001833; *see also id.* Ex. 3, at Callan_NTWD0004628 (BIC's criteria for selecting and monitoring investment options should ensure that "expense levels … are reasonable and competitive"); *id.* Ex. 4, at Callan_NTWD0008557 (stating that one of the "Key Functions of a DC Plan Fiduciary" in "managing DC plan investments" is to "Monitor and Benchmark Plan Fees"); ECF 116-2

("Kopcke Decl.") ¶ 42, Page.ID 5535 ("The Department of Labor specifically instructs that one of the responsibilities of retirement plan fiduciaries is '[p]aying only reasonable plan expenses'").

## II.    The Guaranteed Fund

The GF is one of the investments that the BIC has selected and retained for the Plan. Answer ¶ 48, Page.ID 1229. The GF is a type of guaranteed investment contract, or "GIC", whereby an insurance company promises to pay the investor a specified interest rate and to guarantee the return of the investor's principal. Kopcke Decl. ¶¶ 13, 21, Page.ID 5524, 5527. During the relevant period, tens of thousands of Plan participants had their account assets invested in the GF. *See, e.g.*, Richter Decl. Ex. 5 (52,029 participants as of Dec. 31, 2016); *id.* Ex. 6 (37,980 participants as of June 30, 2022).

The GF is provided by a Nationwide Mutual affiliate—Nationwide Life Insurance Company ("Nationwide Life"). Defs.' SJ Mot., Page.ID 1299. The GF is supported by an annuity contract issued by Nationwide Life, and Plan assets that are invested in the GF are transferred to Nationwide Life. *Id.* This type of self-dealing arrangement is "uncommon in [a] 401(k) plan." Richter Decl. Ex. 7, at Callan_NTWD0003926. As the Plan's investment consultant, Callan LLC ("Callan"), noted, the Fund is "unique in that it is a guaranteed fund managed and guaranteed by an insurance company who is also the plan sponsor." *Id.*

Monies invested through the GF are not held in a segregated trust account; instead, they are transferred to Nationwide Life's general account, then used and reinvested at Nationwide Life's own discretion, including "for the conduct of its routine business activities," such as salaries and rent. Answer ¶ 52, Page.ID 1230; ECF 92-2 ("Schley Aff.") ¶ 4, Page.ID 2650; ECF 92-3 ("Shaw Aff."), App. 1, at Page.ID 2683. Thus, participants are exposed to materially higher credit risk than traditional stable value funds. *See* Kopcke Decl. ¶ 45, Page.ID 5536; LaPaul Aff. App.

2, at Page.ID 2982.[3] This also makes the GF an unusual choice for the Plan, as stable value funds are more than ten times more prevalent in 401(k) plans than fixed annuity products like the GF. *See* LaPaul Aff. App. 2, at Page.ID 2980.

Each quarter, Nationwide Life declares an interest rate, or crediting rate, that it will apply to assets invested in the Guaranteed Fund. Schley Aff. ¶ 5, Page.ID 2650. This credited rate is uniform to all class members. The crediting rate is not set by contract, but rather is "declared by" Nationwide Life entirely at its discretion. ECF 116-1, at Page.ID 5329. In this regard, the notion that the Fund is a "guaranteed fund" is somewhat of a misnomer.

In practice, Nationwide Life arrives at the crediting rate for the Fund by calculating a rate of return for the portion of its general account assets which it decides to assign to the Fund's asset pool, then deducting various charges in order to compensate itself. Shaw Aff. App. 1, at Page.ID 2677-78; Kopcke Decl. ¶¶ 22-23, 33-34, Page.ID 5527-28, 5532-33. The expenses that Nationwide Life charges to the GF are *not* limited to out-of-pocket costs and include "the costs of maintaining the… Fund, investment expenses, risk and profit charges, taxes, the cost of subsidizing interest rates for other contracts which are part of the same investment option… and the cost of maintaining adequate surplus to support the… Fund." Shaw Aff. App. 1, at Page.ID 2677; Answer ¶ 66, Page.ID 1233 ("Defendants admit that Nationwide Life Insurance Company... deducts from the investment yield, as part of determining the interest crediting rate, a cost of capital charge, ████ ████████████████████████████"). This presents an opportunity for Nationwide Life to increase its profits (and, indirectly, those of Nationwide Mutual as its parent company) by manipulating its allocation of costs. *See* Kopcke Decl. ¶ 23, Page.ID 5528.[4]

---

[3] The "risk exposure" is particularly acute because the GF is affiliated with the Plan sponsor. *See* LaPaul Aff. App. 2, at Page.ID 2982.

