**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **RYAN SWEENEY et al.,** | |
| **Plaintiffs,** | **Case No. 2:20-cv-1569** |
| **v.** | **Judge James L. Graham** |
| | **Magistrate Judge Chelsey M. Vascura** |
| **NATIONWIDE MUTUAL INSURANCE COMPANY et al.,** | |
| **Defendants.** | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## LOCAL RULE 7.2 TABLE OF CONTENTS AND SUMMARY

I.      INTRODUCTION....................................................................................................1

This is an ill-conceived class action.  It is also unique among ERISA cases in that Plaintiffs are attempting to eliminate an investment option – the Guaranteed Fund – which has delivered *above-market* returns to participants.  If Plaintiffs prevail, Nationwide Mutual may well be forced to offer an alternative form of investment that provides putative class members either with a guarantee but *lower returns*, or no guarantee and greater financial risk of loss.  No class can be certified where such an irreconcilable conflict exists within the putative class.

A class cannot be certified for several other reasons.  ████████████ ████████  Both Plaintiffs also are inadequate to serve as class representatives because, as their own deposition testimony demonstrates, they know little to nothing about their own claims and have abdicated control of this lawsuit to their lawyers.  Plaintiffs also cannot satisfy the requirements of Rule 23(b).  A Rule 23(b)(1) class cannot be certified because Plaintiffs' claims for monetary relief predominate over any claims for declaratory or injunctive relief, and because this is not a limited fund case.  A Rule 23(b)(3) case, in turn, cannot be certified because Plaintiffs have failed to present this Court with a damages model demonstrating that monetary relief could be calculated on a class-wide basis.

Lastly, Plaintiffs are not entitled to rely on their allegations, and instead, had the burden of presenting evidentiary proof as to each element of Rule 23.  Plaintiffs have failed to do so.  Plaintiffs' allegations regarding how the Guaranteed Fund operates are incorrect and may not be relied upon by Plaintiffs or this Court.  In contrast, Defendants' brief provides this Court with the undisputed and indisputable factual background regarding the Guaranteed Fund.  Based on the actual evidentiary record before this Court and the applicable law, Plaintiffs' motion should be denied.

II.     BACKGROUND .....................................................................................................4

A.      The Guaranteed Fund ................................................................................4

B.      Plaintiffs' Claims And Defendants' Summary Judgment Motion ....................6

C.      Plaintiffs' Deposition Testimony ................................................................10

        1.      Plaintiff Ryan Sweeney.....................................................................10

        2.      Plaintiff Bryan Marshall .................................................................12

D.      Rule 23 Standard.....................................................................................15

i

III.     PLAINTIFFS ARE NOT ADEQUATE REPRESENTATIVES ..................................16

    A.     ██████████████████████████████████████████████████████████████
                 ██████████████████████████.........................................16

██████████████████████████
████████████████  Accordingly, he is not an adequate representative because he does not possess the same interest and has not suffered the same injury as the putative class.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-349 (2011).  Indeed, Marshall has "no concrete stake in this lawsuit," *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619 (2020), and "lacks Article III standing to bring" an ERISA claim for Plan losses "on behalf of Plan participants."  *Russell v. Harman Int'l Indus., Inc.*, 945 F. Supp. 2d 68, 80 (D.D.C. 2014), *aff'd*, 773 F.3d 253 (D.C. Cir. 2014).

████████████████████████████████████████████████████████████  Marshall has not done so.  But even if Marshall were to do so, ███████████████████████████  would give rise to a unique and highly individualized defense that would render class certification inappropriate.  *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 318 (S.D.N.Y. 2003); *see also Romberio v. UnumProvident Corp.*, 385 Fed.Appx. 423, 431 (6th Cir. 2009).

    B.     **Plaintiffs Lack Knowledge Regarding Their Claims And Have Abdicated Control To Their Lawyers** ...................................................................21

            1.     **Plaintiff Sweeney's Deposition Testimony Demonstrates His Lack Of Knowledge And Active Participation In This Lawsuit** ...................22

Sweeney is not an adequate class representative because he lacks familiarity with the facts of the case and his knowledge is "limited to derivative knowledge acquired solely from counsel."  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 n.18 (5th Cir. 2001).  As Sweeney testified,

████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

            2.     **Plaintiff Marshall's Deposition Testimony Demonstrates His Lack Of Knowledge And Active Participation In This Lawsuit** ...................24

Marshall also is not an adequate representative because, as he testified, ████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████  His testimony also shows substantial confusion regarding what this case is about.

**C.** **Plaintiffs' Claims Are Antagonistic To And In Conflict With The Interest Of The Putative Class ............................................................................................25**

The claims asserted in the Amended Complaint are in conflict with not only other putative class members' interests but also Plaintiffs' own deposition testimony regarding the Guaranteed Fund. Specifically, Plaintiffs assert in this lawsuit that Defendants breached their ERISA fiduciary duties by selecting and retaining the Guaranteed Fund as an investment option, and that it was an ERISA prohibited transaction for Nationwide Mutual to obtain the Annuity Contract from its affiliate, Nationwide Life. If Plaintiffs prevail on these claims, Nationwide Mutual may no longer be able to offer the Guaranteed Fund to Plan participants. Yet, directly contrary to these claims, Sweeney testified ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Marshall similarly testified ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇ In summary, the claims asserted in the Amended Complaint are directly contrary to Plaintiffs' own testimony and undoubtedly to the many other putative class members who like the Guaranteed Fund and want to continue investing in it. Courts have held that ERISA plaintiffs are not adequate class representatives, and a class cannot be certified where, as here, similar conflicts of interest exist. *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 315 (5th Cir. 2007); *Spano v. The Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

The potential elimination of the Guaranteed Fund also would *harm* putative class members. The Guaranteed Fund has provided *above-market returns* to participants throughout the class period to the present. The most similar alternative stable value investment funds have provided *lower* returns. In other words, there is no investment option similar to the Guaranteed Fund that consistently provides the same or higher *guaranteed* returns. Elimination of the Guaranteed Fund would therefore harm putative class members and make them worse off. This makes this lawsuit unique in that it appears to be the only known ERISA case in which the plaintiffs are seeking relief that could result in *lower* returns to class members. This is yet another strong indication that this is an improper lawyer-driven class action. Plaintiffs are not adequate representatives because the claims they are asserting are antagonistic to and in conflict with the interests of the putative class.

**D.** **Plaintiffs Are Not Adequate For Additional Reasons .......................................27**

Plaintiffs are not adequate representatives because they have failed to exhaust their administrative remedies with respect to claims involving interpretation of the Plan. *Hitchcock v. Cumberland University*, 851 F.3d 552, (6th Cir. 2017). Furthermore, Sweeney was directly solicited to participate in this lawsuit, and Exhibit 1 to Plaintiffs' Declarations contain only the last page of a four-page document.

**IV.** **PLAINTIFFS' CLAIMS ARE NOT COMMON OR TYPICAL.................................28**

Plaintiffs' claims are not common or typical where the named plaintiffs are subject to unique defenses. *Romberio v. UnumProvident Corp.*, 385 Fed.Appx. 423, 431 (6th Cir. 2009). Here, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This "unique defense" is

"likely to usurp a significant portion of [Marshall's] time and energy," creating "a danger that the absent class members will suffer" from their representative's "preoccup[ation] with defenses unique to [him]." *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 646 (S.D. Ohio 2017).

The availability of consent or ratification defenses for other members of the putative class also makes their claims atypical of one another. When a beneficiary has knowledge of the material facts surrounding the transaction, courts have recognized the beneficiary's approval as ratification of an ERISA fiduciary's actions. *Mc Manus & Pellouchoud, Inc. Emps.' Profit Sharing Tr. v. L. F. Rothschild, Unterbery, Towbin*, 1989 WL 100103, at *1 (N.D. Ill. Aug. 23, 1989). Here, it is likely that some portion of plan participants knew the facts material to the alleged ERISA violations and their implications under ERISA—and nonetheless signed up for the Guaranteed Fund. Participants, for example, were provided with fund fact sheets and summary plan descriptions that disclosed features relevant to Plaintiffs' claims: namely, the fees and charges related to the Guaranteed Fund, the crediting rate, and the fact the monies in the Fund were guaranteed by a Nationwide affiliate. Whether any given class member has that knowledge, though, depends on the facts and circumstances surrounding a particular participant, and involves individualized inquiries that defeat typicality.

