UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RYAN SWEENEY,** *et al.*,

    **Plaintiffs,**

    v.                                                Civil Action 2:20-cv-1569
                                                                 **Judge James L. Graham**
**NATIONWIDE MUTUAL**                     **Magistrate Judge Chelsey M. Vascura**
**INSURANCE COMPANY,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

Plaintiffs, Ryan Sweeney and Bryan Marshall ("Plaintiffs"), bring this putative class action asserting violations of the Employment Retirement Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1001 *et seq*. This matter is before the Court on Plaintiffs' Motion to Compel Discovery (ECF Nos. 111, 115). For the following reasons, Plaintiffs' Motion to Compel is **GRANTED IN PART and DENIED IN PART**.

                                        **I.**       **BACKGROUND**

Plaintiffs' allegations are summarized in detail in the Court's Opinion and Order of March 18, 2022 (ECF Nos. 64, 67). In short, Defendant Nationwide Mutual Insurance Company ("Nationwide Mutual") sponsors a defined-contribution pension plan (the "Plan") for its employees. Plan participants have a variety of investment vehicles to choose from when making contributions to the Plan, and the most popular option is the Guaranteed Investment Fund ("GIF"). The GIF is a group annuity contract between the Plan and Defendant Nationwide Life Insurance Company ("Nationwide Life"), an indirect subsidiary of Nationwide Mutual.

Contributions to the GIF are transferred to and maintained in Nationwide Life's general account, where they are invested by Nationwide Life.

Nationwide Life guarantees the contributions made to the GIF and also pays the Plan a declared interest rate on those contributions. The interest rate is called a "crediting rate" and is set annually by Nationwide Life. Nationwide Life provides custodial, actuarial, investment, and accounting services to the Plan related to the Guaranteed Investment Fund. In return, Nationwide Life compensates itself by reducing the credit otherwise owed to the Plan. The amount of compensation is not dictated by contract; instead, Nationwide Life determines the amount of compensation it will earn.

Plaintiffs filed the present putative class action on January 26, 2020. (ECF No. 1.) Plaintiffs' Amended Complaint asserts claims under ERISA for violation of fiduciary duties under 29 U.S.C. § 1104, prohibited transactions with parties in interest under § 1106, self-dealing under § 1106, and inurement of plan benefits to the employer under § 1103. (ECF Nos. 26, 34.) Plaintiffs have since moved to certify a class consisting of "[a]ll participants and beneficiaries in the Nationwide Savings Plan who were invested in the Guaranteed [Investment] Fund at any time from March 26, 2014 through the date of final judgment in this action, excluding the individual Defendants." (Mot. for Class Certification, ECF Nos. 117, 120.)

After an informal conference with the Court to discuss several discovery disputes, Plaintiffs filed the subject Motion to Compel Discovery. (ECF Nos. 111, 115.) Plaintiffs seeks further production of documents and interrogatory answers relating to compensation received by Nationwide Life in connection with the GIF, the assets in Nationwide Life's general account, and Nationwide Life's guaranteed annuity contracts with other institutions and plans. Defendants oppose the Motion on grounds that the requested discovery is not relevant to the claims or

defenses in this action and is not proportional to the needs of the case. (Defs.' Mem. in Opp'n, ECF Nos. 123, 127.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26, which sets forth the permissible scope of discovery, provides:

> **Scope in General**. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). However, revisions to the Federal Rules of Civil Procedure in 2015 "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26, Advisory Committee Notes to the 2015 Amendment. "The proportionality standard is the instrument by which judges and practitioners are to bring about a change in the culture of discovery, requiring lawyers, with the guidance of involved judges, to 'size and shape their discovery requests to the requisites of a case.'" *Waters v. Drake*, 222 F. Supp. 3d 582, 605 (S.D. Ohio 2016) (quoting Chief Justice Roberts, 2015 Year-End Report on the Federal Judiciary at 7).

