**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Ryan Sweeney and Bryan Marshall, as individuals, and on behalf of all others similarly situated, and on behalf of the Nationwide Savings Plan, | CASE NO.   2:20-CV-01569-JLG-CMV |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| Nationwide Mutual Insurance Company; Nationwide Life Insurance Company; and the Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach, | |
| Defendants. | |

i

## INTRODUCTION

Plaintiffs have cited an extensive body of case law in this Circuit (and across the country) granting class certification in similar actions under the Employee Retirement Income Security Act ("ERISA") alleging breaches of loyalty and/or excess fees in defined contribution plans. *See* ECF 120 ("Pls.' Mem."), at 1 & n.1. In response, Defendants largely repeat arguments that these courts have already rejected. For example, Defendants spend much of their brief attacking the "adequacy" of the named class representatives (because the issues in this case are so clearly common), but each of their adequacy challenges have been soundly rejected by courts in the Sixth Circuit:

- *Release.* "Plaintiff [Marshall]'s release does not make him an inadequate class representative." *Shanehchian v. Macy's, Inc.*, 2011 WL 883659, at *8 (S.D. Ohio Mar. 10, 2011). "In *Bittinger,* a case which Defendants do not address, the Sixth Circuit rejected a challenge to class certification where the class representative and the majority of the class members had signed releases of their claims." *Yost v. First Horizon Nat. Corp.*, 2011 WL 2182262, at *11 (W.D. Tenn. June 3, 2011) (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997)).

- *Alleged Lack of Knowledge/Participation.* "Defendants have offered no persuasive evidence that Plaintiff [Marshall or Sweeney] is not an adequate representative based on his lack of familiarity with and inadequate participation in the case and, instead, have taken deposition statements out of context to support their assertion. The full record reflects that Plaintiff[s]… read the complaint, produced timely discovery, participated in a deposition conducted by Defendants' counsel, and demonstrated a fundamental understanding of the issues involved in the case.…" *Shanehchian*, 2011 WL 883659, at *7; *see also Yost*, 2011 WL 2182262, at *11; *Iannone v. AutoZone, Inc.*, 2022 WL 5432740, at *12-13 (W.D. Tenn. Aug. 12, 2022); *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640, at *5 (M.D. Tenn. Oct. 23, 2018); *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827, at *13 (M.D. Tenn. Sept. 2, 2009).

- *Alleged "Antagonism" to the Class.* "[T]he Proposed Class Representatives have no interest that is antagonistic to those of the other class members. Here, the Proposed Class Representatives are former [company] employees and participants in the Plan who believe that Defendants failed to protect the money in the Plan and who understand their obligations to assist their attorneys in prosecuting the case and testifying." *Shirk v. Fifth Third Bancorp*, 2008 WL 4425535, at *3 (S.D. Ohio Sept. 30, 2008).

- *Alleged Failure to "Exhaust" Administrative Remedies.* There is no obligation for Plaintiffs to exhaust administrative remedies before bringing ERISA breach of fiduciary duty claims. *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017). Moreover, the Plan itself expressly allows Plaintiffs to bring suit in these circumstances without filing an administrative claim. The Plan's Summary Plan Description ("SPD") states: "If you feel… that Plan assets are being misused, you can contact the Department of Labor, or file suit in Federal or State court. The court will then decide your case.…" Frisch Decl. Ex. 1, at 27.

Defendants' remaining challenges to class certification fare no better. Plaintiffs' claims are not atypical or uncommon merely because "participants who chose to invest in the [Guaranteed] Fund presumably regarded it to be prudent." *Nortel Networks*, 2009 WL 3294827, at *11; *see also Yost*, 2011 WL 2182262, at *9. Nor are Plaintiffs precluded from seeking certification under Rule 23(b)(1) because they seek to restore losses to the Plan (among other remedies). And, certification under Rule 23(b)(1) is not restricted to limited fund cases. *Nortel Networks*, 2009 WL 3294827, at *15. Accordingly, Plaintiffs' motion for class certification should be granted.[1]

## ARGUMENT

### I. Defendants' Merits-Based Disputes Are Not a Proper Basis for Opposing Class Certification, and Only Serve to Illustrate Why Certification Is Appropriate

Defendants strenuously argue the purported merits of the Guaranteed Fund as an investment. Needless to say, Plaintiffs disagree with Defendants' assertions, but more importantly, they are beside the point for purposes of this motion. "Rule 23 grants courts no license to engage in free-ranging merits inquiries." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007) (citing *Eisen*, 417 U.S. at 177). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466. "In other words, district courts may not 'turn the class certification proceedings into a dress rehearsal for the trial on the merits.'" *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 643 (S.D. Ohio 2017) (quoting *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)).

---

[1] Because class certification is appropriate under Rule 23(b)(1), the Court need not reach Defendants' argument that Plaintiffs have failed to present a class-wide "damages" model for purposes of Rule 23(b)(3) certification. Regardless, losses for violations of § 1109(a) will be (and must be) calculated on a Plan-wide basis as a matter of law—so there is zero risk that individualized damages issues could undermine predominance.

