UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RYAN SWEENEY, *et al.*,

        Plaintiffs,      :

  v.                                       Case No. 2:20-cv-1569
                                             Judge Sarah D. Morrison
                                             Magistrate Judge Chelsey M.
NATIONWIDE MUTUAL                   Vascura
INSURANCE CO., *et al.*,          :

        Defendants.

## OPINION AND ORDER

Ryan Sweeney and Bryan Marshall are former employees of Nationwide Mutual Insurance Company and current participants in the Nationwide Savings Plan, a § 401(k) employee pension benefit plan. In this putative class action, Messrs. Sweeney and Marshall assert that Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, and the Benefits Investment Committee and its members (David Berson, David LaPaul, Kevin O'Brien, Michael Mahaffey, and Michael P. Leach) violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The matter is before the Court on Plaintiffs' Motion for Class Certification (Mot., ECF No. 117 (redacted) / ECF No. 120 (sealed)). Defendants filed their response (Resp., ECF No. 136 (redacted) / ECF No. 139 (sealed)) and Plaintiffs replied (Reply, ECF No. 153 (sealed)). For the reasons below, Plaintiffs' Motion is **GRANTED**.

I.  **FACTUAL BACKGROUND**

Nationwide Mutual Insurance Company sponsors and maintains the Nationwide Savings Plan[1] to provide retirement savings benefits to employees of Nationwide Mutual and its affiliates. (Plan, Preamble; *see also id.*, §§ 1.10, 1.23, 1.24, 2.01, 3.08.) The Plan is a tax-qualified defined contribution plan covered by ERISA. (*See id., generally*.) Participant contributions are eligible for an employer match, up to specified limits. (*Id.*, §§ 3.01, 3.02, 4.01.) Those contributions accumulate in a Participant's account within the Plan's trust fund. (*See id.*, §§ 1.02, 11.02.) Each Participant can choose how the dollars in their account are invested by selecting between investment options vetted by Nationwide's Benefits Investment Committee ("BIC"). (*See id.*, §§ 7.02, 7.03, 12.02; *see also* Answer, ECF No. 71 (redacted) / ECF No. 74 (sealed), ¶ 40.) The Guaranteed Fund is one such investment option. (Answer, ¶ 48.)

The Guaranteed Fund is supported by an annuity contract issued to the Plan by Nationwide Life Insurance Company. (O'Brien Aff., ECF No. 92-1, ¶ 9.) Nationwide Life is wholly owned by Nationwide Financial Services, Inc., an indirect subsidiary of Nationwide Mutual. (Answer, ¶ 30.) Plan assets invested through the Guaranteed Fund are transferred to Nationwide Life and invested in securities, which are then held and maintained in Nationwide Life's general account. (*Id.*, ¶ 52.) Per the annuity contract, "Nationwide Life declares an interest rate that is credited to the contributions received from Plan [P]articipants. The interest rate is

---

[1] The Nationwide Savings Plan, Amended and Restated as of January 1, 2019 (the "Plan") appears in the record at ECF No. 87-1, PAGEID # 1323–1404.

declared, in advance, quarterly and is expressed as an annualized rate of return." (Schley Aff., ECF No. 92-2, ¶ 5.) This rate is known as the "Crediting Rate." Participants are guaranteed to receive their principal and interest accruing at the Credited Rate. (*Id*., ¶ 6.)

To determine the Crediting Rate, Nationwide Life deducts certain amounts from the expected investment yield on the portfolio of securities acquired with Plan assets. Those deductions include (i) the cost of custodial, actuarial, investment, and accounting services provided by Nationwide Life and (ii) "a cost of capital charge . . . to reimburse [Nationwide Life] for the opportunity cost associated with setting aside its own capital and the risk . . . associated with the [annuity] contract." (*Id*., ¶¶ 64, 66.)

## II.  PROCEDURAL BACKGROUND

Named Plaintiffs Ryan Sweeney and Bryan Marshall take issue with the decision to offer the Guaranteed Fund as a Plan investment option.[2] In short, they allege that the Guaranteed Fund pits Nationwide's economic interests against Participants'—in violation of ERISA's provisions on fiduciary duties, prohibited transactions, and private inurement, and to Participants' financial detriment. (Am. Compl., *generally*.)

