**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **RYAN SWEENEY et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NATIONWIDE MUTUAL INSURANCE COMPANY et al.,**<br><br>**Defendants.** | **Case No. 2:20-cv-1569**<br><br>**Judge Sarah D. Morrison**<br><br>**Magistrate Judge Chelsey M. Vascura** |

**DEFENDANTS' MOTION TO DECERTIFY CLASS**

Pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), Defendants Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach (collectively "Defendants") move the Court to decertify the class previously certified in the Court's March 28, 2024 Opinion And Order. Grounds for this Motion are provided in the accompanying Memorandum In Support.

Respectfully submitted,

**CARPENTER LIPPS LLP**

*s/ Michael H. Carpenter*
Michael H. Carpenter (Ohio Bar #0015733)
*Trial Attorney*
Jeffrey A. Lipps (Ohio Bar # 0005541)
280 North High Street
Columbus, Ohio 43215
Telephone: 614-365-4100
Fax: 614-365-9145
Email: carpenter@carpenterlipps.com
Email: lipps@carpenterlipps.com

**JONES DAY**

Dustin M. Koenig (Ohio Bar #0092426)
Daniel C. Loesing (Ohio Bar #0102671)
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215
Telephone: (614) 469-3939
Email: dkoenig@jonesday.com
Email: dloesing@jonesday.com

Evan Miller (admitted *pro hac vice*)
David T. Raimer (admitted *pro hac vice*)
51 Louisiana Avenue N.W.
Washington, DC 20001
Telephone: (202) 879-3939
Email: emiller@jonesday.com
Email: dtraimer@jonesday.com

*Counsel for Defendants Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach*

**MEMORANDUM IN SUPPORT**

## I. **Introduction**.

This Court previously certified a mandatory class pursuant to Civil Rule 23(b)(1). *See* March 28, 2024 Opinion And Order (Doc. 172). Defendants respectfully submit that recent authority from the Fourth Circuit makes clear that the class should now be decertified. *See Trauernicht v. Genworth Financial Inc.,* 169 F.4th 459 (4th Cir. 2026), rehearing en banc denied (June 4, 2026) (courtesy copy attached as Ex. A).

In Defendants' opposition to Plaintiffs' motion for class certification, Defendants argued that a Rule 23(b)(1) class could not be certified given the U.S. Supreme Court's *Dukes* decision. *See* March 24, 2023 Defendants' Opp. To Class Certification at 32 (Doc. 139, PageID #6412) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)). In *Dukes*, the U.S. Supreme held that a Rule 23(b)(2) class cannot be certified where the plaintiffs' claims for monetary relief predominate over, and are not "incidental to," claims for declaratory or injunctive relief. Def. Opp. at 32. As the Supreme Court reasoned, a mandatory Rule 23(b)(2) class lacks the procedural and due process protections necessary for a damages class. *Id.* The Sixth Circuit, in turn, has held that *Dukes* applies to Rule 23(b)(1) classes as well. *Id.* (citing *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 281 (6th Cir. 2018)). Defendants argued that these principles apply here and, in accordance with *Dukes*, a mandatory Rule 23(b)(1) class could not be certified because Plaintiffs' claims for monetary relief predominated over any claims for declaratory or injunctive relief. *See* Def. Opp. at 33 (Doc. 139, PageID# 6413).

In its certification decision, this Court did not address the application of *Dukes* to the issue of certification under Rule 23(b)(1). Instead, this Court relied on a pre-*Dukes* decision from the Southern District of Ohio. *See* March 28, 2024 Opinion and Order at 13 (citing *Shirk v. Fifth Third*

*Bancorp.*, 2008 WL 4425535 at *4 (S.D. Ohio Sept. 30, 2008)). The Fourth Circuit's recent *Genworth* decision, however, makes clear that *Dukes*, in fact, applies to ERISA claims. Specifically, applying *Dukes,* the Fourth Circuit held that ERISA claims involving a defined contribution plan – as here – are claims for individual monetary relief and *cannot* be certified under Rule 23(b)(1). The Fourth Circuit further held that, given the individualized nature of such claims, Rule 23(a)(2)'s commonality requirement likewise cannot be met. Accordingly, Defendants respectfully submit that this Court should now apply the U.S. Supreme Court's holding in *Dukes*, and consistent with the Fourth Circuit *Genworth* decision, should decertify the class.