[4] As an indirect subsidiary of Nationwide Mutual, Answer ¶ 30, Page.ID 1226, Nationwide Life is

### III. Defendants' Wrongful Conduct

As previously noted, Defendants have withheld a significant amount of discovery from Plaintiffs relating to the fees and expenses of the GF, the "spread" between the earnings that Nationwide Life received on general account assets assigned to the Fund and the amount it paid as the crediting rate, the manner in which Fund assets were invested, the crediting rate offered by Nationwide Life to other GIC investors, and other matters. *See* ECF 116 ("Pls.' 56(d) Motion"); ECF 111 ("Pls.' Mot. to Compel"). But even at this juncture, there is significant class-wide evidence of fiduciary wrongdoing by Defendants in the course of managing the Plan and monitoring the Plan's investment in the Fund. *See infra* at § III.A-B. Moreover, aside from Plaintiffs' breach of fiduciary duty claims under 29 U.S.C. § 1104, there are serious class-wide questions regarding whether Defendants are subject to strict liability for engaging in prohibited self-dealing under 29 U.S.C. § 1106, and allowing assets of the Plan to inure to the benefit of Nationwide Mutual and its affiliates in violation of 29 U.S.C. § 1103(a).

### A. Failure to Monitor the Guaranteed Fund

During the class period, the BIC held periodic meetings relating to the Plan and its investments. However, the pertinent meeting minutes and materials contain very little information relating to the GF, and lack information regarding the Fund's expenses, the reasonableness of such expenses, and other important information that an investment fiduciary would typically consider.

---

ultimately controlled by Nationwide Mutual and operates to the benefit of Nationwide Mutual. *See* https://www.sec.gov/files/nationwide-life-insurance-company-101719.pdf (Nationwide Life attesting to the SEC that "[Nationwide Life] is a member of a group of companies ultimately controlled by Nationwide Mutual" and that "the Mutual Companies and NFS prepare and manage their respective combined and consolidated financial information by aggregating financial information for each operating segment recorded across multiple legal entities (*i.e.*, their respective subsidiaries.)").

*See* Kopcke Decl. ¶ 39, Page.ID 5534. There is no evidence in these meeting minutes and materials that the BIC adequately considered and investigated the Plan's investment in the GF. *Id.*

By contrast, the BIC thoroughly reviewed all other Plan investment options and documented these reviews. For example, Nationwide engaged Callan to conduct a "Fee Review" of the Plan's investments, Richter Decl. Ex. 4, but the GF was exempted from this Fee Review and no fee information was reported for the GF, *id.* at Callan_NTWD0008561. The BIC also received quickly reports ███████████████████████████████████

███████████████████ *See, e.g.*, ECF 116-1, at Page.ID 5484, 5495. On these quarterly reports,

██████████████████████████████████████████████████

███████████████. *Id*. The GF thus received special treatment as the only investment option not evaluated or compared to a benchmark or peers. This selective monitoring process contravened accepted fiduciary standards, *see* Kopcke Decl. ¶ 39, Page.ID 5534, and indeed, the standards that the BIC set for itself in its own Investment Policy Statement, which called for the BIC to consider performance and expense information for "**each** investment option." Richter Decl. Ex. 3, at CALLAN_NTWD0004629 (emphasis added).

### B. Obstruction of Callan's Efforts to Monitor the Guaranteed Fund and Nationwide's Compensation

Defendants' independent investment consultant (Callan) has expressed ongoing concern about the Guaranteed Fund's fees, expenses, and risks. In late 2016, Defendants engaged Callan to conduct an independent review of the Plan's investment options. *See* ECF 116-1, at Page.ID 5342-5358. Brianne Weymouth—the senior Callan executive in charge of Callan's review, *see id.* at 5356-57—emailed Joseph Burke, Nationwide Mutual's Director of Benefits Planning, with "a few additional questions on the Guaranteed Fund that came out of our committee review." *Id.* at 5423. These questions included:

1. Is it possible to get the spread, or average spread declared across the company?[5]
2. Is there historical data on the reference benchmark fixed income index or the interest rate basis from the rate calculation? If so, we would like to review that.
3. Is historical quarterly asset allocation data available for the general account? If so, please share as much data as is feasible.
4. Does the fund contribute anything to plan administration expenses?