## V. A RULE 23(b)(1) CLASS CANNOT BE CERTIFIED ...................................32

### A. Plaintiffs Are Seeking Monetary Relief ...............................................32

A Rule 23(b)(1) class cannot be certified because Plaintiffs' claims for monetary relief predominate over any claims for declaratory or injunctive relief. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 281 (6th Cir. 2018). Plaintiffs expressly allege that the putative class members have been damaged in excess of $70 million, and have suffered "millions of dollars of losses," which Plaintiffs seek to have restored. *See* Am. Complaint ¶¶ 67-68, ¶¶ 93, 125, 127, 145 (Doc. 34). At deposition, Plaintiffs testified ███████████████████████████████. In contrast, Plaintiffs do not mention declaratory or injunctive relief in their class certification motion. Plaintiffs' damages claims predominate, and accordingly, a Rule 23(b)(1) class cannot be certified. *Adams v. Anheuser-Busch Companies*, 2012 WL 1058961 at *9 (S.D. Ohio 2012) (Graham, J.); *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 318 (5th Cir. 2007); *In re First American Corp. ERISA Litigation*, 263 F.R.D. 549, 559-560 (C.D. Cal. 2009).

### B. This Is Not A Limited Fund Case ......................................................33

A Rule 23(b)(1)(B) class cannot be certified because this is not a limited fund case. It is black-letter law that Rule 23(b)(1)(B) applies to limited fund cases. *In re Telectronics Pacing Systems, Inc.*, 221 F.3d 870, 876-877 (6th Cir. 2000). The Supreme Court also has counseled "against the adventurous application of Rule 23(b)(1)(B)[.]" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999). Courts have applied these same principles to ERISA cases. *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 318 (5th Cir. 2007); *Ned-Sthran v. Methodist Hospitals of Dallas*, 2008 WL 5420601 at *6 (N.D. Tex. Nov. 25, 2008); *see also Spano v. The Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011).

    **C.**      **Individual Actions Will Not Give Rise To Incompatible Standards Of Conduct Or Be Dispositive Of The Interests Of Non-Parties** ........................35

Sweeney ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████. As a result, Nationwide has no ongoing obligations whatsoever with respect to Sweeney or his former participation in the NSP.  While a damages award would make Sweeney whole for any alleged monetary harm, declaratory or injunctive relief would not impose any standard of conduct whatsoever with respect to Sweeney. ████████████████████████████████████████████████████████████████ ███████████████████████████████.  As with Sweeney, Marshall's real claim is for monetary damages. Undoubtedly, it is because of these facts that Plaintiffs are not seeking certification of a declaratory/injunctive relief class under Rule 23(b)(2).  Sweeney and Marshall simply do not have any declaratory or injunctive relief claims that would give rise to incompatible standards of conduct, or that would prejudice putative class members.

**VI.**     **A RULE 23(b)(3) CLASS CANNOT BE CERTIFIED** .................................................37

Plaintiffs were required to present this Court with a "damages model that functions on a class-wide basis."  *Rodney v. Northwest Airlines*, *Inc.*, 146 Fed.Appx. 783, 791 (6th Cir. 2005); *Bartell v. LTF Club Operations Co.*, 2016 WL 11596601 at *7 (S.D. Ohio Aug. 8, 2016). Plaintiffs, however, have failed to present any damages methodology.  This is fatal to Plaintiffs' request for class certification under Rule 23(b)(3).

Rule 23(b)(3) also requires that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]"  In a recent ERISA case involving similar allegations as here (and the same plaintiffs' counsel), a court denied class certification under Rule 23(b)(1) and (b)(3) given the individualized issues involved, particularly relating to the determination of monetary relief..  *See Davis v. Stadion Money Management*, *LLC*, 2021 WL 4400298 (D. Neb. Sept. 27, 2021).  This Court should reach the same result here.

Lastly, it is no accident that Plaintiffs have failed to present this Court with a damages methodology.  The Guaranteed Fund provided *higher returns* than the alternative benchmark stable value funds.  Plaintiffs simply cannot present any damages model demonstrating that class members suffered any injury at all, let alone that any injury could be calculated on a class-wide basis.  Accordingly, a class cannot be certified under Rule 23(b)(3).

**VII.**    **CONCLUSION** ...............................................................................................................38

## I.  __INTRODUCTION.__

This is an ill-conceived class action.  It is also unique among ERISA cases in that Plaintiffs are attempting to eliminate an investment option – the Guaranteed Fund – which has delivered *above-market* returns to participants.  If Plaintiffs prevail, putative class members may lose the ability to select the popular Guaranteed Fund and may be forced to invest in options providing *lower* returns and/or greater risks of loss.  No class can be certified where such an irreconcilable conflict exists between the claims asserted by Plaintiffs and the actual interests of putative class members.  In fact, Plaintiffs cannot satisfy the requirements of Rule 23(a) or (b) for numerous reasons, and their motion for class certification should be denied.

First, Plaintiffs are not adequate class representatives.  Plaintiff Bryan Marshall is a former Nationwide Mutual employee who ███████████████████████████████████████ ████████████████████████████████████████████ He has no Article III standing and no basis to pursue this litigation, let alone to act as a class representative.  Plaintiff Ryan Sweeney, in turn, is a former employee ██████████████████████████████████ ████████████████████████████████████. He has no interest in pursuing this action—let alone doing so vigorously—and he has not done so.  ███████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████.  Indeed, it is his lawyers who are the ones actually controlling this lawsuit.  ██ ████████████████████████████████████████████████ ███████████████████████████████████████

Second, there is an irreconcilable conflict between the claims Plaintiffs are pursuing in this lawsuit and the actual interests of the putative class members.  In the Amended Complaint, Plaintiffs allege that Defendants breached their ERISA fiduciary duties by offering the Guaranteed Fund as one of the fourteen investment options in the NSP.  Plaintiffs further allege that it is an ERISA prohibited transaction for Nationwide Mutual to offer the Guaranteed Fund through its affiliate, Nationwide Life.  If Plaintiffs prevail on these claims, Nationwide Mutual may well have no choice but to eliminate the popular Guaranteed Fund.  Yet, the Guaranteed Fund has delivered – and continues to deliver – *above-market* returns to Plan participants.  Discovery has confirmed that the most similar alternative investments (stable value funds) have delivered returns that are *lower* than those provided by the Guaranteed Fund.  In other words, if Plaintiffs prevail, Nationwide Mutual may well be forced to offer an alternative form of investment that provides putative class members either with a guarantee but *lower returns*, or no guarantee and greater financial risk of loss.  Plaintiffs – as former participants in the Guaranteed Fund – may not care whether the Guaranteed Fund is dissolved.  But for the thousands of putative class members who specifically selected the Guaranteed Fund as their investment option, and remain invested in it, the relief Plaintiffs are seeking will leave them *worse off*.  No class can be certified where such an irreconcilable conflict exists within the putative class.

Third, Plaintiffs' claims or defenses are not typical of those of the putative class.  For one thing, ███████████ subjects him to unique defenses that could become the focus of the litigation.  Moreover, other members of the putative class are subject to consent or ratification defenses.  Adjudicating the merits of those defenses requires individualized inquiries into the knowledge of particular class members, rendering their claims atypical of one another.