"[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010

WL 2927254, at *5 (S.D. Ohio July 23, 2010) (quoting *Clumm v. Manes*, No. 2:08–cv–567, 2010 WL 2161890 (S.D. Ohio May 27, 2010)); *see also Berryman v. Supervalu Holdings, Inc.*, No. 3:05-cv-169, 2008 WL 4934007, at *9 (S.D. Ohio Nov. 18, 2008) ("At least when the relevance of a discovery request has been challenged the burden is on the requester to show the relevance of the requested information.") (internal citation omitted). However, the burden to demonstrate that the requested discovery would be disproportional to the needs of the case rests with the objecting party. *Bros. Trading Co. v. Goodman Factors*, No. 1:14-CV-975, 2016 WL 9781140, at *2 (S.D. Ohio Mar. 2, 2016) (Rule 26(b)(1) does not place the burden of addressing proportionality considerations on the requesting party; nor does it permit the opposing party to avoid responding simply by making a boilerplate objection on grounds of proportionality) (quoting Fed. R. Civ. P 26, Advisory Committee Notes (2015)).

### III.     ANALYSIS

As an initial matter, Defendants' arguments against supplementing their discovery responses rely heavily on their asserted statutory defenses—namely, (1) that the Plan is a "transition policy" that satisfies the requirements of 29 U.S.C. § 1101(b)(2) and 29 C.F.R. § 2250.401c-1, such that Defendants are insulated from liability under 29 U.S.C. §§ 1104 and 1106, and (2) that Defendants meet the requirements for the affirmative defense against claims for prohibited transactions and self-dealing under 29 U.S.C. § 1108(b)(5). Much of Defendants' arguments as to these defenses amount to a contention that they are not liable, and therefore they should not be forced to participate in discovery. As noted in the Court's March 18, 2022 Opinion and Order denying Defendants' Motion to Dismiss, Defendants have a history of "put[ting] the cart before the horse" in this regard. (ECF Nos. 64, 67) There has been no finding that the Plan is a transition policy or that Defendants qualify for § 1108(b)(5)'s affirmative defense. Defendants' mere assertion of those defenses does not foreclose otherwise permissible discovery.

4

Indeed, Defendants' assertion of these defenses underscores the relevance of much of Plaintiff's requested discovery. One of the criteria of § 1108(b)(5)'s affirmative defense is that the Plan pays "no more than adequate consideration" to Nationwide Life. ERISA defines "adequate consideration" in this context as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." 20 U.S.C. § 1002(18)(B). Thus, Defendants' asserted § 1108(b)(5) defense makes relevant both the amount of consideration paid to Nationwide Life and the process by which that amount was determined. *See Chao v. Hall Holding Co.*, 285 F.3d 415, 437 (6th Cir. 2002) ("When determining 'adequate consideration,' § [1002](18)(B) requires not only a determination of fair market value, but also an examination of the process that led to the determination of fair market value in light of § [1104]'s fiduciary duties."). Much of Plaintiffs' requested discovery goes directly to these questions.

Further, the Court need not credit Defendants' assertion that "the Plan—Nationwide Mutual—does not pay any consideration whatsoever to Nationwide Life" in the face of contrary indications in Nationwide Life's own ERISA Section 401(c) Initial Disclosure to the Plan, which lists "the costs of maintaining the Deposit Fund, investment expenses, risk and profit charges, taxes, the cost of subsidizing interest rates for other contracts . . ., and the cost of maintaining adequate surplus to support the Deposit Fund" as expenses recovered from the Plan "as part of the interest rate setting process." (ECF No. 87-3, PAGEID #1768.) Plaintiffs also identify a document produced by Defendants in discovery that lists "Management Fees" of certain percentages associated with the GIF as of 2018. (ECF No. 128-1, PAGEID #6162.) Similarly, Defendants' insistence that no *fees* were paid in connection with the GIF is not dispositive of the broader question of whether the total *consideration* paid in connection with the GIF was "no

5

more than adequate." Defendants' own consulting firm, Callan LLC, explained that the GIF "is a fixed account product without an explicit fee; rather, the provider retains a portion of the investment gains and credits the rest to the participants." (Weymouth Dep. 57, ECF No. 132-1.) Thus, although the parties may not have characterized any consideration paid to Nationwide Life as a "fee," Nationwide Life still received consideration in the amount of the difference, or "spread," between the returns on investments of Plan contributions to the GIF and the crediting rate paid to the Plan.