None of Defendants' arguments regarding the purported merits of the Guaranteed Fund raise individualized issues. To the contrary, Defendants essentially repeat arguments they made in their summary judgment motion, ECF 92, which rise or fall generally with respect to the Plan and its participants who invested in the Fund. What is more, some of Defendants' merits arguments already have been rejected by the Court. *Compare* ECF 139 ("Defs.' Mem."), at 7 (arguing that the Sixth Circuit's decision in *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), defeats Plaintiffs' claims), *with* ECF 135, at Page.ID 6310 (rejecting Defendants' *CommonSpirit* defense). Accordingly, these arguments are no barrier to class certification here.[2]

## II.    Defendants' Attacks on the Proposed Class Representatives Fail

Defendants lodge numerous attacks on Plaintiffs' adequacy, but all of them miss the mark. "[T]he Sixth Circuit appears to focus on the adequacy of plaintiff's counsel and whether plaintiff has a conflicting interest, not the personal qualifications of the named plaintiff." *Rankin v. Rots*, 220 F.R.D. 511, 520 (E.D. Mich. 2004) (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). "To be adequate, two criteria must be met: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class *through qualified counsel*.'" *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 343 F.R.D. 378, 401 (S.D. Ohio 2023) (emphasis added). "The first criterion requires that there be no antagonism or conflict between representative plaintiffs and the other [class] members.... The second criterion inquires into the

---

[2] Defendants' assertion that ████████████████████████████████████████████████████████████ does not establish that ████████████. Defs.' Mem. 7, 26. Notably, ████████████████████████████████████████████████ *Compare* ECF 92-1, at Page.ID 2626-48, *with* ECF 92-4, at Page.ID 2905-28. Moreover, ████████████████████████████████████████████████████████ *See infra* at 19-20. Nationwide did not need to "scour the market" to know ████████████████████████████████████████.

competency of counsel." *Nortel Networks*, 2009 WL 3294827, at *10. Both are met here.[3]

As an initial matter, Defendants do not dispute that class counsel are adequate. Thus, Plaintiffs easily satisfy the second prong of the adequacy requirement. *See Nortel Networks*, 2009 WL 3294827, at *10 (finding "Plaintiffs satisfy the second prong of the adequacy requirement" where "Defendants do not dispute that Plaintiffs have satisfied the second prong" and "counsel is 'highly experienced in ERISA class action litigation'"); *Shanehchian*, 2011 WL 883659, at *6 n.2.[4] As for the class representatives themselves, they "have common interests with unnamed members of the class," *see Compound Prop. Mgmt.*, 343 F.R.D. at 401, and each of Defendants' arguments fail for the reasons below.

### A.    Plaintiffs' Claims Are Not "Antagonistic" to the Class

Plaintiffs "have no interest that is antagonistic to those of the other class members." *Shirk*, 2008 WL 4425535, at *3. If Defendants acted imprudently or disloyally, collected excessive fees, or engaged in prohibited transactions, then all class members have a common interest in correcting Defendants' conduct, recovering any losses suffered by the Plan, and disgorging Nationwide's ill-gotten profits. *See Diaz v. BTG Int'l Inc.*, 2021 WL 2414580, at *4 (E.D. Pa. June 14, 2021).

Defendants argue that some class members who chose the Guaranteed Fund may like it and wish for it to remain in the Plan. Even if that were true, it does not defeat class certification. *See Nortel Networks*, 2009 WL 3294827, at *11 (rejecting argument that class certification was inappropriate because "participants who chose to invest in the Nortel Stock Fund presumably regarded it to be prudent"); *Yost*, 2011 WL 2182262, at *9; *Shanehchian*, 2011 WL 883659, at *5-6. Some Plan participants may wish to invest in Dogecoin or other cryptocurrencies, but that

---

[3] "[T]he threshhold for establishing adequacy is 'quite low.'" *Nortel Networks*, 2009 WL 3294827, at *12 (quoting *In re AEP ERISA Litig.,* 2008 WL 4210352, at *2 (S.D. Ohio Sept. 8, 2008)).
[4] "In the absence of a showing to the contrary, adequacy of counsel is often presumed." *Compound Prop. Mgmt.*, 343 F.R.D. at 402 (citation omitted).

does not make Dogecoin an appropriate investment for a 401(k) plan or relieve fiduciaries of their duty to monitor plan investments. *See* 29 C.F.R. § 2550.404c-1(d)(2)(iv) (that participants direct investment of assets in their accounts "does not serve to relieve a fiduciary from its duty to prudently select and monitor any … designated investment alternative offered under the plan").[5]

Moreover, all class members were negatively affected by the Defendants' unlawful conduct, regardless of whether they "liked" the Guaranteed Fund. As Plaintiff Sweeney testified:

> Q   You would agree with me, would you not, that all 55,000 don't necessarily approach their retirement account the way you did?
> MR. RICHTER: Objection, speculative.
> A   No, but they were all affected the same. The commonality is there.
> Q   And you know that how? You never talked to any of them, right?
> A   Anybody that was in the retirement savings plan was affected. I don't have to talk to them to know that.

Frisch Decl. Ex. 8 ("Sweeney Dep."), 87:9-20. Even the most enthusiastic proponent of the Guaranteed Fund "still would have been injured by excessive fees" and would have an interest in recovering those excessive fees on behalf of the Plan. *Iannone*, 2022 WL 5432740, at *12. Likewise, no Plan participant would be harmed by recovering losses that the Plan sustained. And there is no reason to believe that the Court would impose other equitable relief that would harm Plan participants. There are many forms of relief the Court may order short of removal of the Guaranteed Fund (for example, that Nationwide reduce or waive its fees, issue requests for proposals, or ███████████████████████████████████████████ ███████████████████████).[6] The Court will only order the removal of the Guaranteed Fund if the Court "deem[s]" that "appropriate" for the Plan. 29 U.S.C. § 1109(a). At any rate, Plaintiffs

---

[5] If the fact that plan members "choose" their investments were a basis to deny certification, no case involving the investments in a 401(k) plan would ever be certified.