Named Plaintiffs now seek to certify a class of similarly situated individuals in this action brought on behalf of the Plan:

---

[2] An investment consulting firm hired by the BIC in 2016 suggested that "the Plan could eliminate the Guaranteed Fund and either continue to offer a money market fund or offer a traditional stable value fund." (ECF No. 59-1, PAGEID # 895.)

3

> All participants and beneficiaries in the Nationwide Savings Plan who were invested in the Guaranteed Fund at any time from March 26, 2014 through the date of final judgment in this action, excluding the individual Defendants.

(Mot., 10.)

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 governs class actions. To proceed as a class under Rule 23, a plaintiff must prove that all four elements of Rule 23(a) are satisfied, plus "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Rule 23(a) requires a showing that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(1)(B) applies when:

> the prosecution of separate actions by or against individual members of the class would create a risk of . . . adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

It is the plaintiff's burden to establish each and every one of the Rule 23 prerequisites for class certification. *In re Ford Motor Co.*, 86 F.4th 723, 726 (6th Cir. 2023) (citations omitted). "Generally, a district court enjoys broad discretion to decide whether class certification is appropriate." *Id.* at 727 (6th Cir. 2023) (citing *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466

(6th Cir. 2017)). Nevertheless, the court must engage in "rigorous analysis" to ensure that the prerequisites are met. *Dukes*, 564 U.S. at 350–51 (internal quotation and citation omitted).

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.

*Id.* at 350. While Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage," merits questions should be considered to the extent they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *see also Ford*, 86 F.4th at 729 (noting that limited merits considerations at the certification stage "is a crucial part of avoiding the procedural unfairness to which class actions are uniquely susceptible").

## IV. ANALYSIS

ERISA § 502(a)(2) claims, like Named Plaintiffs', are representative in nature because they seek recovery on behalf of the plan. Courts routinely find that such claims are appropriate for class action treatment. *Shirk v. Fifth Third Bancorp.*, No. 05-cv-049, 2008 WL 4425535, at *2 (S.D. Ohio Sept. 30, 2008) (Black, M.J.) (collecting cases). Consistent with that trend, Named Plaintiffs have shown that the requirements of Rules 23(a) and 23(b)(1) are met. The proposed class is sufficiently numerous to make joinder impracticable. There are common issues regarding whether Defendants breached their fiduciary duties or engaged in prohibited transactions. Named Plaintiffs' claims arise from the same events, course of

conduct, and legal theories as the class claims. ERISA allows a participant who sues for breach of fiduciary duty to obtain plan-wide relief. And Named Plaintiffs challenge the same conduct and seek the same relief as the rest of the class, sufficiently aligning their interests with those of absent class members. Finally, because Named Plaintiffs seek recovery on behalf of the Plan, a decision in this case would practically affect the interests of others whether or not a class is certified.

### A. Rule 23(a)(1): Numerosity

Rule 23(a)(1) asks whether "the class is so numerous that joinder of all members is impracticable." The proposed class includes more than 50,000 current and former Plan Participants. Named Plaintiffs argue that is sufficiently large to make joinder impracticable. (Mot., 4.) Defendants do not argue otherwise (*see* Resp., *generally*), and the Court agrees. The numerosity requirement is met.

### B. Rule 23(a)(2): Commonality

Rule 23(a)(2) asks whether "there are questions of law or fact common to the class." "What does 'common' mean in this context? Mere questions do not suffice; rather, a class action must be able to 'generate common answers apt to drive the resolution of the litigation.'" *Ford*, 86 F.4th at 727 (6th Cir. 2023) (quoting *Dukes*, 564 U.S. at 350). In other words, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349–50 (internal quotation and citation omitted). Ordinarily, "the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries." *Shirk*, 2008 WL 4425535, at *2 (citing *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002)).