## II. Standard For Decertification.

Civil Rule 23(c)(1)(C) provides that an "order that grants or denies class certification may be altered or amended before final judgment." As the Sixth Circuit has stated, this Court has a "continuing obligation to ensure that the class certification requirements are met[.]" *Randleman v. Fidelity National Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). A class certification decision can be altered or amended "as circumstances change[.]" *Id.; see also Hendricks v. Total Quality Logistics, LLC*, 2019 WL 2387206 at *2 (S.D. Ohio March 22, 2019) (same); *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 387 (S.D. Ohio 2001) ("Even after certification, the district court may decertify a class if there is a subsequent showing that the grounds for granting certification no longer exist or never existed"). As discussed below, the Fourth Circuit's recent *Genworth* decision makes clear that the class in this case should now be decertified.

## III. Argument.

### A. A Class Cannot Be Certified Under Rule 23(b)(1).

In *Genworth*, the Fourth Circuit applied *Dukes* to ERISA claims and held that, in claims involving defined contribution plans (as here), a class cannot be certified under Rule 23(b)(1). *See*

*Trauernicht v. Genworth Financial Inc.,* 169 F.4th 459 (4th Cir. 2026), rehearing en banc denied (June 4, 2026). The Fourth Circuit began its analysis by noting the difference between "defined contribution" and "defined benefit" plans. In a defined contribution plan, "assets of the plan are allocated to participants' individual accounts," while in a defined benefit plan, the assets are "used to pay the defined and fixed benefits that the employer promised to plan participants." *Id.* at 467.

As the Fourth Circuit further explained, the "scope of relief obtained by the plan varies considerably depending on whether the plan is a defined contribution plan or a defined benefit plan." *Id.* at 467. "In the context of a defined benefit plan, where the plan assets are undifferentiated and held collectively in trust for the payment of defined and fixed retirement benefits, a plan participant injured by a fiduciary's breach must, by necessity, seek losses on behalf of the plan *as a whole* – there is no other way 'to make good to such plan [the] losses to the plan resulting from the [fiduciary] breach.'" *Id.* at 467-468 (emphasis and alterations in original). The Fourth Circuit provided the following example regarding a defined benefit plan:

> A hypothetical illustrates how this works. Suppose that a fiduciary's egregious mismanagement of a defined benefit plan causes $100 million in losses to the plan, leading the plan to fail and its 1,000 participants not to receive a portion of their vested fixed pension benefits. Under ERISA § 502(a)(2), any one of those participants could bring a claim *on behalf of the plan* to force the fiduciary "to make good to [the] plan" the $100 million in losses caused by the breach. 29 U.S.C. §§ 1132(a)(2), 1109(a). Clearly, a plaintiff bringing such a claim could not, in his suit, simply seek a pro-rata share of the $100 million — *i.e.*, $100,000. Instead, the only "appropriate relief" that could be fashioned in such circumstances would be a judgment in favor of the plan for $100 million, which would then be used to pay, to the maximum extent possible, the defined and fixed benefits owed to the participants.

*Id.* at 468.

The scope of relief, however, is different for a defined contribution plan:

> But the structural features shaping the contours of relief for a defined benefit plan are not the same with respect to a defined contribution plan, where the plan assets are allocated to individual accounts, and a participant's "benefits [are] based solely upon the amount" held in his individual account. 29 U.S.C. § 1002(34). In that distinct context, a plan participant can bring an ERISA § 502(a)(2) claim to seek monetary relief, *again on behalf of the plan*, for the losses sustained with respect to the plan assets *in his individual account.* And such recovery would be paid not to the plan generally, nor to the participant directly, but rather to the participant's *individual retirement account* based on the losses that particular account sustained as a result of the fiduciary breach.

*Id.* at 468 (emphasis in original). The Fourth Circuit provided another example to demonstrate this point:

> Suppose that the fiduciary of a defined contribution plan breached its "duty of prudence by failing to properly monitor investments and remove [an] imprudent one[ ]," *Tibble v. Edison Int'l*, 575 U.S. 523, 530, 135 S.Ct. 1823, 191 L.Ed.2d 795 (2015), and that, when all the losses across the plan's 1,000 individual accounts were aggregated, the total loss resulting from the breach was $100 million. The loss, if any, to each individual account in the plan, however, would vary significantly depending on factors like how much money a participant had invested in the imprudent fund, how long he had held the investment, and the precise timing of when he had bought and sold.

*Id.* Accordingly, ERISA claims "brought in the context of a defined contribution plan" are "*individualized* monetary claims" and "cannot be joined . . . in a mandatory class certified under Rule 23(b)(1)." *Id.* at 469 (citing *Dukes*).