*Id.* Burke replied that there would likely be "difficulty getting some of the details." *Id.* Defendants never provided the requested information about the spread and expenses to Callan. *Id.* at 5425. Thus, in its February 2017 presentation to the BIC, Callan noted that "[f]ees are an important component of the analysis of any investment product" but that its "analysis has no line of sight to the spread on the Guaranteed Fund" and that "fees are not reflected in this analysis." LaPaul Aff. App. 2, at Page.ID 2982. Despite having incomplete information, Callan concluded that "the Plan could eliminate the Guaranteed Fund." *Id.* at 2997.

History repeated itself in February 2020, a month before this lawsuit commenced. Brianne Weymouth emailed Robert Watts—Nationwide's Associate Vice President of Benefits Planning— again requesting fee information regarding the Fund including its "spread, or target spread, if available"' and "crediting rate formula, if any." ECF 116-1, at Page.ID 5429. Watts ignored this part of Callan's request. *Id.* at 5428. Following Defendants' refusal to provide transparency into the GF in 2020, Callan reiterated that (1) "[f]ees are an important component of the analysis of any investment product," (2) its "analysis has no line of sight to the spread on the Guaranteed Fund," and (3) "fees are not reflected in this analysis." *Id.* at 5292. Callan further advised the BIC to consider "capping participants' contributions to the Guaranteed Fund" due to the Fund's lack of "fee transparency" and risk profile. *Id.* at 5454.

---

[5] "Spread" refers to the difference between general account returns and the credited rate, and generally reflects compensation to the insurer.



after

the Callan presentations indicated that the BIC "could eliminate the Guaranteed Fund" or "cap[] participants' contributions into the Guaranteed Fund," *see supra* at 8, the BIC shielded the GF from Callan's review completely. In 2021, the BIC and Callan signed an amendment to their contract "[t]o reflect the fact that the Nationwide Benefits Investment Committee does not wish to

9

have [Callan] analyze or present any information with respect to the guaranteed fund investment option… or stable value alternatives available in the marketplace." Richter Decl. Ex. 8. **Defendants backdated this amendment, which was signed in 2021 after Plaintiffs filed their complaint, to be effective November 21, 2019**. *Id.* As a result, Callan's 2021 review of the Plan's investment lineup notes, "per the client's instruction, this report does not offer analysis relating to [the GF] option or stable value alternatives." Richter Decl. Ex. 9, at NMIC_005568.

## VI.   Plaintiffs and their Plan-Wide Claims on Behalf of the Class

Plaintiffs Ryan Sweeney and Brian Marshall ("Plaintiffs") participated in the Plan and were invested in the GF during the proposed class period, Sweeney Decl. ¶¶ 2-3; Marshall Decl. ¶¶ 2-3 (collectively, "Pls.' Decls."), and Plaintiff Marshall remains a participant in the Plan, Marshall Decl. ¶ 2. Plaintiffs bring this action on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2), and seek to recover plan-wide relief under 29 U.S.C. § 1109(a). *See* ECF 34 ("Am. Compl.") ¶¶ 1, 94-96, 114-16, 128-30, at Page.ID 156, 174-75, 177, 179-80.[6] In their Amended Complaint, Plaintiffs assert claims against Defendants for breaches of fiduciary duty under 29 U.S.C. § 1104 (Count 1); prohibited transactions under 29 U.S.C. §§ 1106(a)-(b) (Counts 2-3); and violation of ERISA's anti-inurement provision, 29 U.S.C. § 1103(c) (Count 4). *Id.* ¶¶ 84-140, Page.ID 172-81. In connection with their claims, Plaintiffs seek to certify the following class:

> All participants and beneficiaries in the Nationwide Savings Plan who were invested in the Guaranteed Fund at any time from March 26, 2014 through the date of final judgment in this action, excluding the individual Defendants.