Fourth, Plaintiffs cannot satisfy the requirements of Rule 23(b)(1) because their claims for

monetary relief predominate over their claims for declaratory and injunctive relief. ███████ ████████████████████████████████████████████████████ ███████████████████████████████████ United States Supreme Court and Sixth Circuit case law, however, makes clear that a class cannot be certified under Rule 23(b)(1) where, as here, Plaintiffs' claims for monetary relief predominate.

Fifth, Plaintiffs have not even bothered to try and meet the requirements of Rule 23(b)(3). Under United States Supreme Court and Sixth Circuit case law, Plaintiffs were obligated to present to this Court a damages model demonstrating that monetary relief can be calculated on a class-wide basis. Plaintiffs have not presented any such model, let alone discussed this issue in their motion. A Rule 23(b)(3) class also cannot be certified because individualized issues predominate over any common questions as discussed further below.

Lastly, Plaintiffs' effort to portray class certification as somehow routine in ERISA cases is false. The cases cited by Plaintiffs do not involve or discuss any of the issues involved here (and many of the cases are actually irrelevant settlement approval decisions). In reality, courts frequently deny class certification in ERISA cases where, as here, the named plaintiffs are not adequate representatives, plaintiffs are pursuing remedies that may conflict with the interests of the putative class, and claims for monetary relief predominate.

Plaintiffs are aware of such cases inasmuch as class certification was recently denied in another ERISA case filed by the same counsel representing Plaintiffs here. *See Davis v. Stadion Money Management*, *LLC*, 2021 WL 4400298 (D. Neb. Sept. 27, 2021). The *Davis* case is noteworthy because the plaintiff there made similar allegations as in this case, including that the defendants violated ERISA by offering a "guaranteed" fund that charged higher fees than alternative stable value funds. The court, however, held that a class could *not* be certified under

Rule 23(b)(1) or (b)(3) because of the individualized issues presented, particularly relating to the inability to calculate monetary relief on a class-wide basis. This Court should reach the same result here. Plaintiffs cannot satisfy the requirements of Rule 23(a) or (b), and their motion for class certification should be denied.

## II.   **BACKGROUND.**

Plaintiffs were required to submit evidentiary proof with respect to each element of Rule 23, and are not entitled to rely on their complaint allegations. In that regard, Plaintiffs' allegations regarding how the Guaranteed Fund operates are incorrect and may not be relied upon by Plaintiffs or this Court. In contrast, the following sections provide this Court with the undisputed and indisputable factual background regarding the Guaranteed Fund, a summary of Plaintiffs' claims and Defendants' pending summary judgment motion, and a summary of the deposition testimony of Plaintiffs. A summary of the legal standards governing Rule 23, as set forth by the United States Supreme Court, is also provided below.

### A.   **The Guaranteed Fund.**

Defendant Nationwide Mutual Insurance Company offers a 401(k) savings plan to its employees (the "NSP" or the "Plan"). O'Brien Aff. ¶ 6 (Doc. 92-1). The Plan currently offers participants fourteen investment options, including a money-market account, several stock and bond mutual funds, a BrokerageLink option permitting participants broad access to the equity market (e.g., stock purchases), and the Guaranteed Fund. *Id.* ¶ 7. Only the Guaranteed Fund is provided by a Nationwide Mutual affiliate (Nationwide Life). The remaining investment options are not Nationwide products. *Id.* ¶ 8.

The Guaranteed Fund is supported by an annuity contract issued by defendant Nationwide Life Insurance Company (the "Annuity Contract") to the NSP. O'Brien Aff. ¶ 9. When Plan

participants select the Guaranteed Fund investment option, their contributions are transferred to Nationwide Life's general account. Schley Aff. ¶ 4 (Doc. 92-2).[1] Nationwide Life acquires debt securities with the contributions, which support the Annuity Contract and are held in Nationwide Life's general account. *Id*. Under the Annuity Contract, Nationwide Life – not Nationwide Mutual – declares an interest rate that is credited to the contributions received from Plan participants. *Id*. ¶ 5. The interest rate is declared, in advance, quarterly and is expressed as an annualized rate of return. *Id*. In this regard, Nationwide Life assumes the risk that returns in its general account investments will not cover the guarantee. The contributions transferred to Nationwide Life and the declared quarterly interest rate amounts are guaranteed by Nationwide Life. *Id*. ¶ 6. In other words, Nationwide Life promises to pay the full amount contributed by the participant along with the credited interest at the declared quarterly rates. *Id*. Nationwide Life has never failed to deliver those promised amounts to a participant and no such failure is alleged in this action.

While the Plan **as a whole** incurs administrative expenses related to the services provided by a third-party administrator of the Plan, Fidelity, **no expenses** relating to administration of the Annuity Contract itself are charged to the Plan or Plan participants' accounts. O'Brien Aff. ¶ 11; Shaw Aff. ¶ 4 (Doc. 92-3). Moreover, Nationwide Life does not deduct any amounts from the

---

[1] Following the decision of the U.S. Supreme Court in *John Hancock Mutual Insurance Co. v. Harris Trust & Savings Bank*, 510 U.S. 86 (1993), Congress directed the Department of Labor to create a safe harbor where an insurer issuing an annuity contract to a 401(k) plan in exchange for a transfer of plan contributions into the insurer's general account would not be considered to be holding Plan Assets subject to ERISA fiduciary duties. 29 U.S.C. Section 1101(c). The DOL subsequently enacted 29 CFR Section 2550.401c-1, which created a safe harbor for annuity contracts that qualify as a "transition policy." Here, the annuity contract issued by Nationwide Life to the NSP qualifies as a transition policy. *See* Nationwide Motion For Summary Judgment at 8-10. In this action, Plaintiffs seek to have this Court judicially remove the general account fiduciary protections from the statute/regulation and improperly expose the general account of Nationwide Life to fiduciary challenge.

participants' contributions to the Guaranteed Fund, or from the amounts earned following declaration of the credited interest rate. Schley Aff. ¶ 7. Finally, Nationwide Mutual, the Plan sponsor, does not receive any compensation from Nationwide Life for the Annuity Contract. *Id.*; *see also* O'Brien Aff. ¶ 9.[2]

**B.**    **Plaintiffs' Claims And Defendants' Summary Judgment Motion.**

While Plaintiffs allege a variety of ERISA violations, all of their claims turn on two central allegations. First, Plaintiffs contend that the crediting rate for the Guaranteed Fund should have been higher during the putative class period (2014-present). *See* Am. Complaint ¶ 68 (Doc. 34) (comparing actual crediting rate to alleged "rate owed"). Generally, Plaintiffs contend the rate would have been higher but for Nationwide's alleged imposition of excessive fees and charges. *Id.*

Second, Plaintiffs allege Defendants breached their fiduciary duties, and engaged in ERISA prohibited transactions, by selecting and retaining the Guaranteed Fund as an investment option in the NSP. Plaintiffs, for example, allege it was illegal for Defendants to authorize and to renew the transaction with Nationwide Life, and to transfer participant contributions in the Guaranteed Fund to Nationwide Life's general account. Am. Complaint ¶¶ 103, 106, 111. Plaintiffs further allege Defendants were acting in their own self-interest by offering the Guaranteed Fund through an affiliate, and that offering the Guaranteed Fund was improper because it exposed "the Plan to the credit risk of a single company," *i.e.*, Nationwide Life. Am. Complaint ¶¶ 57, 123, 138. If Plaintiffs were to prevail on these claims – in particular, if offering the Guaranteed Fund through Nationwide Life is an ERISA prohibited transaction – it may well be illegal for Defendants to

---

[2]  The O'Brien, Schley and Shaw Affidavits previously have been filed with the Court in support of Defendants' pending motion for summary judgment, and are incorporated herein by reference. *See* Docs. 92-1, 92-2, 92-3.

continue offering the Guaranteed Fund, which would have to be dissolved.