Finally, Defendants' proportionality objections are unsupported. Although Defendants assert that running ESI searches to identify responsive documents resulted in a hit report of over 580,000 documents, Defendants did not make the Court's suggested amendments to Plaintiffs' proposed search strings prior to running this hit report. (*See* Order, ECF No. 103.) Moreover, Defendants do nothing to place their burden of document review and production in the context of the amount in controversy of this case, which, based on Plaintiffs' allegations, may be in the tens of millions of dollars.

With these general principals in mind, the Court now turns to Plaintiffs' specific discovery requests.

**A.     GIF Expenses**

Plaintiffs' Request for Production Nos. 18 and 20 seek documents related to GIF expenses charged by Nationwide Life:

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications concerning the negotiation and/or Renegotiation of the Component Expenses or Total Expenses[1] from 2008 through present.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Communications concerning the Component Expenses or Total Expenses, including Documents and Communications demonstrating the process for setting such expenses, Documents and Communications demonstrating who at Nationwide was involved in that process, and Documents and Communications demonstrating when that process occurred.

The expenses charged by Nationwide Life in connection with the GIF are part the total consideration that Nationwide Life received from the Plan; therefore, these requests are relevant, at minimum, to Defendants' § 1108(b)(5) defense. However, the Court finds these requests overbroad. The time period for Request No. 18 is narrowed from 2008 through the present to the relevant time period, as defined by Plaintiffs' proposed class, of March 26, 2014, through the present. Request No. 20 is narrowed to read as follows: "All Documents and Communications demonstrating the process for setting Component Expenses or Total Expenses, Documents and Communications demonstrating who at Nationwide was involved in that process, and Documents and Communications demonstrating when that process occurred." Defendants must produce documents responsive to these requests as narrowed by the Court.

**B.    Compensation Received by Defendants in Connection with the GIF**

Plaintiffs' Request for Production Nos. 11 and 33 and Interrogatory No. 3 seek documents reflecting the direct and indirect compensation received by Defendants in connection with the GIF:

---

[1] Plaintiffs defined the "Component Expenses" as "the Default Risk Charge, Investment Expense, and Contract Margin, and any other expenses associated with the GIF, collectively." "Total Expenses" were defined as the sum of the Component Expenses.

**REQUEST FOR PRODUCTION NO. 11:**

Documents sufficient to identify all direct or indirect Compensation paid by the Plan to Nationwide or its Affiliates during the Subject Period,[2] including Compensation paid to Nationwide or its Affiliates as a result of the Plan's investment in the GIF.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents and Communications concerning remuneration Nationwide received for risks assumed under Group Annuity Contract No. GA-P L941 and Nationwide's operation of Group Annuity Contract No. GA-P L941.[3]

**INTERROGATORY NO. 3:**

Identify on a monthly basis the amount of Compensation that Nationwide or any Affiliate of Nationwide received directly or indirectly from the Plan's investment in the GIF or on account of the GIF during the Subject Period, and provide a breakdown of such Compensation including the specific components (Default Risk Charge, Investment Expense Contract Margin, other Component Expenses, profit margin, etc.).

Again, these requests go directly to the consideration received by Defendants in connection with the GIF and are relevant, at minimum, to Defendant's § 1108(b)(5) defense. Notably, Defendant may not limit their responses to documents related solely to direct compensation (as they attempted to do in their written response to these requests) and must include responsive documents related to indirect compensation. However, the Court again finds aspects of these requests to be overbroad. Request No. 11 is narrowed in time to the period of March 26, 2014, through the present. Request No. 33 is narrowed to read as follows: "Documents and Communications sufficient to demonstrate remuneration Nationwide received for risks assumed under Group Annuity Contract No. GA-P L941 and Nationwide's operation of Group Annuity Contract No. GA-P L941." Defendants must provide documents responsive to

---

[2] Plaintiffs defined the Subject Period as "the period on or after March 26, 2014."

[3] The GIF was made available to Plan participants through Group Annuity Contract No. GA-P L941.

8

Request Nos. 11 and 33 as narrowed by the Court, and must provide a complete answer to Interrogatory No. 3 as written.