[6] The Court also could issue an order enjoining Defendants from further breaches, appointing an independent fiduciary, and/or removing the breaching fiduciaries without impacting the Plan menu. Likewise, the Court could order that the Defendants ***add*** prudent capital preservation investments (unaffiliated with Nationwide) to the Plan's investment menu.

are entitled to seek Plan-wide relief regardless of whether a class is certified. *Id.* The fact that this relief could affect the interests of absent class members is a reason to *grant* class certification, not deny it. *See* Fed. R. Civ. P. 23(b)(1)(B); *Nortel Networks*, 2009 WL 3294827, at *15; *infra* § IV.A.[7]

Defendants' argument is especially weak where no class member has objected to this action or class certification. Such speculative "conflicts" are not a basis for opposing class certification. *Carter v. Arkema, Inc.*, 2018 WL 1613787, at *8 (W.D. Ky. Apr. 3, 2018) ("A conflict must not be speculative if the Court is to rely on it in denying class certification…." (citation and quotations omitted)); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 306 (E.D. Mich. 2001). And even if such persons had come forward, the Court would have discretion to allow them to opt out. *See, e.g.*, *Eubanks v. Billington*, 110 F.3d 87, 93-95 (D.C. Cir. 1997) (citing cases).

### B. Plaintiffs Have an Adequate Layperson's Understanding of their Claims and Have Fulfilled Their Duties as Class Representatives

Defendants' attacks on the "knowledge" of the class representatives (Defs.' Mem. 21) also fail. "[I]t is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification unless his ignorance unduly impacts his ability to vigorously prosecute the action." *Iannone*, 2022 WL 5432740, at *12. "[T]he complex nature of ERISA fiduciary breach claims requires investors to rely on their attorneys and hired experts, and such reliance does not make the plaintiffs inadequate representatives." *Id.* (quoting *Cassell*, 2018 WL 5264640, at *5); *see also Nortel Networks*, 2009 WL 3294827, at *13 ("ERISA claims are particularly complex and named Plaintiffs cannot be expected to know the details of their claims.")

Plaintiffs have an adequate layperson's understanding of their claims. Among other things, they understand that: **(1)** their claims are brought under ERISA, Sweeney Dep. 212:5; Frisch Decl.

---

[7] Defendants' argument that that the relief sought by Plaintiffs "may be against the wishes of some class members does not mean there is an intra-class conflict." *Reichert v. Keefe Commissary Network, L.L.C.*, 331 F.R.D. 541, 552 (W.D. Wash. 2019).

Ex. 9 ("Marshall Dep."), 340:1-2, 381:8; **(2)** Nationwide placed its own interests ahead of Plan participants, Sweeney Dep. 94:11-15 ("Q: And what do you think – in your words… what did Nationwide do wrong? A: They profited off of what the employees should have profited."); Marshall Dep. 140:9-14, 164:5-7 ("I don't think the administrator of the plan had the members' of the plan best interest at stake."); and **(3)** part of the problem is the high fees that Nationwide paid itself from the Guaranteed Fund, Sweeney Dep. 36:3-9; Marshall Dep. 164:3-9.

Plaintiffs also understand their own duties as class representatives. Both signed an acknowledgement of those duties, ECF 117-3, at Page.ID 5800; ECF 117-4, at Page.ID 5804, and Marshall has gone above and beyond, performing independent research on the "duty of being a good steward[] and the importance of that." Marshall Dep. 298:7-11.[8] Moreover, contrary to Defendants' suggestion, both Plaintiffs have agreed to attend trial in Columbus and also would have traveled there for their depositions if needed. Marshall Dep. 287:9-10; Sweeney Dep. 37:21-23, 39:3-9. That they preferred to have their depositions taken near their places of residence—which Defendants ultimately agreed to do—does not render them inadequate.

The details about which Defendants claim Plaintiffs are ignorant will have no impact on Plaintiffs' ability to prosecute their claims on behalf of the class. Most of the complained-of testimony involves matters that are more properly the subject of expert testimony, *see* Fed. R. Evid. 701, such as appropriate investment comparisons, and whether the Guaranteed Fund should be removed from the Plan or simply offered on better terms. Both Plaintiffs appropriately deferred to their experts on such matters. *See, e.g.*, Marshall Dep. 266:9-14; Sweeney Dep. 93:14-94:6.

---

[8] Defendants are wrong that counsel promised Plaintiffs a $25,000 reward. Defs.' Mem. 28. To the contrary, the form states that they "may" receive an award, and that any "incentive award is at the sole discretion of the Court" and "usually *does not exceed* $25,000." ECF 117-3, at Page.ID 5800; ECF 117-4, at Page.ID 5804 (emphasis added). This is the opposite of a promise. Marshall testified that he "absolutely" would have sued even if there was no possibility of such an award. Marshall Dep. 281:2-5. Defendants did not question Sweeney about the possibility of an incentive award.

Defendants' other side-show arguments misrepresent the record, or at best take Plaintiffs' testimony out of context.[9] Plaintiffs have fulfilled all of their duties as class representatives to date and will continue to do so if certification is granted. *See* ECF 117-3, ¶ 7; ECF 117-4, ¶ 7.

### C. Marshall's Release Does Not Render Him an Inadequate Class Representative or Otherwise Preclude Him from Suing on Behalf of the Plan

"Plaintiff [Marshall]'s release does not make him an inadequate class representative." *Shanehchian*, 2011 WL 883659, at *8. Marshall has not released the derivative claims asserted in this lawsuit because "a plan participant has no authority to release a claim belonging to the plan." *Yost*, 2011 WL 2182262, at *11 & n.59. "Although § [1132(a)(2)] claims are brought by individual plaintiffs, it is the plan that takes legal claim to the recovery, suggesting that the claim really 'belongs' to the Plan." *Hawkins v. Cintas Corp.*, 32 F.4th 625, 632-33 (6th Cir. 2022), *cert. denied,* 143 S. Ct. 564 (2023). Thus, "[t]he vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under § [1132](a)(2)." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009); *accord Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999).