6

Here, the asserted claims' most essential questions of law and fact are common among the Named Plaintiffs and the proposed class. Even Defendants acknowledge that the claims "turn on two central allegations"—namely, that (i) the Crediting Rate would have been higher but for Nationwide Life's deduction of allegedly excessive fees and expenses, and (ii) Defendants violated ERISA (*e.g.*, breached their fiduciary duties, engaged in prohibited transactions, and allowed prohibited employer inurement) by selecting and retaining the Guaranteed Fund as an investment option in the Plan. (Resp., 6.) The commonality requirement is met.

### C. Rule 23(a)(3): Typicality

Rule 23(a)(3) asks whether "the claims or defenses of the [Named Plaintiffs] are typical of the claims or defenses of the class." "Typicality is met if the class members' claims are fairly encompassed by the named plaintiffs' claims." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 852 (internal quotation and citation omitted). The requirement ensures that the named plaintiffs' "interests are aligned" with those of the absent class members. *Id.*, 852–53. In practice, the inquiries into commonality and typicality "tend to merge"—both examine whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5.

A claim is generally typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if [they] are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069,

7

1082 (6th Cir. 1996) (citation omitted). That is precisely the circumstance here: Named Plaintiffs' claims arise from Defendants' selection and maintenance of the Guaranteed Fund as a Plan investment option, while the underlying annuity contract allowed Nationwide Life to set the Crediting Rate and receive compensation for services. As Named Plaintiffs point out, ERISA's terms support this finding: the law allows a single plaintiff to obtain plan-wide relief. *See Shirk* 2008 WL 4425535, at *3 (citing 29 U.S.C § 1132(a)(2)). The typicality requirement is met.

Defendants argue for a different conclusion on the grounds that Named Plaintiffs and putative class members have individualized defenses. But "[t]he mere existence of individualized defenses does not bar class certification." *Olden v. LaForge Corp.*, 203 F.R.D. 254, 270 (E.D. Mich. 2001). Instead, "unique defenses will destroy typicality only 'where the defenses against the named representatives are likely to usurp a significant portion of the litigant's time and energy, and there is a danger that the absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 646 (S.D. Ohio 2017) (Watson, J.) (further citation omitted). Defendants assert that Mr. Marshall has a unique defense because he signed a Release Agreement on May 6, 2019. They further argue that some class members "ratified" or "consented to" the inclusion of the Guaranteed Fund in the Plan, which may also be a defense to liability. The Court is not persuaded that these individualized or unique defenses

8

pose any threat here.[3] To begin, Named Plaintiffs assert their claims on behalf of the Plan—in other words, the relevant conduct involves Defendants' treatment of Plan-wide investment options, not investments of any single Participant; and any recovery would go to the Plan, not directly to any single Participant. Questions about Defendants' fiduciary duties, whether their conduct comported with those duties, and whether the Guaranteed Fund was a prudent or appropriate investment option persist—and loom large. So, while questions about Mr. Marshall's Release Agreement or a class member's ratification may arise, nothing indicates that such questions would endanger the rights of absent class members. *See, e.g., Rankin v. Rots*, 220 F.R.D. 511, 519 (E.D. Mich. 2004) (holding that individualized defenses did not bar certification of an ERISA class action because plaintiff "must still prove the same core issues of whether defendants acted as fiduciaries and whether they breached their fiduciary duties").

### D. Rule 23(a)(4): Adequate Representation

Finally, Rule 23(a)(4) asks whether "the representative parties will fairly and adequately protect the interests of the class." This prerequisite "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). It calls for a two-pronged inquiry: <u>*First*</u>, do the named plaintiffs have common interests with absent class members? And <u>*second*</u>, does it appear that the named plaintiffs will vigorously

---

[3] The Court does not decide at this time whether Mr. Marshall's release is enforceable or whether, by bringing this suit, he must tender-back his severance payment.

prosecute the interests of the class through qualified counsel? *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). Respectively, the prongs test whether there is any antagonism between the named- and absent-class members' interests, and plaintiffs' counsel's experience and ability. *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1036, 1031 (6th Cir. 1977). As to the first prong, the Court finds that Named Plaintiffs share the putative class members' interests in ensuring that the Plan is managed and administered in accordance with ERISA and recover for any past failure to do so. As to the second, the Court finds that Named Plaintiffs' counsel is equipped and capable to vigorously prosecute the action. The adequacy requirement is met.