Here, the subject Plan is a defined contribution plan. *See* Am. Cmplt. ¶ 35 (Doc. 26, PageID # 99); *see also* Plan (Doc. 220-1, PageID # 17406); Enrollment Guide (Doc. 220-1, PageID # 17723). Rather than promising fixed benefits (as in a defined benefits plan), the Plan instead provides participants with the opportunity to make contributions to their own individual 401(k) retirement accounts. Specifically, the Plan currently provides participants fourteen investment options, including a money-market account, several stock and bond mutual funds, a BrokerageLink

option permitting participants broad access to the equity market (e.g., stock purchases), and the Guaranteed Fund. *See* Def. Opp. at 4 (Doc. 139, PageID # 6384). As *Genworth* makes clear, claims involving defined contribution plans like the Plan here necessarily involve individualized monetary claims that cannot be certified under Rule 23(b)(1). *Genworth* at 469 (citing *Dukes*).

In fact, discovery has confirmed that Plaintiffs are pursuing individualized monetary relief as described in *Genworth*. In his "damages" calculation, for example, Plaintiffs' expert Kopcke simply has *aggregated* the total alleged loss suffered by Plan participants who invested in the Guaranteed Fund. *See, e.g.,* Kopcke Report at 67-68, ¶¶ 219, 223 (aggregating alleged "excess compensation that Nationwide extracted from the GIF's participants") (Doc. 192-3, PageID # 7780-7782). Any such aggregated damages award would not accrue to the Plan, and Plan participants would not receive any defined benefit as in a defined benefit plan. Rather, because this case involves a defined contribution plan, damages would be payable to each individual participant's account based on "how much money a participant had invested in the [Guaranteed Fund], how long he had held the investment, and the precise timing of when he had bought and sold." *Genworth* at 468. Again, as *Genworth* makes clear and following *Dukes*, these are claims for "individualized monetary relief" that cannot be certified under Rule 23(b)(1). *Id.* at 469 (citing *Dukes*).

Should any doubt remain, discovery also has confirmed that Plaintiffs' damages claims predominate over any claims for declaratory or injunctive relief. Plaintiffs' expert Kopcke contends that when aggregated, the Plan participants' purported losses exceed $140 million. *See* Kopcke Report at 68 (Doc. 192-3, PageID # 7781). And, in their deposition testimony, Plaintiffs Sweeney and Marshall confirmed that what they really want is monetary relief. *See* Def. Opp. at 33 (Doc. 139, Page ID # 6413). In fact, both are former participants for whom declaratory or

injunctive relief would have no benefit whatsoever. *Id.* at 10, 13 (Doc. 139, Page ID # 6390, 6393). Not surprisingly, Plaintiffs did not even mention declaratory or injunctive relief in their class certification motion and did not seek certification under Rule 23(b)(2), which expressly applies to declaratory or injunctive relief. Plaintiffs' individualized monetary damage claims plainly predominate over any other purported claims for relief.

In summary, the Fourth Circuit's *Genworth* decision makes clear that (1) the U.S. Supreme Court's *Dukes* decision applies to ERISA claims; (2) where, as here, the challenged plan is a defined contribution plan, Plaintiffs' claims are for individualized monetary relief; and (3) a class cannot be certified under Rule 23(b)(1). Accordingly, consistent with *Dukes* and *Genworth*, this Court should decertify the class.

**B. A Class Cannot Be Certified Under Rule 23(a)(2).**

Further applying *Dukes*, the Fourth Circuit held that Rule 23(a)(2)'s commonality requirement could not be met given the individualized issues involved. Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members have suffered *the same injury*." *Genworth* at 473 (emphasis in original; quoting *Dukes* at 350). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* (quoting *Dukes*). The fact that plaintiffs claim that a given statute has been violated "gives no cause to believe that all their claims can productively be litigated at once." *Id.* (quoting *Dukes*).

Applying these principles, the Fourth Circuit held that there was no commonality for two reasons. First, the Fourth Circuit noted that alleged comparator funds had actually underperformed the challenged funds, and as a result, "many purported class members suffered no injury." *See id.* at 473. Because such class members suffered no injury, "they did not suffer the same injury as necessary for commonality." *Id.* (citing *Dukes*).

Second, commonality was not satisfied because "each plaintiff, as well as each class member, participated in the plan in a materially different way." *Id.* at 474. "Each participant made his or her own investment decisions with respect to his or her individual account, and the participant could change that decision on any given day." *Id.* Participants also selected investments "at different times during different market conditions" and "withdrew assets from the Plan at different times." *Id.* Given these individualized issues, the Fourth Circuit held that Rule 23(a)(2)'s commonality requirement could not be met and reversed the District Court's certification of a class. *Id.* (citing *Dukes*).