---

[6] Plaintiffs also seek equitable relief relating to the Plan under 29 U.S.C. § 1132(a)(3).

## ARGUMENT

### I.    Standard of Review

District courts have "broad discretion" in certifying a proposed class and determining whether the requirements of Rule 23 are met. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012). In making this determination, the Court must conduct a "rigorous analysis" of the requirements that apply under Rule 23. *Id.* at 537 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982)); *see also Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 418 n.8 (6th Cir. 2012). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "In other words, district courts may not 'turn the class certification proceedings into a dress rehearsal for the trial on the merits.'" *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 643 (S.D. Ohio 2017) (quoting *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)).

### II.    This Court Should Certify The Proposed Class

#### A.    The Proposed Class Satisfies Rule 23(a)

Rule 23(a) sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Each of these criteria are satisfied.

##### 1.    Numerosity

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the class consists exclusively of Plan members who invested in the GF, and there are tens of thousands of persons who did so during the relevant period. *See supra* at 4. Courts in this circuit regularly certify classes of far fewer individuals. *See Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (40 class members); *Kelly v.*

*Montgomery Lynch & Assocs., Inc.*, 2007 WL 4562913, at *3 (N.D. Ohio Dec. 19, 2007) (50 class members); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (holding objection to numerosity of class of 1,100 was "frivolous"). Thus, numerosity is easily satisfied.

### 2. Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In order to satisfy this requirement, "there need be only a single issue common to the members of the class." *In re Nortel Networks*, 2009 WL 3294827, at *5 (citing *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998)). It is not necessary that every issue be common to every class member. *See Shanehchian,* 2011 WL 883659, at *2 ("[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." (quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988))).

"[T]he commonality requirement is typically easily satisfied in ERISA cases." *Karpik*, 2021 WL 757123, at *10 (quoting *Shanehchian,* 2011 WL 883659, at *3). This case is no exception. First, because "the named Plaintiffs bring the action on behalf of the Plan, common answers are apt to drive the resolution of this litigation." *Cassell*, 2018 WL 5264640, at *4. Second, Plaintiffs' breach of fiduciary duty claims under ERISA are well-suited to class treatment because they are based on a common course of conduct with respect to the management of the Plan's investment in the Guaranteed Fund. *See In re Nortel Networks*, 2009 WL 3294827, at *5 ("The commonality requirement is particularly easy to meet when the defendant has engaged in a course of conduct which gives rise to a single cause of action... despite potential factual differences among class members."); *accord Karpik*, 2021 WL 757123, at *10 (citing *Young*, 693 F.3d at 542-43 (finding commonality and typicality requirements were satisfied where a single practice or

course of conduct by defendant gave rise to the claims of plaintiffs and the class)). Third, questions that can be resolved by reference to an "objective standard" are "common to all members of the class" and satisfy the commonality requirement. *Amgen*, 568 U.S. at 459. The liability of an ERISA fiduciary for breach of duty under 29 U.S.C. § 1104 is precisely such a question. *See In re Nortel Networks*, 2009 WL 3294827, at *10. "The focus of the inquiry is how the fiduciary acted in his selection of the investment, and how he should have acted given the information reasonably available to him." *Id.* at *11 (internal quotation marks and citation omitted).

Indeed, the central issues in this case are all common to the class. As this Court observed in a similar ERISA case:

> [T]he... amended complaint identifies several common issues of law and fact at issue in this case, including... whether the Defendants breached their fiduciary duties to the Plan and members of the class, whether the Defendants failed to act prudently and solely in the interest of the Plan and the Plan's participants and beneficiaries, whether the Defendants violated ERISA, whether the Plan and the members of the class sustained damages, and, if so, what the proper measure of damages would be. These questions of fact and law are common to all members of the class.

*Shirk*, 2008 WL 4425535, at *2; *see also* Am. Compl. ¶ 77(a)-(f), Page.ID 169-70 (identifying similar common questions); *accord Karpik*, 2021 WL 757123, at *10 ("Here, the lawsuit raised numerous common questions, including whether 'Defendants' process for assembling and monitoring the Plans' menu of investment options... was tainted by a conflict of interest or imprudence....'" (quoting *Moreno*, 2017 WL 3868803, at *5)); *In re Nortel Networks*, 2009 WL 3294827, at *5 (holding that "whether Defendants' actions and omissions constituted a breach of fiduciary duty" is a common question suitable for certification). Plaintiffs' self-dealing and prohibited transaction claims also turn on common issues, such as whether the Plan paid "no more than adequate consideration" in connection with its investment in the Guaranteed Fund, and whether Defendants meet the other requirements of their asserted "Transition Policy" exemption.

13

*See* 29 U.S.C. § 1108(b)(5); 29 C.F.R. § 2550.401c-1. Thus, the commonality requirement is also satisfied.

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he threshold for satisfying the typicality prong is a low one." *Willis*, 242 F. Supp. 3d at 645 (quoting *Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009)). "Generally, there is little doubt that a class representative's breach of fiduciary duty claim is in every respect typical of those of his fellow class members." *Shirk*, 2008 WL 4425535, at *3 (citation omitted).

Plaintiffs' claims are typical for the same reasons that they are common. *See Falcon*, 457 U.S. at 157 n.13 (noting that typicality and commonality requirements "tend to merge"). "A representative's claim is 'typical' if it arises from the same 'course of conduct' that gives rise to the claims of other class members, and if his claims are based on the same legal theory." *In re Nortel Networks*, 2009 WL 3294827, at *6 (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). As noted above, Plaintiffs' claims are based on a common course of conduct with respect to the GF. *See supra* at § II.A.2. Moreover, "[t]ypicality is further supported by the fact that ERISA contains unique standing and remedial provisions that allow a participant who sues for a breach of fiduciary duty to obtain plan-wide relief." *Shirk*, 2008 WL 4425535, at *3 (citations omitted); *see also Karpik*, 2021 WL 757123, at *11 (the fact that plaintiffs brought their claims on behalf of the plan "weigh[s] heavily" in favor of typicality under Rule 23(a)(3)) (citing *In re Nortel Networks*, 2009 WL 3294827, at *8); *Newberg on Class Actions* § 4:21 (5th ed.) (due to the "derivative nature of ERISA § 502(a)(2) claims… courts regularly certify ERISA cases under Rule 23"). Finally, each named Plaintiff participated in the Plan during the class period and was invested

in the GF. *See* Pls.' Decls. ¶¶ 2-3. "This is sufficient to show typicality." *Moreno*, 2017 WL 3868803, at *7.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this adequacy requirement, "1) the representative[s] must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083). Both prongs of this inquiry are satisfied here.

As noted above, Plaintiffs share a common interest with their fellow class members. *See supra* at § II.A.2. Their interest in pursuing a recovery on behalf of the Plan is aligned with the interest of the class, and ERISA grants them the express right to sue on behalf of the Plan. *See* 29 U.S.C. §§ 1132(a), 1109(a). Moreover, each of the named Plaintiffs have submitted declarations attesting that they are not aware of any conflicts of interest with other class members, and that they will represent the interests of the class members as they would their own. *See* Pls.' Decls. ¶ 8. Further demonstrating their adequacy, Plaintiffs have acknowledged and accepted their duties as class representatives, *see id.* ¶ 6 & Ex. 1, and have actively participated in the litigation by, among other things, reviewing the allegations in the operative complaints, communicating with counsel, and agreeing to appear for their depositions. *See* Pls.' Decls. ¶ 5. They are willing to undertake any responsibilities required of them as class representatives, and are prepared to testify at trial if necessary. *See id.* ¶ 7. This is more than sufficient to demonstrate that they will adequately represent the class. *See In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *15 (C.D. Cal. Mar. 29, 2011) ("Here, the class representatives participated actively in discovery, met

with counsel, sat for deposition, and reviewed the complaint before it was filed…. [They] testified that they would be willing to travel to Los Angeles to testify at trial if necessary. This kind of participation comports with what courts expect of class representatives.").

Plaintiffs' counsel are also more than adequate. Undersigned counsel, Kai Richter, was previously appointed class counsel in the *Karpik* case in this District, as well as two dozen other ERISA cases. *See* Richter Decl. ¶ 7 (citing *Karpik*, 2021 WL 757123). His colleagues from Cohen Milstein are also seasoned ERISA practitioners who have successfully litigated numerous class actions involving similar claims, including recent class actions against Wells Fargo, T. Rowe Price, and BlackRock arising from use of proprietary funds in their 401(k) plans. *See id.* ¶¶ 17, 19-22. In recognition of its work, Cohen Milstein's Employee Benefits Group was recently named Practice Group of the Year by Law360, *id.* ¶ 16, and Cohen Milstein is further supported by experienced local counsel from this District, *see id.* ¶ 31; Declaration of Eric H. Zagrans in Support of Plaintiffs' Motion for Class Certification. In connection with this action, Plaintiffs' counsel have thoroughly investigated the claims in the action, successfully defeated a motion to dismiss, vigorously sought discovery from both Defendants and Callan as a third-party, and will commit whatever resources are necessary to represent the class. *See* Richter Decl. ¶ 30. Based on their class action experience, knowledge of ERISA, work on the case to date, and commitment to the action, Plaintiffs' counsel satisfy all of the relevant criteria for appointment as class counsel. *See* Fed. R. Civ. P. 23(g)(1)(A).

### B. The Proposed Class Satisfies Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), the proposed class also satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests….

Fed. R. Civ. P. 23(b)(1). "Cases such as this, which involve allegations of fiduciary breaches to a trust or plan, are precisely the type of cases that are encompassed by the rule." *Karpik*, 2021 WL 757123, at *11. Indeed, ERISA 401(k) cases like this are a "paradigmatic example" of a 23(b)(1) class. *Dudenhoeffer*, 2016 WL 9343955, at *2; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999) (noting that breach of trust action is a "classic example" of a Rule 23(b)(1) class); *Yost*, 2011 WL 2182262, at *13 (collecting cases and noting "[m]any courts have concluded that because ERISA § 502(a)(2) breach of fiduciary duty claims are derivative in nature, such claims 'are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class'").

### 1. Certification Under Subsection (b)(1)(A) Is Appropriate

"Because Plaintiffs seek recovery on behalf of the Plan, certification under Rule 23(b)(1)(A) is appropriate." *In re Nortel Networks*, 2009 WL 3294827, at *15. "The fiduciary duties imposed by ERISA are 'duties with respect to a plan' that are intended to protect the 'interest of the participants and beneficiaries' collectively." *Karpik*, 2021 WL 757123, at *12 (citing 29 U.S.C. § 1104(a)). Moreover, ERISA fiduciaries are obligated to "apply uniform standards" to participants and beneficiaries and treat them consistently. *Cryer*, 2017 WL 4023149, at *6. Thus, allowing individual actions to proceed would create a risk of "inconsistent or varying adjudications" that would create "incompatible standards of conduct" for Defendants. *See* Fed. R. Civ. P. 23(b)(1)(A); *accord Karpik*, 2021 WL 757123, at *12 ("[S]eparate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible

standards to govern Defendants' conduct, such as... determinations of differing 'prudent alternatives' against which to measure the proprietary investments, or an order that Defendants be removed as fiduciaries." (citing *Krueger*, 304 F.R.D. at 577)); *In re Nortel Networks*, 2009 WL 3294827, at *15 ("Separate actions would establish differing standards for the duty that Defendants owe to the Plan under ERISA."). "If liability is found in one court but not in another, Defendants would be left in limbo, having been vindicated with respect to their duties to the Plan[] in one court but subject to judgment that would vitiate that vindication in another, thus making compliance impossible." *Shanehchian*, 2011 WL 883659, at *9. "In light of this risk, Plaintiffs have successfully satisfied the requirements of Rule 23(b)(1)(A)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008).

## 2.    Certification Under Subsection (b)(1)(B) Is Appropriate

Class certification under Rule 23(b)(1)(B) "is even more on point." *Shanehchian*, 2011 WL 883659, at *10. Because the claims in this case are brought on behalf of the Plan as a whole, a decision in this case could bar subsequent individual actions. *See Shirk,* 2008 WL 4425535, at *4 ("Clearly, adjudication of Plaintiffs' claims here will likely be dispositive of the claims of other potential class members."); *Newberg on Class Actions* § 4:21 (5th ed.) ("[B]ecause [a]ny decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interests of other participants.... courts regularly certify ERISA cases under Rule 23(b)(1)(B)." (cleaned up)). At the very least, "as a practical matter, the adjudication of one participant's § 1132(a)(2) action will influence a subsequent adjudication of the same claims brought by another participant and… could effectively dispose of other participants' actions on behalf of the Plan." *Krueger*, 304 F.R.D. at 577.

18

The Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23 advisory committee notes to 1966 amendment. "This case falls squarely within the meaning articulated by the Advisory Committee as Plaintiffs allege breaches of fiduciary duties affecting the Plan[] and the thousands of participants in the Plan[]." *Shanehchian,* 2011 WL 883659, at *10 (collecting cases). Accordingly, "Plaintiffs' ERISA claims are suitable for class treatment under subparagraph (B) of Rule 23(b)(1)." *Yost*, 2011 WL 2182262, at *13.

## C.  The Class Additionally and Alternatively Satisfies Rule 23(b)(3)

Plaintiffs primarily address class certification under Rule 23(b)(1) because it is clear that certification is proper under that prong, and Rule 23(b)(3) is intended to address "situations in which class action treatment is not as clearly called for as it is in Rule 23(b)(1)." *Amchem Prod.*, 521 U.S. at 615 (internal quotation marks omitted). Indeed, "the Sixth Circuit has held that when class certification would be appropriate under either Rule 23(b)(1) or (b)(3), the district court should certify a mandatory (b)(1) class, and not the opt-in (b)(3) class." *Yost*, 2011 WL 2182262, at *13 n.76 (citing *First Fed. of Mich. v. Barrow,* 878 F.2d 912, 919 (6th Cir.1989)) (citation omitted). However, in the event that further analysis was required, the proposed class also satisfies the requirements of Rule 23(b)(3) because the common questions in this case "predominate" and class treatment is "superior." *See* Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) permits certification when "one or more of the central issues in the action are common to the class and can be said to predominate... even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some

individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks omitted). That is certainly the case here, as the claims in this action focus on the conduct of the Plan's fiduciaries, not individual participants. *See In re Nortel Networks*, 2009 WL 3294827, at *8 ("The issue of whether a defendant breached its fiduciary duty is analyzed in terms of the defendant's actions and information, not in terms of the plan participants' actions.").

Moreover, a class action is superior to individual litigation for multiple reasons. First, class members have no interest in individually controlling the litigation because the claims are derivative in nature, common issues predominate, and individualized litigation would be cost-prohibitive. Second, there is no other pending litigation concerning the matter. Third, concentrating the claims in this District is desirable, as Nationwide is headquartered in Columbus and many of the class members also reside in the area. Finally, there are no manageability concerns that would weigh against certification given the commonality of the issues, especially in light of the fact that ERISA claims such as these are tried to the Court and not a jury. *See In re Iron Workers Loc. 25 Pension Fund*, 2011 WL 1256657, at *15-17 (E.D. Mich. Mar. 31, 2011). Thus, each of the superiority criteria support certification. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Class Certification.

Dated: January 31, 2023                       Respectfully submitted,

                                              s/ Eric H. Zagrans
                                              Eric H. Zagrans (OH #0013108)
                                                  *Trial Attorney*
                                              **ZAGRANS LAW FIRM LLC**
                                              1640 Roundwyck Lane
                                              Columbus, Ohio 43065-8416
                                              Telephone: (440) 452-7100
                                              Email: eric@zagrans.com

                                              Michelle C. Yau (admitted *Pro Hac Vice*)
                                              Kai H. Richter (admitted *Pro Hac Vice*)
                                              Daniel R. Sutter (admitted *Pro Hac Vice*)
                                              Eleanor Frisch (admitted *Pro Hac Vice*)
                                              **Cohen Milstein Sellers & Toll PLLC**
                                              1100 New York Ave. NW ● Fifth Floor
                                              Washington, DC 20005
                                              Tel: (202) 408-4600
                                              Fax: (202) 408-4699
                                              myau@cohenmilstein.com
                                              krichter@cohenmilstein.com
                                              dsutter@cohenmilstein.com
                                              efrisch@cohenmilstein.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2023, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel

for Defendants.

                                               s/ Kai H. Richter
                                              *Counsel for Plaintiffs*

21