Plaintiffs' claims, however, are directly contrary to ERISA's statutory provisions, which expressly authorize insurers like Nationwide Mutual to obtain annuity contracts from affiliates like Nationwide Life. Specifically, Defendants have moved for summary judgment on the grounds that the Annuity Contract backing the Guaranteed Fund satisfies ERISA's Transition Policy safe harbor provisions. *See* Defendants' Motion For Summary Judgment (Doc. 92). By statute, compliance with the Transition Policy requirements "shall be deemed compliance" with ERISA sections 1104 and 1106—the very same statutes Plaintiffs have sued under. *Id.*; *see also* 29 U.S.C. § 1101(c)(4).

Furthermore, as to any remaining fiduciary obligations under ERISA, the Sixth Circuit recently held that plan fiduciaries have no obligation to obtain the best performing investment option within a particular asset class or category, or to select the investment option with the lowest fees. *See Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164 (6th Cir. June 21, 2022). As established in Defendants' summary judgment motion, market survey data demonstrates that the Guaranteed Fund has delivered *higher* returns than other guaranteed investment products offered by Nationwide Life's competitors in the marketplace. *See* Summary Judgment Motion at 6-8.

Discovery initiated by Plaintiffs themselves from Callan & Associates has confirmed that the Guaranteed Fund, in fact, provided substantially higher returns than the next-closest class of investments that provide for capital preservation—stable value funds. As Callan executive Brianne Weymouth's testimony confirmed, ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

In fact, Ms. Weymouth's testimony undermined many other factual assertions and claims asserted by Plaintiffs in this case.  Specifically, as Ms. Weymouth testified, Callan's reviews of the Guaranteed Fund confirmed the following facts:

████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

8

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

• ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

Plaintiffs fail to provide this Court with these case dispositive facts. Instead, they resort to conclusory assertions of "wrongdoing" contrary to the actual witness testimony in this case. Plaintiffs, for example, assert that Defendants failed to monitor the Guaranteed Fund and somehow obstructed Callan's review. This is false. Callan's own representative testified that ███████

████████████████████████████████████████████████████████

████████████████████████████ And, regardless, Defendants have submitted witness affidavits from two members of the Benefits Investment Committee ("BIC") demonstrating that the BIC, in fact, monitored the Guaranteed Fund. *See* LaPaul Aff. (Doc. 92-6); O'Brien Aff. (Doc. 92-1). Specifically, the BIC reviewed and considered Callan's recommendations, but opted to continue offering the Guaranteed Fund given its historical *above-market* returns. LaPaul Aff. At ¶¶ 8-12. As the Sixth Circuit's *CommonSpirit* decision makes clear, it is without merit for Plaintiffs to argue that Defendants violated their fiduciary obligations by selecting and retaining the Guaranteed Fund as an investment option – an option that provided *higher* returns than the alternative stable value funds.[3]

---

[3] Plaintiffs also mischaracterize various documents, most of which are not supported by witness testimony. Plaintiffs, for example, mischaracterize a Callan document for the proposition that it is "unique" to have a guaranteed fund "managed and guaranteed by an insurance company who is also the plan sponsor." Yet, the actual document states that "this is common in 403(b) plans" but not 401(k) plans. *See* Ex. 7 to Richter Decl. at Callan_NTWD0003926. There is nothing unusual

C.    **Plaintiffs' Deposition Testimony.**

1.    **Plaintiff Ryan Sweeney.**

Sweeney is a former Nationwide employee. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████

Sweeney has had virtually no involvement in this lawsuit.  He conceded ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

about plan sponsors obtaining annuity contracts from affiliated insurance companies.  In fact, such annuity contracts are expressly authorized by ERISA's statutory safe harbor provisions, as discussed in Defendants' summary judgment motion.  *See* Summary Judgment Motion at 8-10, 16-19.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████

　　█████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████

　　Furthermore, Sweeney's deposition testimony often was directly at odds with the actual claims asserted in the Amended Complaint. ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ As discussed above, however,

the Guaranteed Fund may well be eliminated if Plaintiffs prevail in this lawsuit.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

      2.     **<u>Plaintiff Bryan Marshall</u>.**

Marshall is a former employee of Nationwide Mutual. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

Marshall also has had little involvement in this lawsuit. ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

Like Sweeney, Marshall is confused about the actual claims being asserted in Amended

Complaint. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████

14



**D.** **Rule 23 Standard.**

The U.S. Supreme Court repeatedly has held that class certification requires a rigorous analysis supported by evidentiary proof as to each element of Rule 23. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-351 (2011); *Halliburton C. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). Specifically, a class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast* at 33. "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* Rule 23 "does not set forth a mere pleading standard." *Id.* "Rather, a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Id.* (emphasis in original). "The party must also satisfy through **evidentiary proof** at least one of the provisions of Rule 23(b)." *Id.* (emphasis added); *see also Halliburton* at 275 ("plaintiffs wishing to proceed through a class action must actually *prove* – not simply plead – that their proposed class satisfies each requirement of Rule 23"; emphasis in original).

As the U.S. Supreme Court has further explained, it "'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and . . . certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Comcast* at 33. "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim" because the "'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* "The same analytical principles govern Rule 23(b)" as well. *Id.*

The U.S. Supreme Court also has cautioned against creative and expansive interpretations of Rule 23, particularly with respect to Rule 23(b)(1) classes. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842-848 (1999) (counseling "against adventurous application of Rule 23(b)(1)(B)"). This is because Rule 23(b)(1) classes are mandatory in nature and lack the due process protections of a Rule 23(b)(3) class. *Id.; see also Dukes* at 360-363 (noting same concerns with respect to Rule 23(b)(2) classes). Applying a rigorous analysis, Plaintiffs have failed to meet their evidentiary burden under Rule 23, and their motion for class certification should be denied.

## III.  PLAINTIFFS ARE NOT ADEQUATE REPRESENTATIVES.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Here, Plaintiffs are not adequate representatives for several reasons. As discussed below, Marshall has released his ERISA claims against Defendants, both Plaintiffs lack knowledge regarding the claims asserted in this lawsuit, and Plaintiffs' claims are antagonistic and in conflict with other members of the putative class.

### A.  Marshall Signed A Release That Bars Him From Bringing ERISA Claims Against Defendants.

To bring claims on behalf of a class, a putative "representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 348-349 (2011).  A "proffered representative cannot represent the class where they cannot maintain their own claim." *In re Express Scripts, Inc.*, 2015 WL 128073 at *3 (E.D. Mo. Jan. 8, 2015).  Here, Marshall cannot maintain the claims at issue because ███

███████████████████████████████████

Specifically, ████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████

███████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

█████████████████████

██████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████  ████████████████████████████

██████████████████████████  ██████████

██████████████████████████████

To be sure, ███████████████████████████████████████████

███████████████████████████████████ ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

                              remains entitled to sue to recover the money that was

in his retirement account at the time he signed the release," "he *cannot* now claim that his account

would have been worth even more had the defendants not breached a fiduciary duty."

████████████████████████████████████

That Marshall purports to "bring suit in a representative capacity on behalf of" the NSP

does not alter this analysis. Mot. at 1. As an initial matter, ████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████

        █████████████████████████████████████████

████████████████ ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ *Conrad v. Keller Brick Co.*, 31 Ohio

C.C. 700, 703 (Cir. Ct. 1907) (emphasis added); *see, e.g.*, *Berry v. Javitch, Block & Rathbone, L.L.P.*, 940 N.E.2d 1265, 1270 (Ohio 2010).

For his part, ████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████ ██████████████████████████████████

███████████████████████████████████

Regardless, ████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████ ██████████████████████████████████

███████████████████████████████████ Under Ohio law, courts usually give contract terms "their ordinary meaning." *Sutton Bank v. Progressive Polymers, L.L.C.*, 163 N.E.3d 546, 552 (Ohio 2020). ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████[4]

---

[4] This extends to monetary compensation for violations that postdate ██████████████ ██.
███████████████████████████████████████████████████████

Consequently, *even if Plaintiffs were to prevail on their Plan-wide claims*, Marshall himself cannot receive any of the monetary relief to which he would otherwise be entitled.  While Plaintiffs ostensibly seek to require Defendants to "make good to the plan any losses to the plan," *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993), the NSP is a defined-contribution plan.  As such, it is a "collection[] of individual accounts," and any monetary recovery made on its behalf "must be allocated to the individual accounts injured by the breach," "in relation to the impact the fiduciary breaches had on their particular accounts."  *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008).

Marshall,  That being the case, Marshall has "no concrete stake in th[is] lawsuit," *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619 (2020), and "lacks Article III standing to bring" an ERISA claim for Plan losses "on behalf of Plan participants."  *Russell*, 945 F. Supp. 2d at 80.

Indeed, the Supreme Court's recent *Thole* decision makes clear that even when a party seeks to sue derivatively, he or she must demonstrate Article III standing.  *Thole,* 140 S.Ct. at 1620. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, he cannot sue either for himself or anyone else.  Under these circumstances, allowing Marshall to proceed as a class representative

would be tantamount to approving as a class representative a Nationwide employee who terminated employment prior to the NSP even offering the Guaranteed Fund.

Even if this Court ultimately disagrees that ███████████████████████████████ ███████████████████ars him from proceeding with these claims, there are additional reasons ██████████ renders him an improper class representative. He "may not have a monetary stake in the outcome" of the case, and ████████████████████████████████ on him proceeding that other class members lack. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 600 (3d Cir. 2009). Those differences mean that his "*interests* and incentives may not be sufficiently aligned with those of his class." *Id.* (emphasis added.) Without that alignment— the "linchpin of the adequacy requirement"—he cannot proceed on the class's behalf. *In re DryMax Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013).

Lastly, even if Marshall were to ████████████████████████████████ ███████████████████ – there is no basis to do so – any such dispute would give rise to a unique and highly individualized defense that would render class certification inappropriate. *See, e.g.*, ████████████████████████████████████████████████ ████████████████████████████████████ *see also Romberio v. UnumProvident Corp.*, 385 Fed.Appx. 423, 431 (6th Cir. 2009) (no typicality where "there are defenses unique to the individual claims of the class members"). In summary, Marshall is not even a member of the class and has no claims against Defendants because ████████████████ ███████████████████████████████ and Marshall cannot serve as a class representative.

### B. Plaintiffs Lack Knowledge Regarding Their Claims And Have Abdicated Control To Their Lawyers.

Class representatives also are not adequate where they "almost totally lack familiarity with

the facts of the case" and their knowledge is "limited to derivative knowledge acquired solely from counsel." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 n.18 (5th Cir. 2001); *see also Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515, 520 (N.D. Ohio 2013) (stating that a class representative must have, inter alia, an "understanding of the basic facts underlying the claims"); *In re Telectronics Pacing Sys., Inc.*, 168 F.R.D. 203, 218–19 (S.D. Ohio 1996) ("In order to be a class representative who will vigorously prosecute a class action, the representative must have more knowledge than a lay person about the class action."). Furthermore, class representatives are obligated to "take an active role in and control the litigation[.]" *Berger*, 257 F.3d at 484. "Class action lawsuits are intended to serve as a vehicle for capable, committed advocates to pursue the goals of the class members through counsel, not for capable, committed counsel to pursue their own goals through those class members." *Id.* A court thus "may deny class certification when class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 451 (S.D. Ohio 2009). Here, Plaintiffs' deposition testimony demonstrates their substantial confusion and lack of knowledge regarding the claims asserted in the Amended Complaint, their lack of an active role in the litigation, and their abdication of their responsibilities to their lawyers. This is especially true as to Plaintiff Sweeney.

     **1.**    **Plaintiff Sweeney's Deposition Testimony Demonstrates His Lack Of Knowledge And Active Participation In This Lawsuit.**

At deposition, Sweeney testified █████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



*See* Section II.C.1 *supra*.

Furthermore, as discussed above, the claims asserted in the lawsuit are premised on the assertion that participants to the Guaranteed Fund should have received a higher rate of return, and that the Guaranteed Fund should not have been offered as an investment option, either because it was imprudent to do so, or because it was illegal for Nationwide Mutual to obtain the Annuity Contract from its affiliate, Nationwide Life. *See* Section II.B *supra*. Sweeney's testimony demonstrates that he has no idea what his claims are about or what relief he is seeking.

Sweeney, for example



This, of course, is directly contrary to the claims asserted and the relief sought in the Amended Complaint.

Even worse, Sweeney was unable to explain his own Declaration submitted to this Court with Plaintiffs' class certification motion. Paragraph 4 of that Declaration states Sweeney is bringing this action to address "issues referenced in the amended class action complaint relating to the selection and retention of the guarantee fund in the plan." *See* Sweeney Declaration at ¶ 4.

At his deposition, however, ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ It is fair

to say, based on his own testimony, Sweeney has no idea what this lawsuit is about, has made no

effort to date to learn, and has simply abdicated control to his lawyers.

> **2. Plaintiff Marshall's Deposition Testimony Demonstrates His Lack Of Knowledge And Active Participation In This Lawsuit.**

Marshall's knowledge of and participation in this lawsuit is no better. Marshall testified

that ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████. *See* Section II.C.2 *supra*. Furthermore, Marshall's

testimony demonstrates substantial confusion regarding what this case is about.

Marshall initially testified ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████. Plaintiffs, however,

are not asserting any such claims in the Amended Complaint. And, while the Amended Complaint

expressly alleges that it was illegal for Nationwide Life to provide the Annuity Contract backing

the Guaranteed Fund, ████████████████████████████████████████████████████

████████████████████████████████████ Like Sweeney, Marshall is confused about the claims

asserted in the Amended Complaint, and lacks knowledge of basic facts of the case.

In summary, Plaintiffs' deposition testimony demonstrates they "lack familiarity with the facts of the case" and their knowledge is "limited to derivative knowledge acquired solely from counsel." *Berger* at 483 n.18.  Because they have so "little knowledge of and involvement in the class action" that "they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys," Plaintiffs are not adequate class representatives. *Ross*, 257 F.R.D. at 451.

### C.  Plaintiffs' Claims Are Antagonistic To And In Conflict With The Interest Of The Putative Class.

Class representatives also are not adequate where their claims and interests are antagonistic to and in conflict with those of other putative class members.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997); *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir.2000); *Smith v. Babcock*, 19 F.3d 257, 264 n. 13 (6th Cir.1994).  Here, the claims asserted in the Amended Complaint are in conflict with not only other putative class members' interests but also Plaintiffs' own deposition testimony regarding the Guaranteed Fund.

Plaintiffs assert in this lawsuit that Defendants breached their ERISA fiduciary duties by selecting and retaining the Guaranteed Fund as an investment option, and that it was an ERISA prohibited transaction for Nationwide Mutual to obtain the Annuity Contract from its affiliate, Nationwide Life.  If Plaintiffs prevail on these claims, Nationwide Mutual may no longer be able to offer the Guaranteed Fund to Plan participants.  Yet, directly contrary to these claims, ███████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████

Furthermore, Sweeney testified ████████████████████████████████████████████

25

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████ Yet, as noted, Nationwide Mutual may no longer be able to offer the Guaranteed Fund if Plaintiffs prevail. This is directly contrary and antagonistic to Plaintiffs' own testimony and undoubtedly to the many other putative class members who like the Guaranteed Fund and want to continue investing in it. Indeed, courts have held that ERISA plaintiffs are not adequate class representatives, and a class cannot be certified where, as here, similar conflicts of interest exist. *See Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 315 (5th Cir. 2007) (conflict of interest between ERISA plaintiff and putative class members existed, where plaintiff sought injunctive relief dissolving fund that "thousands of Plan Participants . . . continued to direct money into"); *Spano v. The Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011) ("It is not enough to say that the named plaintiffs want relief for the plan as a whole, if the class is defined so broadly that some members will actually be harmed by that relief").

Lastly, the potential elimination of the Guaranteed Fund would *harm* putative class members. The Guaranteed Fund has provided *above-market returns* to participants throughout the class period to the present. The most similar alternative stable value investment funds have provided *lower* returns. *See* Section II.B *supra*. In other words, there is no investment option similar to the Guaranteed Fund that consistently provides the same or higher *guaranteed* returns. Elimination of the Guaranteed Fund would therefore harm putative class members and make them worse off. This makes this lawsuit unique in that it appears to be the only known ERISA case in which the plaintiffs are seeking relief that could result in *lower* returns to class members. This is

yet another strong indication that this is an improper lawyer-driven class action. Accordingly, Plaintiffs are not adequate representatives because the claims they are asserting are antagonistic to and in conflict with the interests of the putative class.[5]

### D. Plaintiffs Are Not Adequate For Additional Reasons.

Plaintiffs are not adequate representatives for additional reasons as well. First, Plaintiffs have failed to exhaust their administrative remedies with respect to claims involving interpretation of the Plan. Section 13.01 of the Plan provides that participants may submit an administrative claim regarding any dispute they may have. *See* Sweeney Depo. Ex. 5 (excerpts attached as Ex. B). While Plaintiffs were not required to exhaust administrative remedies as to their breach of fiduciary duty claims, they *were* required to do so with respect to any claims involving interpretation of the NSP. *Hitchcock v. Cumberland University*, 851 F.3d 552, (6th Cir. 2017) (distinguishing between plaintiff's statutory fiduciary duty claims and plaintiff's "plan-based" claims involving "the Plan's contractual terms"). ███████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ Accordingly, Plaintiffs are barred from pursing their claims (either individually or on a class basis) to the extent their claims are based on interpretation of the NSP's contractual terms. *See, e.g.*, Am. Complaint ¶ 92(a) (Doc. 34) ("Nationwide breached these fiduciary duties by . . . Failing to reimburse the expenses associated

---

[5] Marshall's interests are also in conflict with those of the remainder of the class because to proceed in this litigation, he would need to tender back his severance payment—an amount far in excess of anything he could hope to recover in this litigation (even assuming he had not waived his right to relief). *See supra* Part III.A; *see also In re Nortel Networks Corp. ERISA Litigation*, No. 3:03-MD-01537, 2009 WL 3294827, at *17 (M.D. Tenn. Sept. 2, 2009) (stating the "risk that Plaintiffs would have to tender back their severance benefits . . . creates economic incentives antagonistic to proceeding with the suit and establishing any form of liability.").

with the Guaranteed Fund as required by the Plan Document").

Second, 

Plaintiffs refused to produce the requested documents in advance of the deposition and have indicated they intend to take the full 30 days provided by Civil Rule 34 before responding. Defendants reserve the right to further brief this issue once the requested documents are produced.

Lastly, Plaintiffs submitted as "Exhibit 1" to their Declarations a form regarding the "duties of class representatives." Doc. 117-3 (PageID 5800); Doc. 117-4 (PageID 5804). The form is signed by each of the Plaintiffs, and among other things, promises each of them a reward of up to $25,000 for participating in this lawsuit. Notably, however, the form is the last page of a four-page document. Plaintiffs have refused to produce the other three pages. Plaintiffs are not entitled to present to the Court only one page of a four page document, and hide the remaining pages from the Court and Nationwide. Presumably, the missing three pages contain further information regarding the promises and representations made to Plaintiffs regarding their participation in this lawsuit. The Declarations should not be considered by the Court, and Plaintiffs are not adequate representatives, where, as here, they are attempting to hide relevant information from the Court.

## IV. PLAINTIFFS' CLAIMS ARE NOT COMMON OR TYPICAL.

Rule 23(a)'s adequacy requirement often overlaps and merges with the commonality and typicality requirements. *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982); *In re Am. Med. Systems, Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). Generally,

"[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury' . . . not merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011). Typicality, in turn, requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). That premise is "lacking" when members of the class have "no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members[.]" *Romberio v. UnumProvident Corp.*, 385 Fed.Appx. 423, 431 (6th Cir. 2009).

As detailed above, there are several defenses specific to at least one of the named plaintiffs, ███████████████████████. *Supra* Part III.A. These "unique defenses," which are "likely to usurp a significant portion of [Marshall's] time and energy," create "a danger that the absent class members will suffer" from their representative's "preoccup[ation] with defenses unique to [him]." *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 646 (S.D. Ohio 2017); ███████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████ Such defenses make Marshall's claims atypical of those of the remaining class members.

Moreover, even beyond the defenses applicable to the named plaintiffs, the availability of consent or ratification defenses for other members of the putative class makes their claims atypical of one another. ERISA's fiduciary duties "draw much of their content from the common law of trusts," *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996), and the "common law of trusts . . . offers a starting point for analysis of ERISA," *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,

530 U.S. 238, 250 (2000). At common law, courts recognized that a person who consented to a trustee's course of action in advance or who ratified that course of action later could not then hold the trustee liable for that conduct. *See* Restatement (Third) of Trusts § 97; Restatement (Second) of Trusts § 216; Bogert's the Law of Trusts and Trustees §§ 941-942. That consent or ratification would be effective if the beneficiary knew the material facts surrounding the transaction and the legal consequences of their consent or ratification. *See* Restatement (Third) of Trusts § 97 (requiring that at the time of ratification or consent, the beneficiary was "aware of [his] rights and of all material facts and implications that the trustee knew or should have known relating to the matter"); Bogert's the Law of Trusts and Trustee's § 941 (for consent, "[n]ot only must be beneficiary be informed as to the facts surrounding the transaction to be approved, but he must also be made cognizant of the legal effect of his consent"); *id.* § 942 (for ratification, a trustee must show "that the beneficiary had full knowledge of both the facts of the transaction and of its consequences so far as the legal rights of the beneficiary were concerned"). When a beneficiary has that knowledge, courts have recognized the beneficiary's approval as ratification of an ERISA fiduciary's actions. *E.g.*, *Mc Manus & Pellouchoud, Inc. Emps.' Profit Sharing Tr. v. L. F. Rothschild, Unterbery, Towbin*, No. 87 C 462, 1989 WL 100103, at *1 (N.D. Ill. Aug. 23, 1989) (applying ratification where a plaintiff was "made aware of the risks of the transactions in the Trust account," yet "allowed the transactions to continue"); *Schetter v. Prudential-Bache Secs., Inc.*, 695 F. Supp. 1077, 1081, 1083 (E.D. Cal. 1988) (similar).

Here, it is likely that some portion of plan participants knew the facts material to the alleged ERISA violations and their implications under ERISA—and nonetheless signed up for the Guaranteed Fund. Participants were provided with fund fact sheets and summary plan descriptions that disclosed features relevant to Plaintiffs' claims: namely, the fees and charges related to the

Guaranteed Fund, the crediting rate, and the fact the monies in the Fund were guaranteed by a Nationwide affiliate—as well as their rights under ERISA.[6] Given the nature of their employment in the insurance industry, certain participants would have understood the practical and legal significance of those facts. After all, Nationwide Life offers similar guaranteed investment contracts not just to the NSP, but to numerous other entities. Schley Aff. ¶ 9 (Doc. 92-2). By virtue of their everyday duties in the Nationwide workplace, some participants would have understood how these facts affect the ultimate crediting rate, and the risks and benefits a guaranteed fund provides. *Id.* ¶¶ 4-7. Further, some participants also support Nationwide and its affiliates in ensuring ERISA compliance and in defending against alleged ERISA violations, and so have even greater familiarity with the ERISA obligations raised here.

Whether any given class member has that knowledge, though, depends on the facts and circumstances surrounding a particular participant. The scienter component of evaluating whether a participant had ratified and provided consent thus necessarily requires individualized inquiries that defeat typicality. If some individual class members have unique defenses, "it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." *Romberio*, 385 F. App'x at 431; *see also Smith v. Cash Am. Int'l, Inc.*, No. 1:15-CV-00760-MRB, 2019 WL 2352921, at *5 n.1 (S.D. Ohio June 4, 2019) (explaining that "Sixth Circuit jurisprudence" contradicts the argument "that defenses are not relevant to the Court's typicality

---

[6] *E.g.,* Fund Fact Sheet (NMIC-000851) (attached as Exhibit 2 to Frisch Dec. at Doc. No. 128, 132) ("Participant balances in the Guaranteed Fund are guaranteed by Nationwide Life Insurance Company. The guarantee is based upon the credit risk of Nationwide Life Insurance company."); *id.* (listing "Fund Expenses" and identifying past crediting rate); SPD (NMIC-000363) at 23 (attached as Ex. E) (detailing rights under ERISA); *id.* at 9 ("[T]he Guaranteed Fund, guarantees principal and earnings. Nationwide Life Insurance Company guarantees the participant balances in the Guaranteed Fund. The guarantee is based upon the credit risk of Nationwide Life Insurance Company.").

analysis"). Accordingly, Plaintiffs have failed to satisfy Rule 23(a)'s typicality requirement.

## V.    A RULE 23(b)(1) CLASS CANNOT BE CERTIFIED.

### A.    Plaintiffs Are Seeking Monetary Relief.

In *Dukes*, the U.S. Supreme Court held that a Rule 23(b)(2) class cannot be certified where the plaintiffs' claims for monetary relief predominate over, and are "not incidental to," claims for declaratory or injunctive relief. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). As the Supreme Court reasoned, Rule 23(b)(2) lacks the procedural and due process protections necessary for a damages class – protections that are found in Rule 23(b)(3) but not Rule 23(b)(2). *Id.* at 361-363. The Sixth Circuit, in turn, has required district courts to address the due process concerns underlying *Dukes* in the Rule 23(b)(1) as well. *See Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 281 (6th Cir. 2018) ("the due process concerns that led the Court to conclude that 'individualized monetary claims belong in Rule 23(b)(3)' are similar for (b)(1) classes").

Notably, this Court, the Sixth Circuit and other courts have applied this analysis in the ERISA context, concluding that ERISA claims predominately seeking monetary relief cannot be certified under Rule 23(b)(1). *See Adams v. Anheuser-Busch Companies*, 2012 WL 1058961 at *9 (S.D. Ohio 2012) (Graham, J.) ("Some courts have held that a Rule 23(b)(1)(A) action should not be certified where the suit is one for compensatory damages"; certifying class where "Plaintiffs do not seek compensatory damages in this case"); *Clemons*, 890 F.3d at 281; *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 318 (5th Cir. 2007) ("The focus on monetary damages would set this case apart from the examples of classic Rule 23(b)(1) class actions"); *In re First American Corp. ERISA Litigation*, 263 F.R.D. 549, 559-560 (C.D. Cal. 2009) (denying class certification of ERISA claims under Rule 23(b)(1)(A) because "the Plan Participants primarily seek monetary damages"); *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 321

(S.D.N.Y. 2003) ("Were this an action solely for declaratory relief . . . Plaintiffs could argue for certification under Rule 23(b)(1)(A) . . . The present action seeks to certify a Class with claims to monetary recovery which must be determined on an individual basis").

Here, Plaintiffs' damages claims predominate over any claims for declaratory or injunctive relief.  In Paragraphs 67 and 68 of their Amended Complaint, Plaintiffs expressly allege that the putative class members have been damaged in excess of $70 million in the form of alleged excess compensation paid to "Nationwide."  *See* Am. Complaint ¶¶ 67-68 (Doc. 34).  Plaintiffs further allege that they and the putative class members "have suffered millions of dollars of losses," which Plaintiffs seek to have restored.  *Id.* at ¶¶ 93, 125, 127, 145.

Indeed, at deposition,  Should any doubt remain, Plaintiffs do not even mention declaratory or injunctive relief in their class certification motion, and are **not** seeking certification under Rule 23(b)(2), which expressly applies to claims for declaratory and injunctive relief.  Plaintiffs' damages claims predominate, and are not incidental to, any claims for declaratory or injunctive relief.  Accordingly, a class cannot be certified under Rule 23(b)(1) as a matter of law.

**B.    This Is Not A Limited Fund Case.**

It is black-letter law that Rule 23(b)(1)(B) applies to limited fund cases.  *In re Telectronics Pacing Systems, Inc.*, 221 F.3d 870, 876-877 (6th Cir. 2000) ("The traditional and most common

use of subsection (b)(1)(B) class actions is in 'limited fund' cases where claims are aggregated against a *res* or preexisting fund insufficient to satisfy all claims"); *In re Medtronic, Inc.*, 1998 WL 35161989 at *6 n.4 (S.D. Ohio Feb. 11, 1998) (Rule 23(b)(1)(B) "applies in 'limited fund' cases, in which numerous persons initiate claims against a fund insufficient to satisfy all claims").

Furthermore, the Supreme Court has counseled "against the adventurous application of Rule 23(b)(1)(B)[.]" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999). As the Supreme Court explained, "the greater the leniency in departing from the historical limited fund model, the greater the likelihood of abuse . . . The prudent course, therefore, is to presume that when subdivision (b)(1)(B) was devised to cover limited fund actions, the object was to stay close to the historical model." *Id.* at 842.

Courts have applied these same principles to ERISA cases as well. *See Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 318 (5th Cir. 2007) ("Numerous courts . . . have conclusionally declared that a (b)(1) class is appropriate in an ERISA lawsuit 'on behalf of the plan.' Of course, a Rule 23(b)(1)(B) limited fund class action is plainly not appropriate"); *Ned-Sthran v. Methodist Hospitals of Dallas*, 2008 WL 5420601 at *6 (N.D. Tex. Nov. 25, 2008) ("A Rule 23(b)(1)(B) limited fund class action 'is plainly not appropriate' in an ERISA lawsuit on behalf of the plan"); *see also Spano v. The Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011) (reversing certification of an ERISA class under Rule 23(b)(1)(B)).

Here, Plaintiffs do not argue that this is a limited fund case. It is not. Furthermore, given that Plaintiffs predominately seek monetary relief, the same due process concerns that preclude certification of a Rule 23(b)(1)(A) class apply to Rule 23(b)(1)(B) as well. *See Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 322 n. 12 (S.D.N.Y. 2003) (noting Rule 23(b)(1) "raises particular concerns" because it does not provide class members "the right to opt out"). There also is no

reason to depart from the historical limited fund model on which Rule 23(b)(1)(B) is based – a practice the Supreme Court has counseled against. *Ortiz* at 842. Accordingly, a limited fund class cannot be certified here under Rule 23(b)(1)(B) as a matter of law.

Lastly, while some courts have certified Rule 23(b)(1)(B) classes in ERISA cases, they typically have done so "where there is no issue of individualized relief for the beneficiaries." *Nelson v. Ipalco Enterprises, Inc.*, 2003 WL 23101792 at *10 (S.D. Ind. Sept. 30, 2003). Here, Plaintiffs' claims for relief are highly individualized. While Plaintiffs purport to seek relief on behalf of the Plan, it would not be possible to determine the total amount of monetary relief without examining each individual Plan participant's contributions to the Guaranteed Fund. It likewise would be necessary to individually examine each Plan participant's account to determine the amount of relief each Plan participant is entitled to. *See Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008) (monetary recovery on behalf of plan "must be allocated to the individual accounts injured by the breach"). Accordingly, a limited fund class is not appropriate here.

### C. Individual Actions Will Not Give Rise To Incompatible Standards Of Conduct Or Be Dispositive Of The Interests Of Non-Parties.

Even if Plaintiffs' monetary claims somehow did not predominate – and they do – and even if this were a limited fund case – it is not – a Rule 23(b)(1) class still cannot be certified. Rule 23(b)(1)(A) applies where individual actions would "create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]" Rule 23(b)(1)(B), in turn, applies where "adjudications with respect to individual class members . . . would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."

Here, individual actions would not create incompatible standards of conduct and would not

be dispositive of the interests of putative class members.  ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████  As a result, Nationwide has no ongoing obligations whatsoever with respect

to Sweeney or his former participation in the NSP.  While a damages award would make Sweeney

whole for any alleged monetary harm, declaratory or injunctive relief would not impose any

standard of conduct whatsoever with respect to Sweeney.

Marshall, in turn, ████████████████████████████████████, as discussed above.

He also is a former Nationwide employee ████████████████████████████████████

████████████████████  As with Sweeney, Marshall's real claim is for monetary damages.

Undoubtedly, it is because of these facts that Plaintiffs are not seeking certification of a

declaratory/injunctive relief class under Rule 23(b)(2).  Sweeney and Marshall simply do not have

any declaratory or injunctive relief claims that would give rise to incompatible standards of

conduct, or that would prejudice putative class members.

Furthermore, as discussed, the relief Plaintiffs are seeking is in conflict with the absent

class members who have chosen to invest in the Guaranteed Fund.  One court reversed certification

of an ERISA Rule 23(b)(1) class for similar reasons:

> Focusing only on the class that the district court actually certified, we cannot find
> the necessary identity of interest among all class members. **A claim of imprudent
> management, for example, is not common if the alleged conduct harmed some
> participants and helped others, which appears to be the case.** Without the
> common interest, there is no reason to assume that an adjudication of one person's
> claim "as a practical matter, would be dispositive of the interests of the other
> members not parties to the individual adjudications or would substantially impair
> or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B).

*Spano v. The Boeing Co.*, 633 F.3d 574, 588 (7th Cir. 2011) (emphasis added).  Here, Plaintiffs

likewise do not have a common interest with the putative class members who have benefited from

the Guaranteed Fund and who want to continue investing in it.  A Rule 23(b)(1) class cannot be

certified for this reason as well.

## VI. **A RULE 23(b)(3) CLASS CANNOT BE CERTIFIED.**

A "plaintiff seeking class certification must present a damages model that functions on a class-wide basis." *Rodney v. Northwest Airlines*, *Inc.*, 146 Fed.Appx. 783, 791 (6th Cir. 2005) (denying certification where plaintiffs' experts "have admitted that they have not yet identified any methodology for computing damages"); *Bartell v. LTF Club Operations Co.*, 2016 WL 11596601 at *7 (S.D. Ohio Aug. 8, 2016) ("classwide damages must be calculable through the application of a common methodology"; citing *Rodney*). This Court, in turn, must conduct a "rigorous analysis" to determine whether the model will, in fact, be capable of determining damages on a class-wide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35-36 (2013). Here, Plaintiffs have failed to present any damages methodology, let alone discuss the issue in their motion. This is fatal to Plaintiffs' request for class certification under Rule 23(b)(3).

Rule 23(b)(3) also requires that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" In a recent ERISA case involving similar allegations as here (and the same plaintiffs' counsel), a court denied class certification under Rule 23(b)(1) and (b)(3) given the individualized issues involved. *See Davis v. Stadion Money Management*, *LLC*, 2021 WL 4400298 (D. Neb. Sept. 27, 2021). Specifically, in *Davis*, the plaintiff alleged the defendants violated ERISA by offering a "guaranteed" fund that charged higher fees than alternative stable value funds. *See Davis* Second Am. Complaint ¶¶ 56, 58 (D. Neb. Case No. 8:19-cv-00556; Doc. 108). The *Davis* plaintiff further alleged the defendants engaged in self-dealing and a conflict of interest because the guaranteed fund was offered through a close marketing partner. *Id.* at ¶¶ 2-5, 7, 59-60, 87.

The *Davis* court held that a class could *not* be certified because of the individualized issues

presented, particularly relating to the inability to calculate monetary relief on a class-wide basis.

As the *Davis* court explained:

> Plaintiffs have not reliably identified alternative investment benchmarks in their methodology. Identifying appropriate alternative investment comparators would entail examination of thousands of plans and differing investment lineups and then the Court would have to determine how those alternative investments' varying risk attributes, charges, and fees affected their returns at varying points in time.

*Davis* at \*7.  Given these individualized issues, the court held that a class could not be certified

under Rule 23(b)(1) as well:

> The question of whether a certain rate of return is reasonable will not generate a common answer throughout the proposed class. Therefore, there is no potential for inconsistent or varying adjudications and certification under Rule 23(b)(1) is likewise inappropriate.

*Id.* at \*8.  This Court should reach the same result here.

The *Davis* case is also noteworthy in that the plaintiff at least attempted to present, through expert testimony, a class-wide damages model.  *Davis* at \*3.  Here, despite the fact that the same counsel are involved, Plaintiffs have made no effort whatsoever to identify a class-wide damages methodology for this Court.  This is no accident.  The Guaranteed Fund provided *higher returns* than the alternative benchmark stable value funds.  Plaintiffs simply cannot present any damages model demonstrating that class members suffered any injury at all, let alone that any injury could be calculated on a class-wide basis.  Accordingly, a class cannot be certified under Rule 23(b)(3).

## VII.    CONCLUSION.

Plaintiffs cannot satisfy any of the requirements of Rule 23.  Plaintiffs are not adequate and their claims are not typical, as required by Rule 23(a), because ███████████████████████ ███████████████████████, and both Plaintiffs lack knowledge of or involvement with this lawsuit.  A class also cannot be certified under Rule 23(b)(1) because Plaintiffs' claims for monetary relief predominate.  A Rule 23(b)(3) class, in turn, cannot be satisfied because Plaintiffs

have failed to present a damages model, and because individualized issues predominate over any purported common questions.

And, most importantly, a class cannot be certified because of the potentially irreconcilable conflict between Plaintiffs' claims and the interests of the putative class. The Guaranteed Fund has provided *above-market* returns to Plan participants. The next closest alternative stable value funds have provided *lower returns*. Yet, if Plaintiffs prevail on their claims – that the Guaranteed Fund is an illegal prohibited transaction under ERISA – Nationwide may no longer be able to offer the Guaranteed Fund. Nationwide could be forced to replace it with an alternative investment option providing *lower* returns. In other words, the relief Plaintiffs seek could actually *harm* the putative class members who are still invested in the Guaranteed Fund. No court has ever certified an ERISA class where such an irreconcilable conflict exists between the claims asserted by Plaintiffs and the actual interests of putative class members. In fact, this irreconcilable conflict demonstrates that this is a lawsuit controlled by the lawyers and not by the Plaintiffs. For the foregoing reasons, Plaintiffs' motion for class certification should be denied.

Dated:  March 23, 2023            Respectfully submitted,

**CARPENTER LIPPS LLP**

/s/ Michael H. Carpenter
Michael H. Carpenter (Ohio Bar #0015733)
   *Trial Attorney*
Jeffrey A. Lipps (Ohio Bar # 0005541)
280 North High Street
Columbus, Ohio 43215
Telephone: 614-365-4100
Fax: 614-365-9145
Email: carpenter@carpenterlipps.com
Email: lipps@carpenterlipps.com

**JONES DAY**

Dustin M. Koenig (Ohio Bar #0092426)
Jordan M. Baumann (Ohio Bar #0093844)
Alexandra L. Schill (Ohio Bar #0095612)
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215
Telephone: (614) 469-3939
Email: dkoenig@jonesday.com
Email: jbaumann@jonesday.com
Email: aschill@jonesday.com

Evan Miller (admitted *pro hac vice*)
David T. Raimer (admitted *pro hac vice*)
51 Louisiana Avenue N.W.
Washington, DC 20001
Telephone: (202) 879-3939
Email: emiller@jonesday.com
Email: dtraimer@jonesday.com

*Counsel for Defendants Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiffs.


/s/ Michael H. Carpenter
Michael H. Carpenter

*Counsel for Defendants Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach*

41