**C.      Nationwide Life's General Account Assets**

Plaintiffs' Request for Production Nos. 22–24 seek information about the assets in Nationwide Life's general account, of which only a portion are allocated to the GIF:

> **REQUEST FOR PRODUCTION NO. 22:**
>
> All Documents and Communications concerning the selection of assets for Pool 27, including Documents and Communications concerning "Investment Guidelines: Group 7 to 10 Yr." and prospectuses, private placement memorandum, and/or other Documents describing the assets of Pool 27 for which no standard CUSIP was provided. For the avoidance of doubt, "the assets of Pool 27 for which no standard CUSIP was provided" include, for example, the assets You assigned "00-1102688", "G6177#AD5", and "00-1102731" as a "CUSIP" values.[4]
>
> **REQUEST FOR PRODUCTION NO. 23:**
>
> All Documents [and] Communications concerning the assets within the General Account or the investment of such assets during the Subject Period.
>
> **REQUEST FOR PRODUCTION NO. 24:**
>
> All Documents [and] Communications concerning the internal rate of return of the General Account during the Subject Period.

Unlike Plaintiffs' other discovery requests at issue, these requests do not pertain directly to the consideration received by Defendants in connection with the GIF. But Plaintiffs contend these requests seek relevant documents because "all [GIF] assets are pooled together in Nationwide Life's general account; yet Nationwide Life only associates a segment of its general-account assets with the [GIF]. This provides an opportunity to increase profits and/or lower the Fund's returns through creative accounting." (Ps' Mot. 17, ECF No. 111) (citations omitted). Because the allocation of assets within the general account to the pool of assets underlying the GIF would affect the GIF's investment returns, and therefore would affect the compensation

---

[4] A CUSIP number is a unique identifier that exists for most financial instruments, and "Pool 27" refers to the asset pool that Plaintiffs believe to be associated with the GIF.

9

retained by Nationwide Life when setting the crediting rate, these requests are relevant, at minimum, to Defendant's § 1108(b)(5) defense. However, the Court finds aspects of these requests to be overbroad, as the general account no doubt contains many assets unrelated to the GIF. Defendants need not respond further to Request No. 23, which the Court finds to be overbroad in its entirety. Request No. 24 is narrowed to read: "Documents and Communications sufficient to demonstrate the internal rate of return of the General Account during the Subject Period." Defendants must produce documents responsive to Request No. 24 as narrowed by the Court and Request No. 22 as written.

**D.     Process of Setting the Crediting Rate**

Plaintiffs' Request for Production Nos. 21 and 28 seek documents related to the process by which Defendants set the crediting rate for the GIF:

> **REQUEST FOR PRODUCTION NO. 21:**
>
> All Documents and Communications concerning the Crediting Rate, including Documents and Communications demonstrating the process for setting the Crediting Rate, Documents and Communications demonstrating who at Nationwide was involved in that process, and Documents and Communications demonstrating when that process occurred.
>
> **REQUEST FOR PRODUCTION NO. 28:**
>
> All Documents and Communications describing Nationwide Life Insurance Company's experience rating plan[5] and utilization of that plan.

Because the crediting rate directly affects the amount of GIF investment returns retained by Nationwide Life, these requests are relevant, at minimum, to Defendants' § 1108(b)(5)

---

[5] As part of its process for rating the GIF, Nationwide Life applies an "experience rating plan." *See* Group Annuity Contract No. GA-P L941, ECF No. 98-1, PAGEID #3384. Plaintiffs explain that "such plans may factor in past losses and returns, and the timing of Fund deposits, to calculate future crediting rates." (Pls.' Mot. 4, ECF No. 111.) Defendants' "Transition Policy" disclosure indicates that, in addition to deducting fees, "retrospective" and "prospective" factors were applied to calculate returns on the Fund. (ECF No. 87-3, PAGEID #1769–70.)

defense. However, the Court finds Request No. 21 to be overbroad and narrows it as follows: "All Documents and Communications demonstrating the process for setting the Crediting Rate, Documents and Communications demonstrating who at Nationwide was involved in that process, and Documents and Communications demonstrating when that process occurred." Defendants must produce documents responsive to Request No. 21 as narrowed by the Court and Request No. 28 as written.

### E. Nationwide's GACs with Other Institutions and Plans

Plaintiffs' Request for Production No. 19 and Interrogatory No. 4 seek documents and information relating to Defendants' group annuity contracts ("GACs") with other institutions and retirement plans:

> **REQUEST FOR PRODUCTION NO. 19:**
>
> All Documents and Communications concerning group annuity contracts You have issued to institutional investors (or maintained) during the Subject Period, including but not limited to Documents and Communications demonstrating the terms of those group annuity contracts (such as the related spread, crediting rates, Contract Margin, Cost of Capital Charge, Default Risk Charge, Expense Charge, Investment Expense, Return on Capital, Surplus Capital, and Total Expenses). For the avoidance of doubt, "group annuity contracts You have issued to institutional investors," includes, for example, the Arkansas Diamond Plan's Nationwide Fixed Account, the Nationwide Fixed Account for the State of Florida 457(b) Deferred Compensation Plan, and the Nationwide Fixed Account for the City of Marietta, Georgia 457 Deferred Compensation Plan.
>
> **INTERROGATORY NO. 4:**
>
> For every group annuity contract ("GAC") Nationwide has issued that remains in effect or was in effect during the Subject Period, Identify for each GAC (1) the counter-parties, (2) the Crediting Rates, (3) the Contract Margins; (4) the Cost of Capital Charges; (5) the Expense Charges; (6) the Return on Capital; (7) the amount of Surplus Capital; (8) Default Risk Charges; (9) Investment Expenses; and (10) amount of assets invested in connection with the GAC.

As Defendants acknowledge in their Motion for Summary Judgment, their § 1108(b)(5) defense requires them to show that "the consideration [for the insurance contract] is reasonable as compared to charges paid by arm's-length parties, *i.e.*, the 'fair market value.'" (Defs.' Mot.

11

for Summ. J. 17, ECF No. 87) (quoting *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337, 2007 WL 2263892 at *40 (S.D. Fla. Aug. 7, 2007)). Defendants' defenses also rely heavily on their assertion that the GIF paid higher crediting rates than other comparable guaranteed investment products. (*See*, *e.g.*, *id.* at 11–12.) Accordingly, the terms of other Nationwide GACs and the associated compensation received by Nationwide is relevant, at minimum, to Defendants' § 1108(b)(5) defense. The Court, however, finds these requests to be overbroad. Request No. 19 is narrowed to read: "All Documents and Communications demonstrating the terms (such as the related spread, crediting rates, Contract Margin, Cost of Capital Charge, Default Risk Charge, Expense Charge, Investment Expense, Return on Capital, Surplus Capital, and Total Expenses) of group annuity contracts You have issued to institutional investors (or maintained) during the Subject Period. For the avoidance of doubt, 'group annuity contracts You have issued to institutional investors,' includes, for example, the Arkansas Diamond Plan's Nationwide Fixed Account, the Nationwide Fixed Account for the State of Florida 457(b) Deferred Compensation Plan, and the Nationwide Fixed Account for the City of Marietta, Georgia 457 Deferred Compensation Plan." Further, Plaintiffs previously offered to narrow Interrogatory No. 4, and the Court now adopts Plaintiffs' proposal to limit this Interrogatory to (1) GACs issued to third-party clients that invested $1 billion or more in the product; (2) GACs issued to Nationwide's other in-house benefits plans (including its VEBA plan and its pension plan); and (3) any other GACs with crediting rates higher than the rate for the NSP for all or part of the putative class period. Defendants must produce documents responsive to Request No. 19 as narrowed by the Court and must provide a complete answer to Interrogatory No. 4 as narrowed by the Court.

## IV. DISPOSITION

For the foregoing reasons, Plaintiffs' Motion to Compel Discovery (ECF Nos. 111, 115) is **GRANTED IN PART and DENIED IN PART**. Defendants must supplement their responses to Plaintiffs' discovery requests as outlined above.

**IT IS SO ORDERED.**

> /s/ *Chelsey M. Vascura*
> CHELSEY M. VASCURA
> UNITED STATES MAGISTRATE JUDGE