---

[9] Defendants isolate part of Sweeney's deposition to claim he never authorized the complaint before it was filed. But Sweeney later clarified that he could not recall when he had first reviewed the complaint. Sweeney Dep. 217:9-18. Upon review of his records, Sweeney can confirm that he did in fact review and authorize the complaint prior to filing. 2nd Sweeney Decl. ¶ 3. Similarly, Defendants' assertion that "Sweeney has had virtually no involvement in this lawsuit" is patently false, and whether Sweeney "recall[s]" receiving "written" as opposed to verbal updates is irrelevant to his adequacy. Sweeney Dep. 205:3-9. The fact that Sweeney relied on his attorneys to draft his declaration is also unremarkable. "It is common practice for lawyers to draft affidavits for their client's signature." *Zimmerman v. Hanks*, 248 F.3d 1162 (7th Cir. 2000). Sweeney reviewed his declaration for accuracy before signing it, Sweeney Dep. 194:16-195:3, and although Defendants' counsel attempted to convince him that his affidavit was inaccurate, Sweeney's statement that he was considered a Plan participant until 2017 was *not*, in fact, inaccurate. Sweeney received statements until the third quarter of 2017. *See* Frisch Decl. Ex. 2. Finally, whether Plaintiffs have communicated with every member of their legal team or met with them in person is irrelevant. This is particularly so given the pandemic restrictions that were in place during much of the case. *See T.S. v. Twentieth Century Fox Television*, 548 F. Supp. 3d 749, 803 (N.D. Ill. 2021) ("[T]he COVID-19 pandemic has complicated [counsel and plaintiffs'] ability to meet in person").

The Sixth Circuit has endorsed this reasoning. Citing this line of cases, the Sixth Circuit recently held that, "absent Plan consent," arbitration agreements signed by individual plaintiffs do not bind them to arbitrate derivative claims under § 1132(a)(2) because those "claims belong to the Plan." *Hawkins*, 32 F.4th at 636. The logic of *Hawkins* applies equally to releases. *See id.* (rejecting defendant's argument that "waivers and releases are the wrong analogy").[10]

This is especially so because Marshall seeks to recover "losses to the Plan" under 29 U.S.C. § 1109 which will be paid to "to the Plan," not individualized damages. *See Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 680-81 (6th Cir. 2008); *infra* at 16-17. Only the Plan can relinquish its right to such relief, acting through a duly-appointed representative. *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, 75639 (2003) (requiring independent fiduciary approval of releases of plan claims).

Even if Marshall *could* release the Plan's claims (which he could not), Marshall's release



ECF 139-4, at Page.ID 6570 (emphasis added). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ *Id.* at Page.ID 6572. After that date, Marshall maintained his Plan account and remained invested in the Guaranteed Fund. Marshall Dep. 126:1-6, 104:21-106:8. Thus, Marshall's claims for breaches occurring after ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[11] Moreover, breaches occurring after his termination ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and a claim based on them "has no relationship with [his] employment experience…

---

[10] The unpublished opinion in *Taylor v. Visteon Corp.*, 149 F. App'x 422, 426 (6th Cir. 2005) is not to the contrary, as it did not analyze a participant's ability to release claims asserted on behalf of a retirement plan that belong to the plan.

[11] The duties of prudence and loyalty are continuing, as is the duty to refrain from self-dealing. *See Tibble v. Edison Int'l*, 575 U.S. 523, 529-30 (2015); *In re Northrop Grumman Corp. ERISA Litig.*, 2015 WL 10433713, at *26 (C.D. Cal. Nov. 24, 2015).

but instead, completely arises out of the Defendants' alleged mismanagement of the Plan." *Allison v. L Brands, Inc.*, 2021 WL 4224729, at *5 (S.D. Ohio Sept. 16, 2021).

Indeed, Marshall could not have released claims under ERISA regarding *future* fiduciary breaches. Any such release would be ineffective because ERISA voids "any provision in an agreement or instrument which purports to relieve a fiduciary" from their duties on a prospective basis. 29 U.S.C. § 1110(a); *see also Rosenbaum v. Davis Iron Works*, 871 F. 2d 10881989 WL 36897, at *5 (6th Cir. Apr. 19, 1989); *Shirk*, 2008 WL 4425535, at *3 n.8 ("Defendants' argument… is unavailing because the release [Plaintiff] signed in 1998 cannot as a matter of law be a release of future claims under ERISA….").[12] For this reason as well, the release is no barrier to class certification here. *See Shirk*, 2008 WL 4425535, at *3 n.8; *accord Ramos v. Banner Health*, 325 F.R.D. 382, 391 (D. Colo. 2018). Even if Marshall's "specific claim may occur over a shorter or different time period than other class members' claims, there is a 'strong similarity of legal theories' based on a single 'course of conduct' by defendants." *Moore v. Comcast Corp.*, 268 F.R.D. 530, 538 (E.D. Pa. 2010).

As for Defendants' argument that Marshall must tender back his severance payment, he will *not* be required to do so. The release states, ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ *See* ECF 139-4, at Page.ID 6571.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ ECF 139-4, at Page.ID 6570. Since Marshall's § 1132(a)(2) claims cannot be released for the reasons explained above, ████████████████████████████. *Id.*

---

[12] *Taylor* is not to the contrary. 149 F. App'x at 427 ("[P]laintiffs released only those claims that related to alleged breaches of fiduciary duty that existed at the time they signed the agreement.").

Regardless, if the Court believes the release has any relevance to the pending certification inquiry (which it does not), the Court can certify two classes, one consisting of persons (like Marshall) who signed releases and one consisting of persons (like Sweeney) who did not. *See Bittinger*, 123 F.3d at 884 ("It may be that the best remedy to both the purportedly atypical claims and defenses would be to create sub-classes."); *Shanehchian*, 2011 WL 883659, at *6. Marshall's release is not a basis to deny class certification.

### D. Plaintiffs Need Not Exhaust Administrative Remedies Prior to Bringing Statutory Claims for Fiduciary Breaches and Prohibited Transactions

Defendants argue that Plaintiffs needed to exhaust administrative remedies before filing this action. But this argument ignores both the Plan's terms and Sixth Circuit law.

The Plan has no administrative procedures for exhausting statutory claims. The Plan document only provides a claims process to a participant who "believes that he is entitled to a benefit under the Plan," who may file a claim "for such benefit." ECF 92-1, at Page.ID 2396. Similarly, the SPD that was operative at the time Plaintiffs filed their complaint states that participants may only file "a claim for benefits" to review "the results of the normal administrative process." Frisch Decl. Ex. 1, at 26. By contrast, the SPD expressly states: "If you feel … that Plan assets are being misused, you can contact the Department of Labor, or file suit in Federal or State court." *Id.* at 27. Plaintiffs' claims are for "misuse[]" of "Plan assets," not "claim[s] for benefits" challenging "the results of the normal administrative process." Plaintiffs are thus not required to exhaust under the terms of the Plan. *See Stanford v. Foamex L.P.*, 2008 WL 3874823, at *6 (E.D. Pa. Aug. 20, 2008) (exhaustion not required where "the Plan does not provide administrative procedures for the breaches of fiduciary duties that plaintiff is alleging").

Even if the Plan had procedures for Plaintiffs' statutory claims, the Sixth Circuit has held that "plan participants or beneficiaries do not need to exhaust internal remedial procedures before

proceeding to federal court when they assert statutory violations of ERISA." *Hitchcock*, 851 F.3d at 564.[13] That is exactly the situation here. Plaintiffs assert statutory claims seeking recovery on behalf of the Plan, not individual "benefits" claims seeking recovery for themselves.

Defendants *admit* that "Plaintiffs were not required to exhaust administrative remedies as to their breach of fiduciary duty claims.…" Defs.' Mem. 27. Although Defendants assert that Plaintiffs were "required to do so with respect to any claims involving interpretation of the NSP," *id.*, this argument gets them nowhere. Plaintiffs do not assert a breach of contract or benefits claim independent of their fiduciary duty claims, and their fiduciary duty claims are *not* "merely a repackaged claim for individual benefits." *Hitchcock*, 851 F.3d at 564. Thus, exhaustion is not required.[14] Regardless, Defendants cite no ERISA case where class certification was denied on this basis; the applicability of any purported exhaustion requirement is at best a class-wide issue.

---

[13] In so holding, the Sixth Circuit relied on the Third Circuit's logic in *Zipf v. Am. Tel. & Tel. Co.*, 799 F.2d 889, 891 (3d Cir. 1986), which reasoned that "[t]he [ERISA] provision relating to internal claims and appeals procedures, Section 503, refers only to procedures regarding claims for *benefits*." *Hitchcock*, 851 F.3d at 564 (quoting *Zipf*, 799 F.2d at 891); *see also* 29 U.S.C. § 1133; *Licensed Div. Dist. No. 1 MEBA/NMU, AFL-CIO v. Defries*, 943 F.2d 474, 479 (4th Cir. 1991) (holding that because "there is no statutory requirement for an appeals procedure respecting claims not involving benefits, the logic of the exhaustion requirement no longer applies").

[14] Defendants seize on one paragraph of Plaintiffs' complaint where they allege that one of Defendants' many fiduciary indiscretions was their failure to abide by the terms of the Plan with respect to the Plan sponsor's obligation to pay expenses associated with the Guaranteed Fund. Defs.' Mem. 27 (citing Am. Compl. ¶ 92(a)). This is *not* the basis for Plaintiffs' prohibited transaction claims or their breach of fiduciary duty claims under 29 U.S.C. § 1104(a)(1)(A) & (B). It only relates to their fiduciary duty claim under 29 U.S.C. § 1104(a)(1)(D). That Plaintiffs allege Defendants failed to follow Plan terms as mandated by § 1104(a)(1)(D) does not transform this action into a claim for benefits. Indeed, even the § 1104(a)(1)(D) claim (the only one challenged by Defendants) is not a benefits claim because it relates to misuse of Plan assets by improperly charging expenses *to the Plan* in connection with a Plan investment. In *Stanford*, the plaintiffs similarly alleged that the defendants violated § 1104(a)(1)(D) "by failing to act in accordance with the documents and instruments governing the Plan" with respect to one of the plan's investments. 2008 WL 3874823, at *4. The court held that the claim was *not* a disguised claim for benefits:

> Plaintiff did not make a request for Plan benefits that was denied, but instead challenges the actions of the fiduciaries in their management of the Plan. Plaintiff brings this suit not to recoup a particular denied benefit for himself, but to hold the fiduciaries accountable for actions that allegedly reduced the value of the Plan in contradiction to its terms and to restore losses—on behalf of the Plan—from the fiduciaries.

*Id.* at *6. The same logic applies here.

### E.     Defendants' Remaining Challenges to Plaintiffs' Adequacy Have No Merit

Defendants' remaining two challenges to adequacy are equally meritless. <u>First</u>, solicitation by counsel in writing is expressly allowed under the professional rules, *see* Ohio R. Prof. Cond. 7.2(a) & 7.3 cmt. 3, and is not a defense to class certification. *See Shanehchian*, 2011 WL 883659, at *7-8 (rejecting argument that class representative was inadequate because "counsel solicited her to join this suit"). <u>Second</u>, Plaintiffs have not "refused to produce" documents. *See* Defs.' Mem. 28. Plaintiffs timely produced the three pages of documents referenced by Defendants on March 27, 2023. *See* Frisch Decl. Ex. 3. The reason the documents were not produced sooner is that Defendants never requested them until the end of February. Magistrate Judge Vascura ruled that there was "no basis for shortening Plaintiffs' time to respond to Defendants' document request." *Id.* Ex. 4. Defendants only have themselves to blame for failing to serve timely requests.

### III.     Defendants' Challenges to Commonality and Typicality Are Repetitive and Meritless

Defendants' challenges to commonality and typicality are repetitive of their adequacy arguments and also meritless.[15]

For the reasons discussed above, Defendants' arguments regarding Marshall's release fail. *See supra* § II.C. Moreover, even assuming the release applied here (which it does not), Marshall would be typical of other class members with releases. *See Shanehchian*, 2011 WL 883659, at *6.

Defendants' "ratification" and "consent" arguments (Defs.' Mem. 29-31) also largely repeat their earlier argument that there may be "other putative class members who like the Guaranteed Fund" (*id.* at 26), and are similarly unavailing. *See Nortel Networks*, 2009 WL

---

[15]  Defendants advance no arguments as to commonality and misconstrue the typicality requirement. "[T]he test for typicality is whether the class representatives' claims are typical, not whether the class representatives themselves are typical." *Shanehchian*, 2011 WL 883659, at *4 (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Stirman*, 280 F. 3d at 562.

3294827, at *10-11 & n.6 (finding no further typicality analysis required upon rejecting adequacy argument); *Yost*, 2011 WL 2182262, at *9 (rejecting typicality challenge based on allegedly differing participant investment preferences); *Shanehchian*, 2011 WL 883659, at *5-6 (same).

<u>*First*</u>, ratification and consent are no defense to prohibited transaction claims, *see* 29 U.S.C. § 1108 (itemizing recognized prohibited transaction exemptions), and also no defense to a claim that Defendants failed to satisfy their fiduciary duties with respect to the selection and monitoring of investments on the Plan menu, *see supra* at 4-5 (citing 29 C.F.R. § 2550.404c-1(d)(1)(iv)). <u>*Second*</u>, even if these defenses had any application to the types of claims here, ratification or consent to a breach of trust requires, among other things, that "the beneficiary understood: (i) that the trustee's act or omission… was or might have been, a breach of trust; (ii) the relevant information about, and the implications of, the act or omission in question; and (iii) the beneficiary's right to prevent or remedy trustee misconduct." Restatement (Third) of Trusts § 97 (2012). Defendants have not shown that *any* class members had this knowledge. Nor could they.[16] <u>*Third*</u>, Defendants' argument also "ignores the fact that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs." *Rankin*, 220 F.R.D. at 519 (rejecting ratification defense). "[T]hat there may be individualized [consent or ratification] defenses does not necessarily defeat class certification when [the plaintiffs] must still prove the same core issues of whether defendants acted as fiduciaries and whether they breached their fiduciary duties." *Id.* <u>*Finally*</u>, a Plan participant's ratification has no effect on the *Plan's* claim for fiduciary breaches, for the same

---

[16] Mere knowledge of investment principles and the information distributed to Plan participants would not even come close to constituting ratification of, or consent to, fiduciary breaches and prohibited transactions which arise from *procedural* deficiencies. *Dover v. Yanfeng US Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 685 (E.D. Mich. 2021) ("The test for determining whether the duty of prudence has been violated or not focuses on the *process* used by the fiduciaries.…" (citing *Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384 (6th Cir. 2015))); *Chao v. Hall Holding Co.*, 285 F.3d 415, 437 (6th Cir. 2002) (explaining that the "adequate consideration" element of a prohibited-transaction defense requires "an examination of the *process* that led to the determination of fair market value in light of § 404's fiduciary duties").

reason a participant's release has no effect. *See supra* § II.C; *see also Williams v. Provident Inv. Couns., Inc.*, 279 F. Supp. 2d 894, at 906-07 (N.D. Ohio 2003) (rejecting ratification and consent defenses to plaintiff's claims). Notably, Defendants do not cite a single ERISA case where certification was denied on the basis of ratification or consent defenses.

## IV. This Is a "Paradigmatic Example" of the Type of Case Where Rule 23(b)(1) Certification Is Routinely Granted

As noted in Plaintiffs' opening brief, ERISA cases such as this are routinely certified under Rule 23(b)(1) and are a "paradigmatic example[]" of the sort of cases where (b)(1) certification is appropriate. *See* Pls.' Mem. at Page.ID 5815 & n.1. Defendants arguments are not to the contrary.[17]

### A. Defendants Acknowledge that Plaintiffs' Claims Could Impact the Administration of the Entire Plan Going Forward

The impact that this case could have on other Plan members, and the management of the Plan going forward, is a primary theme of Defendants' brief. *See* Defs.' Mem. 1 ("If Plaintiffs prevail, putative class members may lose the ability to select the popular Guaranteed Fund and may be forced to invest in [other] options…."); *see also id.* at 2, 26. This only goes to show that this case "as a practical matter, would be dispositive of the interests of the other members" of the proposed class. Fed. R. Civ. P. 23(b)(1)(B). Plaintiffs have a statutory right to seek Plan-wide relief under 29 U.S.C. §§ 1109 and 1132(a)(2) *regardless* of whether a class is certified. Because such relief will necessarily affect other Plan members, they are properly brought into the case under Rule 23(b)(1). The Rule was *designed* to deal with this very type of situation. *See Nortel Networks*, 2009 WL 3294827, at *15 ("Under Rule 23(b)(1)(B), procedural fairness concerns for the proposed class members can also arise absent certification. If individual adjudications would be

---

[17] Defendants only scrape together a handful of ERISA cases to support their arguments, in contrast to the overwhelming case law cited by Plaintiffs. Defendants notably cite no cases from this Circuit where class certification was denied; the two in-circuit cases they cite ultimately resulted in certified classes. *See Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254 (6th Cir. 2018); *Adams v. Anheuser-Busch Cos., Inc.*, 2012 WL 1058961 (S.D. Ohio Mar. 28, 2012).

dispositive of the interests of other Plan Participants, it would be better for those Plan Participants to be members of a class… and enjoy adequate representation." (citation and emphasis omitted)).

### B. That Plaintiffs Seek to Restore Losses to the Plan (Among other Forms of Relief) Does Not Preclude Certification Under (b)(1)

Defendants argue that certification under 23(b)(1) is inappropriate because Plaintiffs seek "monetary relief." However, they are wrong. *See Falberg v. Goldman Sachs Grp., Inc.*, 2022 WL 538146, at *10-11 (S.D.N.Y. Feb. 14, 2022) (rejecting argument that "[t]his action is fundamentally one for money damages rather than equitable relief, and individualized monetary claims belong in Rule 23(b)(3)" (citation omitted)).

The term "monetary relief" is a misnomer. The restoration of losses to an ERISA plan "can best be characterized as injunctive, rather than monetary, relief… so long as the relief [runs] to the class as a whole." 2 Newberg and Rubenstein on Class Actions § 4:44 (6th ed. 2022) (listing cases). Regardless, "Defendants have not demonstrated the existence of a blanket prohibition on Rule 23(b)(1) class certification of actions in which monetary relief is sought." *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 576 (D. Minn. 2014). "A majority of courts addressing the propriety of certifying an ERISA class under § [1132](a)(2)… have continued to find Rule 23(b)(1)(B) certification appropriate." *In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *17 (C.D. Cal. Mar. 29, 2011).

Because any losses must inure to the whole Plan, the due process concerns that dictate against certification of a 23(b)(2) class in many monetary-relief cases actually weigh in *favor* of class certification here. As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, "individualized monetary claims belong in Rule 23(b)(3)," whereas "mandatory classes" under (b)(1) or (b)(2) are appropriate where "the relief sought must perforce affect the entire class at once." 564 U.S. 338, 361-62 (2011). Plaintiffs do not bring "individualized monetary claims." *Id.*

16

at 362. Plaintiffs bring suit under 29 U.S.C. § 1132(a)(2) and can only recover "losses to the *plan*" if they prevail. *See* 29 U.S.C. § 1109(a). Because the Plan is the "victim" of Defendants' breaches, *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 106 (N.D. Cal. 2008), the only monetary award this Court can grant is a single award to the Plan, *id.* at 109; *see also Tullis*, 515 F.3d at 680; *Cassell*, 2018 WL 5264640, at *3 n.2. Thus, even an award of "monetary relief" (using Defendants' term) would "affect the entire class at once," *Dukes*, 564 U.S. at 362, and "as a practical matter, would be dispositive of the interests of the other [class] members." Fed. R. Civ. P. 23(b)(1)(B).[18]

"The fact that the individual Plaintiffs will indirectly benefit from a remedy accruing to the Plan as a whole does not render the claims individualized." *Hawkins*, 32 F.4th at 634. Plaintiffs' claims are thus distinguishable from cases cited by Defendants, which involved individualized damages. For example, in *Clemons*, 890 F.3d 254, the Plaintiff sought (b)(1) and (b)(2) class certification for individual benefits claims brought under § 1132(a)(1)(B) and (a)(3)—not representative claims brought on behalf of the Plan under § 1132(a)(2). *See Clemons*, No. 3:08-cv-00069, ECF 42, at Page.ID 412-13 (W.D. Ky. May 10, 2010) (operative complaint). Despite the individual nature of the claims for damages in *Clemons*, the Sixth Circuit held that a 23(b)(1) class was properly certified "at the liability stage." 890 F.3d at 277. The Sixth Circuit also stated that, on remand, "the district court may be within its authority to certify a damages class under (b)(1)(A)." *Id.* at 281. As for this Court's prior observation that "[s]ome courts have held that a Rule 23(b)(1)(A) action should not be certified where the suit is one for compensatory damages," *Adams*, 2012 WL 1058961, at *9, that observation regarding the views of "some courts" does not preclude class certification (even if the holdings of those courts were accepted here) because restoration of losses to the Plan is a form of *equitable* remedy, not "compensatory damages."

---

[18] Rule 23(b)(1)(A) certification is also proper for the reasons already stated. Pls.' Mem. 17-18.

Indeed, this Court went on to certify the class in *Adams* under both (b)(1)(A) and (b)(1)(B), even though class members would ultimately receive money if they prevailed, because such relief was "dependent upon and ancillary to" the Plan-wide relief. *See id.* at \*11-12. That is equally true here.

### C.    Certification Under 23(b)(1)(B) Is Not Restricted to Limited Fund Cases

Defendants' "limited fund" argument is also meritless. "[L]imited fund cases are but one species of the genus of Rule 23(b)(1)(B) cases…." *Nortel Networks*, 2009 WL 3294827, at \*15. Another example is "an action which charges a breach of trust by a[]… fiduciary similarly affecting the members of a large class of… beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee Note (1966). In the Committee notes, this example comes *before* the example of a "fund insufficient to satisfy all claims." *Id.* Moreover, "the [Supreme] Court's warning against the 'adventurous application of Rule 23(b)(1)(B)' in *Ortiz* was given in the context of an 'attempt to aggregate individual tort claims on a limited fund rationale.' That is not the situation here, where the claims are made on behalf of the Plan rather than individual participants." *Krueger*, 304 F.R.D. at 575-76.

### V.    Defendants' Arguments Regarding (b)(3) Certification Are Both Moot and Meritless

If the Court finds "certification of Plaintiffs' class appropriate under… Rule 23(b)(1), the Court need not reach the question of whether the class qualifies under… Rule 23(b)(3)." *Shanehchian*, 2011 WL 883659, at \*10. In any event, Defendants' arguments are meritless.

It makes no sense to require Plaintiffs to present a class-wide "damages model" to obtain (b)(3) class certification where, as here, losses are restored to the Plan as a matter of law rather than to individual class members.[19] ERISA cases such as this are routinely certified without a damages model being presented at the class certification stage. The lone case cited by Defendants

---

[19] "Because this lawsuit is brought on behalf of the Plan, individual participants' varying damages are irrelevant." *Tussey v. ABB, Inc.*, 2007 WL 4289694, at \*7 (W.D. Mo. Dec. 3, 2007).

is not to the contrary, as that was a *multi*-plan case where the court found it was "unlikely that there could be a classwide damages calculation" due to "individualized differences between plans." *Davis v. Stadion Money Mgmt., LLC*, 2021 WL 4400298, at *7 (D. Neb. Sept. 27, 2021).

Even ignoring the type of ERISA claims at issue here, the majority of published appellate opinions have held that a class-wide damages model is *not* required to demonstrate predominance (much less commonality). *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 375 (3d Cir. 2015); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013); *see also, e.g.*, *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 398 n.35 (N.D. Ga. 2019) ("Defendants cite no binding authority, and the Court is aware of none, requiring Plaintiffs to produce a damages model in order to satisfy predominance.").[20] Contrary to Defendants' suggestion, the Supreme Court's decision in "*Comcast*... did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance." *Roach*, 778 F.3d at 407. Instead, *Comcast* merely stated that "any model supporting a 'plaintiff's damages case must be consistent with its liability case.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Nevertheless, an example illustrates how damages will be calculated class-wide.



, Frisch Decl. Ex. 5,

, *id.* Ex. 6.

---

[20] The unpublished Sixth Circuit opinion cited by Defendants involved an antitrust claim, not a representative claim on behalf of an ERISA plan. *See Rodney v. Nw. Airlines, Inc.*, 146 F. App'x 783 (6th Cir. 2005). *Rodney* did not consider the issue presented here, and its statement that a plaintiff seeking class certification must present a class-wide damages model cited to a Fifth Circuit antitrust case with an antitrust-specific analysis that does not support such a broad generalization. *Id.* at 791 (citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 303 (5th Cir. 2003)).

████████████████████████████████████████████████████████

████, *id.* Ex. 7, at 14, ████████████████████████████████████

██████████████, ECF 92-2, at Page.ID 2651. One of Plaintiffs' loss models will compare

what the Plan earned on the Guaranteed Fund to what the Plan would have earned had it invested

in a guaranteed fund ████████████████████████.[21] This type of comparison is a well-

accepted measure of loss. *See Chao v. Moore*, 2001 WL 743204, at *8 (D. Md. June 15, 2001)

("'[C]omparing the return on the improper investment with that of a reasonably prudent alternative

investment' represents an appropriate means of assessing damages under 29 U.S.C. § 1109."

(quoting *Leigh v. Engle*, 858 F.2d 361, 367 (7th Cir. 1988))); Restatement of Trusts (Third) §100,

cmt. b(1).[22] Even if Defendants disagree, that is a class-wide issue, not a basis to deny certification.

Plaintiffs also will seek disgorgement of Nationwide's profits from the Plan's investment

in the Guaranteed Fund pursuant to 29 U.S.C. § 1109(a). Because Defendants have refused to turn

over information in discovery regarding Nationwide's fees and profits, *see* ECF 115, Plaintiffs are

not able to provide details regarding their disgorgement model at this time. However, this will be

another viable class-wide remedy. *See Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 101 (3d Cir. 2012)

(quoting Restatement (Second) of Trusts § 170, at 370-71, cmt. O); *Davidson v. Henkel Corp.*, 302

F.R.D. 427, 444-45 (E.D. Mich. 2014).

## CONCLUSION

For these and other reasons previously stated, the Court should certify the proposed class.

---

[21] Plaintiffs also will compare the returns of the guaranteed fund to other, non-affiliated guaranteed fund products that offered higher returns ████████.
[22] *Accord Tussey v. ABB, Inc.*, 850 F.3d 951, 960 (8th Cir. 2017); *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985); *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008); *Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1027 (9th Cir. 2009); *Meyer v. Berkshire Life Ins. Co.*, 250 F. Supp. 2d 544, 572 (D. Md. 2003), *aff'd*, 372 F. 3d 261 (4th Cir. 2004) (quoting *Davidson v. Cook*, 567 F. Supp. 225, 240 (E.D. Va. 1983)).

Dated: April 27, 2023

Respectfully submitted,

*s/ Eric H. Zagrans*
Eric H. Zagrans (OH #0013108)
   *Trial Attorney*
**ZAGRANS LAW FIRM LLC**
1640 Roundwyck Lane
Columbus, Ohio 43065-8416
Telephone: (440) 452-7100
Email: eric@zagrans.com

Kai H. Richter (admitted *Pro Hac Vice*)
Eleanor Frisch (admitted *Pro Hac Vice*)
**Cohen Milstein Sellers & Toll PLLC**
400 South Fourth Street # 401-27
Minneapolis, MN 55415
Tel: (612) 807-1575
Fax: (202) 408-4699
myau@cohenmilstein.com
krichter@cohenmilstein.com
dsutter@cohenmilstein.com
efrisch@cohenmilstein.com

Michelle C. Yau (admitted *Pro Hac Vice*)
Daniel R. Sutter (admitted *Pro Hac Vice*)
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
krichter@cohenmilstein.com
dsutter@cohenmilstein.com
efrisch@cohenmilstein.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2023, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to counsel for

Defendants.

   *s/ Kai H. Richter*
   *Counsel for Plaintiffs*

21