For their part, Defendants urge the Court to find that Named Plaintiffs are not adequate representatives because their interests diverge from those of the putative class members. They make four arguments, including that (i) Mr. Marshall released his claims, (ii) Named Plaintiffs lack knowledge of their claims, (iii) Named Plaintiffs' interests conflict with those of the putative class, and (iv) Named Plaintiffs failed to exhaust their administrative remedies. (Resp., 16–28.) The arguments are unavailing.

### 1. Mr. Marshall's release does not make him an inadequate class representative.

Defendants first argue that Mr. Marshall is not an adequate class representative because he signed a release of claims in 2019. (*See* § IV.C., *supra*.) This argument fails for two reasons. First, the release does not purport to (and indeed cannot) limit Mr. Marshall's recovery for fiduciary breaches occurring after

10

May 6, 2019. *See* 29 U.S.C. § 1110(a); *Shirk*, 2008 WL 4425535, at *3 n.8. (*See also* ECF No. 139-4, PAGEID # 6570.) Defendants' argument that Mr. Marshall has no stake in the outcome of this litigation is thus incorrect. Second, the Sixth Circuit has allowed named plaintiffs in ERISA claims to represent a class asserting ERISA claims even when that named plaintiff has signed a release. In *Bittinger v. Tecumseh Prods. Co.*, , approximately two-thirds of the class members (including Mr. Bittinger) had signed releases, but that fact was "not enough to justify rejection of class certification."[4] 123 F.3d 877, 884 (6th Cir. 1997). Given that Mr. Marshall's release was signed in connection with a general reduction in force, and that the putative class includes *former* Nationwide employees, it is likely that other putative class members will have release agreements in their personnel files, too. Thus, Mr. Marshall's release does not create an insurmountable conflict of interest between him and members of the putative class.

### 2. Named Plaintiffs have sufficient knowledge of their claims.

Defendants next argue that Named Plaintiffs are not adequate representatives because their deposition testimony demonstrates confusion, lack of knowledge about their claims, and an abdication of their responsibilities to their lawyers. (Resp., 21–25.) In response, Named Plaintiffs argue that they have an adequate layperson's understanding of their claims, they understand and are

---

[4] The Sixth Circuit suggested that sub-classes could aid in managing, *inter alia*, the fact that some class members had signed a release. *Bittinger*, 123 F.3d at 884. But the court noted that "Rule 23 does not require such an action at this stage[.]" *Id*. The Court leaves open the possibility of creating sub-classes if later shown to be appropriate. *See* Fed. R. Civ. P. 23(c)(4).

11

willing to comply with their duties as representatives, and, when reviewed in context, their testimony demonstrates as much. (Reply, 6–8.)

The parties provided only excerpts of Named Plaintiffs' depositions. The Court has evaluated those excerpts and is satisfied that both Mr. Sweeney and Mr. Marshall have demonstrated an understanding of the basis for this lawsuit. The Court further finds that they are appropriately communicating with their attorneys to stay up-to-date on the progress of the case. Finally, Mr. Sweeney and Mr. Marshall are aware of their duties as class representatives and will attend trial in Columbus if needed.

### 3. Named Plaintiffs do not have conflicting interests with the class.

Defendants next argue that Named Plaintiffs' claims are antagonistic to, and in conflict with, the interests of other putative class members. (Resp., 25–27.) They cite two lines of reasoning. Neither is persuasive.

*First*, Defendants assert that some class members "like the Guaranteed Fund and want to continue investing in it." (*Id.*, 26.) But they offer no substantive evidence to support their assertion. A conflict "must not be speculative" if the Court is to rely on it in denying class certification. *Carter v. Akema*, No. 3:13-CV-1241, 2018 WL 1613787, at *8 (W.D. Ky. 2019) (quotation and citation omitted). This supposed conflict is speculative at best.

*Second*, Defendants argue that eliminating the Guaranteed Fund would harm putative class members because it has provided above-market returns. But, as Named Plaintiffs' put it, "[e]ven the most enthusiastic proponent of the

12

Guaranteed Fund 'still would have been injured by excessive fees' and would have an interest in recovering those excessive fees on behalf of the Plan." (Reply, 5 (quoting *Iannone v. AutoZone, Inc.*, No. 19-CV-2779, 2022 WL 5432740, at *12 (W.D. Tenn. Aug. 12, 2022), report and recommendation adopted, 2022 WL 17485953 (W.D. Tenn. Dec. 7, 2022)).) As to future earnings, the possibility of profit does not neutralize violations of ERISA's protective provisions.

### 4. Named Plaintiffs were not required to exhaust their administrative remedies.

Finally, Defendants argue that Named Plaintiffs are inadequate representatives because they failed to exhaust their administrative remedies. (Resp., 27.) The Sixth Circuit has held that participants and beneficiaries "do not need to exhaust internal remedial procedures before proceeding to federal court when they assert statutory violations of ERISA." *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017). Named Plaintiffs assert only claims based on statutory violations.

### E. Rule 23(b)(1)(B)

Having concluded that all four requirements of Rule 23(a) are satisfied, the Court turns to Rule 23(b). Courts in this Circuit have routinely found that class certification is appropriate under Rule 23(b)(1) for ERISA breach of fiduciary duty cases. *Shirk*, 2008 WL 4425535, at *4 (collecting cases).

The Advisory Committee's note on Rule 23(b)(1)(B) states:

> This clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual action would lie in the fact that the other members

13

> of the class, thus practically concluded, would have had no representation in the lawsuit. . . . The same reasoning applies to an action which charges a breach of trust by . . . a fiduciary similarly affecting the members of a large class of . . . beneficiaries, and which requires an accounting or like measures to restore the subject of the trust.

Fed. R. Civ. P. 23(b)(1)(B) advisory committee's note to 1966 amendment. The circumstance at bar is precisely that described in the note: it is an ERISA action to enforce fiduciary and other statutory duties brought on behalf of the Plan as a whole. Any relief granted will inure to the Plan, rather than to individuals, making adjudication of Named Plaintiffs' claims dispositive of other putative class members' claims. Given that ERISA authorizes plan-wide relief with or without a class, there is a risk that failure to certify the class would leave future plaintiffs without relief and without representation.

Defendants' arguments in opposition fail. First, they argue that Named Plaintiffs cannot come under Rule 23(b) because they seek "monetary relief." Not so. The derivative nature of the Named Plaintiffs' claims and relief sought bring them under Rule 23(b)(1)(B)'s umbrella. *See, e.g., Shirk*, 2008 WL 4425535, at *4–5; *Moreno v. Deutsche Bank Americas Holding Corp.*, 15 Civ. 9936, 2017 WL 3868803, at *8 (S.D.N.Y. Sept. 5, 2017) (certifying a class under Rule 23(b)(1)(B) because plaintiffs challenged defendants' "process for selecting and retaining the investment options presented *to all Plan participants*," and therefore adjudication of named plaintiffs' claims would affect later actions by other participants) (emphasis in original). Finally, they argue that Rule 23(b)(1)(B) is exclusively available in "limited fund cases." (Resp., 33–34.) They over-read the law. *See., e.g., Amchem*, 521

14

U.S. at 614 ("Rule 23(b)(1)(B) *includes, for example*, 'limited fund' cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims.") (emphasis added).

Because this case is appropriate for class treatment under Rule 23(b)(1)(B), the Court need not consider the other potentially applicable subsections of Rule 23(b).

## V. CONCLUSION

For the reasons above, Named Plaintiffs' Motion for Class Certification (ECF No. 117 (redacted) / ECF No. 120 (sealed)) is **GRANTED**.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**