These same principles apply here. Plaintiffs and the putative class members have not suffered any injury. Plaintiffs have failed to identify any comparator that performed better than the Guaranteed Fund, and in fact, discovery has confirmed that the Guaranteed Fund provided *higher* returns and *lower* expenses than the next-closest class of investments that provide for capital preservation—stable value funds. *See* Def. Opp. at 7-9 (Doc. 139, PageID # 6387-6389); *see also* November 20, 2024 Defendants' Motion For Summary Judgment at 9-18 (Doc. 220, PageID # 17361-17370). Plaintiffs simply have not suffered any injury, let alone the "same injury" that would support Rule 23(a)(2)'s required commonality. *Genworth* at 473; *Dukes* at 350-351.

Furthermore, as in *Genworth*, Plaintiffs' and the putative class members' damages claims are highly individualized. In order to determine the amount of monetary relief due to each class member, it would be necessary to individually examine each Plan participant's account to determine when the participant invested in the Guaranteed Fund, stopped investing in the Guaranteed Fund, withdrew money from the Guaranteed Fund, etc. Plaintiff Sweeney, for example, only had $71.67 invested in the Guaranteed Fund at the beginning of the class period (2014), invested less than $15 in the Guaranteed Fund in the third and fourth quarters of 2015, and

withdrew all his funds from the Guaranteed Fund in January 2016 when he left Nationwide. *See* Def. Opp. at 10 (Doc. 139, PageID# 6390). Plaintiff Sweeney further testified he had "no problem" with the Guaranteed Fund. Nonetheless, he testified he is seeking $70 million in damages. *Id.* at 11-12 (Doc. 139, PageID # 6391-6392).

Plaintiff Marshall, in turn, was given severance pay when his position was eliminated and transferred most of his funds to a new IRA with Fidelity. Nonetheless, he kept a little over $2,000 in the Guaranteed Fund because he was obligated to repay loans that he previously had taken from his NSP account. *See* Def. Opp. at 13 (Doc. 139, PageID # 6393). Plaintiff Marshall likewise testified he is seeking monetary relief and believes that $70 million is at issue. *Id.* at 15 (Doc. 139, PageID # 6395). These are exactly the type of individualized issues that the Fourth Circuit held defeat Rule 23(a)(2)'s commonality requirement. *Genworth* at 474 (citing *Dukes*).

Lastly, the individualized nature of Plaintiffs' claims is confirmed by the fact that Plaintiffs failed to present the Court with a damages model that could be used to determine each participants' damages. *See* Def. Opp. at 37 (Doc. 139, PageID # 6417). Such a damages model would have been necessary to obtain certification of a class under Rule 23(b)(3). *See id.* (citing *Rodney v. Northwest Airlines*, *Inc.*, 146 Fed.Appx. 783, 791 (6th Cir. 2005); *Bartell v. LTF Club Operations Co.*, 2016 WL 11596601 at *7 (S.D. Ohio Aug. 8, 2016)). Presumably, Plaintiffs did not present the Court with the necessary damages model because they could not do so. This is a tacit admission that individualized claims for monetary relief predominate and defeat commonality. Here, the class can and should be decertified for this additional reason as well.

## CONCLUSION

The Fourth Circuit's *Genworth* decision makes clear that the U.S. Supreme Court's *Dukes* decision applies to ERISA claims. Where, as here, a defined contribution plan is involved, a class

cannot be certified under Rule 23(b)(1). Likewise, the commonality requirements of Rule 23(a)(2) cannot be met. Accordingly, Defendants respectfully request that this Court – like the Fourth Circuit in *Genworth* – apply the U.S. Supreme Court's *Dukes* decision and decertify the class.

Dated: June 15, 2026

Respectfully submitted,

**CARPENTER LIPPSLLP**

*s/ Michael H. Carpenter*
Michael H. Carpenter (Ohio Bar #0015733)
*Trial Attorney*
Jeffrey A. Lipps (Ohio Bar # 0005541)
280 North High Street
Columbus, Ohio 43215
Telephone: 614-365-4100
Fax: 614-365-9145
Email: carpenter@carpenterlipps.com
Email: lipps@carpenterlipps.com

**JONES DAY**

Dustin M. Koenig (Ohio Bar #0092426)
Daniel C. Loesing (Ohio Bar #0102671)
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215
Telephone: (614) 469-3939
Email: dkoenig@jonesday.com
Email: dloesing@jonesday.com

Evan Miller (admitted *pro hac vice*)
David T. Raimer (admitted *pro hac vice*)
51 Louisiana Avenue N.W.
Washington, DC 20001
Telephone: (202) 879-3939
Email: emiller@jonesday.com
Email: dtraimer@jonesday.com

*Counsel for Defendants Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiffs.

*s/ Michael H. Carpenter*
*Counsel for Defendants Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach*