**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Ryan Sweeney and Bryan Marshall, as individuals, and on behalf of all others similarly situated, and on behalf of the Nationwide Savings Plan,

Plaintiffs,

vs.

Nationwide Mutual Insurance Company; Nationwide Life Insurance Company; and the Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach,

Defendants.

Case No. 2:20-cv-01569-SDM-CMV

Judge Sarah D. Morrison

Magistrate Judge Chelsey M. Vascura

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## MOTION

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Ryan Sweeney and Bryan Marshall ("Plaintiffs") hereby move this Court for an Order: (1) preliminarily approving the Parties' Class Action Settlement Agreement (attached as Exhibit 1 to the accompanying declaration of Kai Richter); (2) approving the proposed Notice of Settlement and authorizing distribution of the Notice to the Class; (3) scheduling a Fairness Hearing; and (4) granting such other relief as set forth in the proposed Preliminary Approval Order submitted herewith. This motion is based on the accompanying Memorandum of Law and authorities cited therein, the Declaration of Kai Richter, the Declarations of the named Plaintiffs, the Parties' Settlement Agreement, and all files, records, and proceedings in this matter. Defendants do not oppose the motion as parties to the Settlement Agreement.

Dated: November 4, 2026

Respectfully submitted,

*s/ Kai Richter*
Kai H. Richter (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL, LLP**
400 S. Fourth Street #401-27
Minneapolis, MN 55415
Tel: (612) 807-1575
Fax: (202) 408-4699
krichter@cohenmilstein.com

Michelle C. Yau (admitted *Pro Hac Vice*)
Daniel R. Sutter (admitted *Pro Hac Vice*)
Daniel S. Sommers (admitted *Pro Hac Vice*)
Caroline E. Bressman (admitted *Pro Hac Vice*)
**COHEN MILSTEIN SELLERS & TOLL LLP**
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com-
dsommers@cohenmilstein.com
cbressman@cohenmilstein.com

Eric H. Zagrans (OH #0013108)
*Trial Attorney*
**ZAGRANS LAW FIRM LLC**
1640 Roundwyck Lane
Columbus, Ohio 43064
Telephone: (440) 452-7100
Email: eric@zagrans.com

*Counsel for Plaintiffs and the Class*

# MEMORANDUM IN SUPPORT

## INTRODUCTION

After more than six years of litigation, Plaintiffs and Defendants have reached a proposed class action settlement.[1] Under the terms of the proposed Settlement, Defendants have agreed to pay a Gross Settlement Amount of $12,900,000, which will be used to supplement Class Members' Guaranteed Fund account balances and enhance the Fund's crediting rate going forward. This is a significant monetary recovery that falls within the range of court-approved settlements in other ERISA cases and avoids substantial risks associated with trial and potential appeals. Moreover, the Parties' negotiations were fully informed and conducted at arm's length. Prior to reaching a settlement, the Parties undertook extensive discovery, engaged multiple experts who issued detailed reports, had the benefit of the Court's pretrial rulings (including on summary judgment), and participated in three separate mediation sessions with mediator Frank Ray. In all respects, the Settlement is fair, reasonable, and adequate, and fulsome notice of the proposed settlement terms will be provided to the Class (which is consistent with the class that the Court previously certified for litigation purposes). Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Notice and authorizing distribution of the Notice to the Class; (3) scheduling a Fairness Hearing; and (4) granting such other relief as set forth in the proposed Preliminary Approval Order submitted herewith. Both Plaintiffs and Class Counsel have submitted declarations in support of the Settlement, and this motion is not opposed by Defendants as parties to the Settlement.

[1] The proposed Settlement Agreement ("Settlement") is attached as Exhibit 1 to the accompanying declaration of Kai Richter. *See* Richter Decl. Ex. 1. Unless otherwise defined, all capitalized terms herein have the same meaning as set forth in the Settlement.

# BACKGROUND

## I. Procedural History

### A. Pleadings and Early Motion Practice

Plaintiffs filed this action on March 26, 2020 (Dkt. 1), and later filed an Amended Complaint on October 5, 2020, *see* Dkt. 26. In their operative Amended Complaint, Plaintiffs assert claims against Defendants[2] for breaches of fiduciary duty under 29 U.S.C. § 1104; prohibited transactions under 29 U.S.C. §§ 1106(a)-(b); and violation of ERISA's anti-inurement provision, 29 U.S.C. § 1103(c), with respect to the Guaranteed Fund in the Nationwide Savings Plan ("Plan"). Am. Compl. (Dkt. 26) at PageID 109-18. In particular, Plaintiffs object to the costs and expenses of the Guaranteed Fund and the compensation that Nationwide received. *Id.* at PageID 103-06.

On November 5, 2020, Defendants filed a motion to dismiss, Dkt. 41, which was denied by Judge Graham on March 24, 2022, *see* Dkt. 67. Defendants then brought an early motion for summary judgment, Dkt. 87, which was also denied by Judge Graham (without prejudice) on September 29, 2023, Dkt.158. At the same time, Judge Graham granted Plaintiffs' motion for further discovery pursuant to Federal Rule of Civil Procedure 56(d). *Id.*

Following these initial orders, the case was reassigned to Chief Judge Morrison, Dkt.159, and the Parties engaged in substantial discovery and additional motion practice as outlined below.

### B. Discovery

#### 1. Written Discovery

Plaintiffs served Defendants with five sets of Requests for Production (spanning 104 document requests in total), five sets of Interrogatories, and one set of Requests for Admissions.

[2] The Defendants are Nationwide Mutual Insurance Company; Nationwide Life Insurance Company, the Investment Committee of the Nationwide Savings Plan (also known as the Benefits Investment Committee, or "BIC"), and certain members of the BIC during the relevant period.

Richter Decl. ¶ 12. Plaintiffs also served third party Callan LLC (Callan), the Plan's investment consultant, with a document subpoena. *Id.*

In response to Plaintiffs' discovery requests, Defendants produced over a quarter million pages of documents and dozens of spreadsheets in electronic format. *Id.* ¶ 13. In addition, Callan produced over 9,000 pages of documents in response to Plaintiffs' subpoena. *Id.* ¶ 13.

Defendants also served Plaintiffs with Requests for Production and Interrogatories. *Id.* ¶ 14. In response, Plaintiffs produced hundreds of pages of documents themselves. *Id.*

**2. Depositions**

The Parties also took several depositions. These included eight depositions of defense witnesses, a deposition of one Callan witness (Brianne Weymouth), and depositions of both named Plaintiffs. *Id.* ¶ 15. In addition, five depositions were taken of expert witnesses, as discussed below.

**3. Expert Discovery**

Following fact discovery, Plaintiffs served reports from two expert witnesses (Richard Kopcke and Marcia Wagner) and Defendants served reports from three experts (Wesley Whiteman, Richard Cahill, and Kelly Driscoll).[3] *Id.* ¶ 16. All five of these experts were deposed. *Id.* ¶ 15.

**4. Discovery Motions**

The Parties engaged in multiple rounds of motion practice over discovery. Magistrate Judge Vascura issued several discovery orders, *see* Dkts. 96, 103, 144, 145, 155, 177, including one order that was affirmed by Judge Graham before the case was reassigned, *see* Dkt. 135. Magistrate Judge Vascura also issued an order on a motion for reconsideration of a discovery order (Dkt. 200) that was affirmed by Judge Morrison. *See* Dkt. 224. In addition, Plaintiffs filed a motion to exclude

[3] All but one of these experts served both an opening report and rebuttal report. *Id.* ¶ 16 n.3. Ms. Wagner only served a rebuttal report, as she was engaged as a rebuttal expert to Ms. Driscoll. *Id.* In addition, both Kopcke and Whiteman issued supplemental reports after fact discovery was briefly reopened by the Court. *Id.*

evidence under Rule 37 (Dkt.181), which was denied by the Court (without prejudice), Dkt. 224.

**C. Additional Motion Practice and Trial Preparation**

While discovery was still proceeding, Plaintiffs filed a motion for class certification (Dkt. 117), which was granted by the Court on March 28, 2024. Dkt.172. In connection with this Order, the Court certified the following class:

> All participants and beneficiaries in the Nationwide Savings Plan who were invested in the Guaranteed Fund at any time from March 26, 2014 through the date of final judgment in this action, excluding the individual Defendants.

*Id.*

Thereafter, both parties filed summary judgment and *Daubert* motions on November 18, 2024. *See* Dkts. 209, 210, 212, 213. In a written order on December 22, 2025, the Court: (1) denied Plaintiffs' summary judgment motion, (2) granted in part and denied in part Defendants' summary judgment motion, (3) granted in part and denied in part Plaintiffs' *Daubert* motion, and (4) denied Defendants' *Daubert* motion. Dkt.266. The case was then set for a bench trial beginning on July 20, 2026. Dkt. 269.

Following the Court's summary judgment/*Daubert* order and order scheduling a trial date, the Parties engaged in extensive trial preparation and filed a lengthy pretrial statement (as well as deposition designations and objections) with the Court. *See* Dkts. 281, 282. Defendants also filed a motion for class decertification (Dkt. 279), which remained pending at the time of settlement.

**D. Mediation and Settlement**

During the course of the proceedings, the Parties participated in three mediations sessions with a respected Ohio mediator, Frank Ray, in February-March 2024, February 2025, and February 2026. Richter Decl. ¶ 23. Following the most recent session, the Parties continued their settlement discussions while keeping Mr. Ray in the loop as to their communications. *Id.* ¶ 24. After extensive back and forth (on which Mr. Ray was copied), the Parties reached a settlement-in-principle on

July 9, 2026 and promptly informed the Court of the same. *Id*. Thereafter, the Parties negotiated the comprehensive Settlement Agreement that is the subject of this motion for preliminary approval. *Id*. ¶ 25. At all times, the parties' negotiations were at arm's length. *Id*.

## II. OVERVIEW OF SETTLEMENT TERMS

### A. The Settlement Class

The Settlement Class is consistent with the class certified by the Court for litigation purposes. *See* Settlement § 1.10. According to Defendants, there are approximately 83,000 to 85,000 individuals who fall within the Class definition. *See* Richter Decl. ¶ 4.

### B. Benefits to the Class

Under the terms of the proposed Settlement, the Nationwide Defendants will pay a Gross Settlement Amount of $12,900,000 into a Qualified Settlement Fund for the benefit of the Class. *See* Settlement §§ 1.30, 4.2. This represents between 17% and 20% of the alleged losses that Plaintiffs claimed were due to excess fees associated with the Guaranteed Fund. Richter Decl. ¶ 5. Prior to settlement, Plaintiffs' investment expert (Richard Kopcke) calculated alleged excess fee losses of $63.7 million with a present value of $74.0 million through Q2 2023. *Id.*

After accounting for any Attorneys' Fees, Attorneys' Expenses, Administrative Expenses, and Class Representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members on a per capita basis (i.e., the Entitlement Amount of each Class Member shall be calculated by dividing the Net Settlement Amount by the number of Class Members). *See* Settlement § 5.1. Current Participants will automatically receive their settlement payment through a deposit to their individual account in the Plan. *Id.* § 5.2. Former participants must submit a claim form re-opening their account in the Plan to receive payment. *Id.* § 5.3. To the extent that any settlement payments are unclaimed by Former Participants, the unclaimed funds will be credited to the Guaranteed Fund's Additional Interest Reserve and be used to enhance the

Guaranteed Fund's crediting rate for the benefit of Plan participants. *Id.* In no event will any monies in the Qualified Settlement Fund revert to Nationwide Mutual or any other Defendant for its own business purposes. *Id.* § 5.6.

### C. Release of Claims

In exchange for the substantial benefits provided by the Settlement, Plaintiffs and the Class will release Defendants and related parties[4] from claims that were asserted in the Action or could have been asserted in the Action that that arise out of, relate to, are based on, or have any connection with the Guaranteed Fund or Annuity Contract. *See* Settlement § 1.39(a). The release also encompasses claims that would be barred by res judicata, claims relating to the calculation of Settlement payments, and claims that relate to the Independent Fiduciary's approval of the Settlement and release on behalf of the Plan.[5] *Id.* §§ 1.39(b)-(d). The Settlement Agreement sets forth the Released Claims and Released Parties in full. *Id.* §§ 1.39, 1.47.

### D. Class Notice and Settlement Administration

Class Members will be sent a Notice of the Settlement via first-class U.S. Mail, which provides relevant information relating to the Settlement and Class Members' options under the Settlement. *Id.* §§ 3.2(b)-(c) & Ex. A. The proposed notice is attached as Exhibit A to the Settlement Agreement. In addition to the Notice, Former Participants will also receive a Former Participant Claim Form enabling them to make the election described above. *Id.* § 3.2(c) & Ex. B. The proposed Claim Form is attached as Exhibit B to the Settlement.

To the extent that Class Members would like more information, the Settlement Administrator will establish a Settlement Website on which it will post the Settlement Agreement,

[4] The Released Defendant Parties are set forth in Section 1.47 of the Settlement Agreement.

[5] The Independent Fiduciary's review of the Settlement is discussed *infra* at § II.F.

Notice, Former Participant Claim Form, Amended Complaint, and other relevant documents. *Id.* § 3.3(b). In addition, the Settlement Administrator will establish a toll-free telephone line that will allow callers to speak with a live operator if they have questions. *Id.* § 3.3(c).

### E. Attorneys' Fees and Expenses

Under the Settlement, attorneys' fees are subject to Court approval and will not exceed $4 million (less than one-third of the Gross Settlement Amount). *Id.* § 6.1. In addition, the Settlement provides for recovery of Attorneys' Expenses and Administrative Expenses (collectively, "Expenses"), *id.*, and service awards to the Class Representatives, *id.* § 6.2. Any such distributions shall be paid from the Gross Settlement Amount (or interest thereon) and be determined by the Court in its discretion. *Id.* §§ 6.1-6.2. The effectiveness of the Settlement is not contingent on the Court's approval of any requested Attorneys' Fees, Expenses, or Service Awards. *Id.*

### F. Independent Fiduciary Review

Finally, as required under DOL regulations, the Settlement will be subject to review by an Independent Fiduciary acting on behalf of the Plan (in addition to the Court). *Id.* § 2.2. This Independent Fiduciary review is consistent with the process outlined in Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ("PTE 2003-39"). The Independent Fiduciary will issue its report at least 50 days before the final Fairness Hearing so that the Court may consider it. *Id.* § 2.2(b).

## ARGUMENT

### I. Standard of Review

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement agreement that will bind absent class members. This review is meant to ensure that the settlement is not "the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerns." *Clark Equip.*

*Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)); *see also* Fed. R. Civ. P. 23(e)(2) (court may approve settlement "on finding that it is fair, reasonable, and adequate"). In connection with this review, the Sixth Circuit recognizes that "federal policy favor[s] settlement of class actions" such as this. *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 632 (6th Cir. 2007).

"Settlement approval consists of three steps: '(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement.'" *Bailey v. Verso Corp*., 337 F.R.D. 500, 505 (S.D. Ohio 2021) (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1026 (S.D. Ohio 2001)); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001). In the first step, courts examine the proposed settlement for "obvious deficiencies" and determine whether it is in the "range of possible approval." *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. 2020) (citation omitted). "At the stage of preliminary approval, the questions are simpler, and the court is not expected to … engage in analysis as rigorous as is appropriate for final approval." *Melgard v. OhioHealth Corp.*, 2023 WL 3243197, at *4 (S.D. Ohio May 4, 2023) (Morrison, J.) (quoting Annotated Manual for Complex Litigation (Fourth) § 21.662 (2012)). The ultimate fairness determination is left for final approval after class members receive notice of the settlement.

Rule 23(e) codifies these standards. Under Rule 23(e)(1), the court must determine at the preliminary approval stage whether it "will *likely* be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." (emphasis added). Rule 23(e)(2) then specifies the factors the court must ultimately consider at the final approval stage in determining whether a settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment;
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Following the 2018 amendments to Rule 23(e), courts in the Sixth Circuit have continued to apply the same "within the range of possible approval" standard at preliminary approval. *See Walburn v. Lend-A-Hand Servs., LLC*, 2020 WL 2744101, at *7 (S.D. Ohio May 26, 2020) (Morrison, J.); *Garner*, 333 F.R.D. at 626. In addition, courts sometimes consider traditional factors that largely track the Rule23(e) factors, including: (1) the risk of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the plaintiff's likelihood of success on the merits; and (5) the public interest in settlement. *Walburn*, 2020 WL 2744101, at *3. "The goal of this amendment [was] not to displace any [existing] factor, but rather to focus the court … on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory comm. note (2018).

## II. The Settlement Satisfies the Standard for Preliminary Approval

All relevant factors favor approval here: (1) the settlement was negotiated at arm's length by experienced counsel after extensive discovery and litigation with the help of a respected mediator; (2) the Class was adequately represented by Plaintiffs and Class Counsel; (3) the relief provided is adequate in light of the costs and risks of litigation and other factors; and (4) the Settlement treats all Class Members equitably pursuant to a common formula. Accordingly, this Court should preliminarily approve the Settlement and authorize notice to the Class.

### A. The Settlement Is the Product of Arm's-Length Negotiations After Extensive Discovery and Litigation

At all times, the Parties negotiated at arm's length. *See* Richter Decl. ¶ 25. A settlement was reached only after three separate attempts at mediation, facilitated by a respected and neutral mediator, following extensive adversarial proceedings. *See supra* at 2-5. There is no evidence of fraud or collusion. *See Blasi v. United Debt Servs., LLC*, 2019 WL 6050963, at *7 (S.D. Ohio Nov. 15, 2019) (Morrison, J.) ("In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel.") (citation omitted).

Moreover, the Parties' negotiations were well-informed. "[T]ens of thousands of pages of documentary discovery ... coupled with expert and lay depositions, produced a well-developed factual record that enabled Class Counsel to make informed decisions about the Settlement." *Id.* In addition, the Parties were informed by the Court's rulings on multiple contested motions including the most recent summary judgment and *Daubert* motions. This gave the Parties a clear view of the facts and law, and the strengths and weaknesses of their case. *See Koenig v. USA Hockey*, 2012 WL 12926023, at *4 (S.D. Ohio Jan. 10, 2012) ("Based on the pleadings filed, as well as the discovery and mediation efforts, the Parties have a 'clear view of the strengths and weaknesses of their cases.'") (citation omitted).

### B. The Class Was Adequately Represented by Plaintiffs and Class Counsel, Who Support the Settlement

"The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Smith v. Ajax Magnethermic Corp.*, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) (quoting *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)); *Wright v. Premier Courier, Inc.*, 2018 WL 3966253, at *5 (S.D. Ohio Aug. 17, 2018). That is precisely the situation presented here.

Counsel from Cohen Milstein Sellers & Toll, LLP ("Cohen Milstein") are seasoned class action practitioners who have successfully litigated numerous ERISA class actions involving similar claims, including recent cases against New York Life, GWA LLC (manager of the Weiss Funds), Wells Fargo, T. Rowe Price, and BlackRock arising from use of proprietary funds in their 401(k) plans. *See* Richter Decl. ¶ 42. The undersigned counsel also previously served as counsel of record (at his former law firm) in numerous other ERISA class cases involving proprietary funds, including *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153 (S.D. Ohio). *See* Richter Decl. ¶ 31. In recognition of its work, Cohen Milstein's Employee Benefits/ERISA Group was named a Practice Group of the Year in 2025 by Law360. *Id.* ¶ 41. Moreover, Cohen Milstein was assisted in the litigation by an experienced Ohio class action litigator, Eric Zagrans of Zagrans Law LLC. *Id.* ¶ 51. This Court previously found Class Counsel adequate to represent the Class, *see* Dkt. 172 at PageID7005, and the record reflects that they have vigorously pursued this action. *See supra* at 2-4. Based on their experience handling similar ERISA cases, and the extensive record that was developed, Class Counsel have concluded that the relief provided by the Settlement is fair and reasonable. Richter Decl. ¶¶ 9, 26.

The Class also has been adequately represented by the named Plaintiffs. *See* Dkt. 172 at PageID 7005-08 (finding Plaintiffs adequate to represent Class). Plaintiffs reviewed the initial and amended complaints, produced documents, provided written discovery responses, communicated regularly with Class Counsel, testified at their depositions, prepared for trial, and reviewed the proposed Settlement. *See* Sweeney Decl. ¶ 4; Marshall Decl. ¶ 4. These types of actions reflect adequate representation. *See Willis v. Big Lots, Inc.*, 242 F.Supp.3d 634, 649–50 (S.D. Ohio 2017). Each of the Class Representatives also have submitted declarations expressing support for the Settlement. *See* Sweeney Decl. ¶ 7; Marshall Decl. ¶ 7.

### C. The Settlement Provides Adequate Relief Based on All Relevant Factors

#### 1. Significant Benefits to the Class

The substantial benefits provided by the Settlement also support its endorsement. The $12.9 million recovery is significant on its face, and represents 17% - 20% of the alleged losses due to excess fees. *See* Dkt. 282 at PageID 27482 (asserting losses of $63.7 million with present value of $74.0 million due to excess fees). This is a reasonable recovery in light of the risks of litigation discussed below, and is on par with other settlements that have been approved. *See*, *e.g., In re Polyurethane Foam Antitrust Litigation*, 2015 WL 1639269, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide [damages] is an impressive result in view of these possible trial outcomes."); *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig*., 2013 WL 12329512, at *3 (W.D. Tenn. Sept. 5, 2013) (approving ERISA settlement equal to approximately 16% of total damages); *see also Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving ERISA 401(k) settlement that represented 19% of estimated damages); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc*., 2018 WL 2183253, at *5 (N.D. Cal. May 11, 2018) (approving ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *In re Newbridge Networks Sec. Litig*., 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("[A]n agreement that secures roughly six to twelve percent of a *potential* recovery ... seems to be within the targeted range of reasonableness."); *In re Rite Aid Corp. Sec. Litig*., 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

#### 2. Costs, Risks, and Delay of Trial and Potential Appeals

If Plaintiffs had continued to litigate the case, they would have faced significant litigation risk. *Karpik v. Huntington Bancshares, Inc.*, 2021WL 757123, at *3 (S.D. Ohio Feb. 18, 2021);

*see also In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 2014 WL 12808031, at *3 (W.D. Tenn. Dec. 24, 2014) (risks include "uncertainty given the evolving case law in ERISA cases"); *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19, 2009) (noting risk that there could be no recovery at all). In a recent trial in this circuit involving another guaranteed fund product, the defendants prevailed. *See Iannone v. AutoZone, Inc.*, 2025 WL 2797074, at *18 (W.D. Tenn. Sept. 30, 2025) ("[T]he Court finds in favor of Defendants on Plaintiffs' remaining ERISA claims concerning the Prudential Guaranteed Income Fund"). The defendants also prevailed in other recent ERISA trials, including matters involving proprietary funds. *See, e.g., Reetz v. Lowe's Companies., Inc.*, 2021 WL 4771535 (W.D.N.C. Oct. 12, 2021) (bench trial ruling in favor of defendant Aon Hewitt in case involving Aon Growth Fund), *aff'd*, 74 F.4th 171 (4th Cir.2023), *aff'd sub nom. Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171 (4th Cir. 2023); *Wildman v. Am. Century Servs., LLC*, 362 F.Supp.3d 685 (W.D. Mo. 2019) (ruling in favor of defendants in case involving proprietary funds); *Sacerdote v. New York Univ.*, 328 F.Supp.3d 273 (S.D.N.Y. 2018) (bench trial ruling in favor of defendants), *aff'd in part, vacated in part*, 9 F.4th 95 (2d Cir. 2021). Moreover, several recent cases involving guaranteed investment or other stable value products have been dismissed *before* trial. *See, e.g., Eibensteiner v. EssilorLuxottica USA Inc.*, 2026 WL 3182479 (N.D. Tex. Oct. 23, 2026); *Farrar v. Arthur J. Gallagher (Illinois) LLC*, 2026 WL 2415672 (N.D. Ill. Aug. 17, 2026); *Manoharan v. Maersk, Inc.*, 2026 WL 2042219 (D. Mass. July 15, 2026); *Johnston v. Intermountain Healthcare, Inc.*, 2026 WL 1998490 (D. Utah July 10, 2026); *Clinton v. Baxter Int'l, Inc.*, 1:25-cv-03368, Dkt. 55 (N.D. Ill. July 7, 2026).

Assuming that Plaintiffs prevailed on liability, issues regarding proof of loss would have remained. *See Karpik*, 2021 WL 757123, at *5; Restatement (Third) of Trusts, § 100 cmt. b(1) (2012) (determination of losses in breach of fiduciary duty cases is "difficult"). Thus, even if the

Court determined that the BIC lacked a prudent process for reviewing the Guaranteed Fund or its expenses, it is still possible that Plaintiffs might have obtained no recovery. *See Vellali v. Yale Univ.*, No. 3:16-cv-1345, Dkt. 622 (D. Conn. July 13, 2023) (jury verdict in favor of defendants on loss in ERISA case); *Sacerdote*, 328 F.Supp.3d at 280 (finding that "while there were deficiencies in the Committee's [fiduciary] processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result").

While Plaintiffs were confident in their claims, continuing the litigation would have, at a minimum, resulted in lengthy and costly trial proceedings followed by a likely appeal that would have delayed relief to the class with no certainty as to the result. *See Blasi*, 2019 WL 6050963, at *7 ("Trial would last weeks and an appeal may follow."). At the time of settlement, this case was already six years old, and could have continued for several more years. *See Shanechian v. Macy's, Inc*, 2013 WL 12178108, at *5 (S.D. Ohio June 25, 2013) (finding ERISA case that had lasted for six years could last for six more years absent a settlement). ERISA class cases can extend for a decade or longer, sometimes going through multiple appeals. *See, e.g., Tussey v. ABB, Inc.*, 850 F.3d 951, 954–56 (8th Cir. 2017) (recounting lengthy history of case that was initially filed in 2006, and remanding to district court a second time); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed).

The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See Smith v. Local Cantina, LLC*, 2022 WL 1183325, at *4 (S.D. Ohio Apr. 19, 2022) ("The case's complexity weighs in favor of approving the settlement."). "The complexity inherent in class actions is amplified in ERISA class actions." *Karpik*, 2021WL 757123, at *4. As other courts have recognized, "ERISA is a complex field that involves difficult and novel legal theories." *Krueger v. Ameriprise Fin. Inc.*, 2015 WL 4246879, at *1 (D. Minn. July

13, 2015); *see also Abbott v. Lockheed Martin Corp*., 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERISA cases such as this are "particularly complex"). Moreover, the financial aspects of this case were highly complex, as reflected in the Parties' competing expert reports. *See Koerner v. Copenhaver*, 2014 WL 5544051, at *4 (C.D. Ill. Nov. 3, 2014) ("The facts giving rise to Plaintiffs' claims are complicated, require the elucidation of experts, and are far from certain.")

Given the complexity, risks, costs, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Karpik*, 2021 WL 757123, at *5 ("The Court finds that this complexity, along with the potential risk, cost, and additional delay, strongly favors approval of this Settlement."); *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("[S]ettlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways.").

**3. Terms Regarding Attorneys' Fees and Expenses**

The terms regarding Attorneys' Fees and Expenses are also reasonable given the "skill and expertise of counsel who are known nationally for their successful representation of ERISA clients in class action matters." *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *8 (E.D. Mich. Dec. 12, 2013); *see also* Richter Decl. ¶¶ 27-51 (detailing qualifications of Class Counsel). "Handling a complex case such as this requires counsel with specialized skills" and "Class Counsel is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this." *Karpik*, 2021 WL 757123, at *9.

Here, Class Counsel have agreed to limit their fee request to approximately 31% of the Gross Settlement Amount ($4 million / $12.9 million). "This requested fee is consistent with standard fee awards as a percentage of the fund in ERISA actions which typically award between 30% and 33% on a percentage of the fund fee calculation." *Griffin.*, 2013 WL 6511860, at *8; *see also Hawkins v. Cintas Corp.*, 2025 WL 523909, at *3 (S.D. Ohio Feb. 18, 2025) (approving

one-third fee in ERISA class case); *Berry v. FirstGroup Am., Inc.*, 2024 WL 5158313, at *4 (S.D. Ohio Dec. 18, 2024) (same); *Karpik*, 2021 WL 757123, at *8 (same); *Dudenheoffer v. Fifth Third Bancorp*, 2016 WL 8135394, at *1 (S.D. Ohio July 11, 2016) (same).[6] In addition, the fee is consistent with the one-third percentage awarded by this Court in other types of cases. *See, e.g., Jones v. Converse Elec., Inc.*, 2022 WL 15654293, at *3 (S.D. Ohio Oct. 28, 2022) (Morrison, J.) ("[T]he Court approves the requested attorneys' fees …, which represent one-third of the total settlement amount, as reasonable and [] a typical percentage when attorneys seek a percentage of the fund."); *Adams v. Frontier R.R. Servs., LLC*, 2020 WL 9936704, at *2 (S.D. Ohio June 15, 2020) (Morrison, J.); *Herbert v. Chesapeake Operating, Inc.*, 2019 WL 13198114, at *5 (S.D. Ohio Nov. 7, 2019) (Morrison, J.).

A lodestar cross check further confirms the reasonableness of the terms regarding attorneys' fees, as the cap on fees is actually *less* than Class Counsel's lodestar. Richter Decl. ¶ 21; *see Berry*, 2024 WL 5158313, at *4; *Griffin*, 2013 WL 6511860, at *8; *Foster v. Residential Programs, Inc.*, 2021 WL 664055, at *4 (S.D. Ohio Feb. 18, 2021) (Morrison, J.); *Lloyd v. Argent Tr. Co*., No. 1:22-cv-4129, Dkt. 407 at 14:21-15:3 (S.D.N.Y. Aug. 14, 2026) (approving Cohen Milstein's fee request based on "a lodestar figure of something more than $7 million based on something less than 9,000 hours of work" where firm was "requesting an award that is less than that"). In other cases, courts routinely approve multipliers to account for the risk of contingent fee representation. *See Hawkins*, 2025 WL 523909, at *3 (multiplier of 2.46); *Karpik*, 2021 WL 757123, at *8 (multiplier of 3.3).[7]

---

[6] *See also Krueger*, 2015 WL 4246879 at *2 ("[I]n comparing the requested fee with fee awards in similar cases, the relevant comparators are ERISA class actions asserting breaches of fiduciary duties in the selection and retention of plan investment options and the reasonableness of defined contribution plan fees. In such cases, courts have consistently awarded one-third … fees.").

[7] The billing rates used to calculate the lodestar are also reasonable given the skill and experience of counsel and prevailing billing rates in complex ERISA cases such as this. *See Hawkins*, 2025

Finally, allowing Class Counsel to recover their expenses is "customary" in class cases. *See Hawkins*, 2025 WL 523909, at *5. "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses." *Karpik*, 2021 WL 757123, at *9 (citation omitted). In addition, recovery of settlement administration costs, including costs of the settlement administrator, escrow agent, and Independent Fiduciary, is also appropriate. *Id.*[8]

In any event, the Settlement is not contingent on an award of Attorneys' Fees or Expenses in any amount, and appropriately leaves this to the discretion of the Court. Class Counsel will provide further support for their Attorneys' Fees and requested Expenses at the time they submit their application for the same. The Court can then make a final determination regarding this matter at the final approval stage. *See Walburn*, 2020 WL 2744101, at *3 ("The Court will address attorney's fees, costs, and service awards at the final approval hearing.").

**4. No Side Agreements**

The Settlement expressly provides that "[t]his Settlement Agreement and all of the exhibits appended hereto constitute the entire agreement of the Parties with respect to their subject matter" and "no representations or inducements have been made by any Party hereto concerning the Settlement Agreement or its exhibits other than those contained and memorialized in such documents." Settlement § 11.5. Accordingly, there are no separate agreements bearing on the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

---

WL 523909, at *4 ("Class Counsel's rates range from junior support staff rates of $250 per hour to partner rates of $885 to $900 per hour. In the context of a nationwide market for ERISA counsel, these rates are reasonable."); *Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) (observing that ERISA class actions are complicated and approving rates from $635 to $1,370 for attorneys and $425 for paralegals).

[8] Plaintiffs additionally note that "courts routinely approve [service] awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* at *10 (quoting *Dilworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010)).

### D. Class Members Are Treated Equitably under the Settlement

The final factor under Rule 23(e) also favors approval of the Settlement. Under the plan of allocation, "[t]he monetary relief provided by the Settlement … will be effectively distributed pursuant to a common formula that treats all class members equitably." *Berry*, 2024 WL 5158313, at *3. Although Former Participants will be required to submit a claim form to re-establish their Plan account for purposes of receiving payment, such former participant claim forms are a common feature of ERISA 401(k) settlements and consistently approved. *See Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *6 (E.D. Pa. Feb. 28, 2020) ("Class members who are Former Participants in the Plan will receive allocations following submission of claim forms. This factor supports approval of the Settlement."); *see also, e.g., In re LinkedIn ERISA Litig.*, 2023 WL 8631678, at *3 (N.D. Cal. Dec. 13, 2023); *Pledger v. Reliance Tr. Co.*, 2020 WL 9849019, at *6 (N.D. Ga. Oct. 14, 2020); *Sims*, 2019 WL 1995314, at *3; *Moreno v. Deutsche Bank Am. Holding Corp.*, 2018 WL 11713952, at *2 (S.D.N.Y. Oct. 9, 2018); *Clark v. Oasis Outsourcing, Inc.*, 2018 WL 11713951, at *3 (S.D. Fla. Aug. 21, 2018) (all approving 401(k) settlements with former participant claim forms). The one-page claim form here is succinct and easy to complete, *see* Settlement Ex. B, and fact that the settlement provides for a fixed per capita payment estimated at nearly $100 per class member "overcomes any disincentive from the claim form." *Chavez v. Falcon Transport Co.*, 2025 WL 959219, at *8 (N.D. Ohio Mar. 31, 2025). Notably, any monies that are unclaimed by Former Participants will ***not*** revert to Nationwide, but rather will be used to enhance the crediting rate of the Guaranteed Fund. *See* Settlement §§ 5.3(f), 5.6.

### E. Settlement Is in the Public Interest and Conserves Judicial Resources

The only "traditional" factor (*supra* at 9) not already covered above in connection with the Rule 23(e) criteria is the public interest. This factor also favors approval of the Settlement. "Resolution of disputes through settlement rather than trial is normally in the public interest, as

settlement serves to conserve scarce judicial resources." *Blasi*, 2019 WL 6050963, at *7 (citation omitted). Here, the public has an interest in ending this "'long and protracted litigation.'" *Id.*

## III. THE NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

In addition to reviewing the substance of the Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Administrator will provide notice of the Settlement to the Class via U.S. Mail. Settlement Agreement § 3.2(b). This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Moreover, the Notice will be supplemented through the Settlement Website and telephone support line. *See supra* at 6-7. This is more than sufficient to meet the standard under Rule 23, and is consistent with other ERISA settlements that have been approved. *See, e.g., Karpik*, 2021 WL 757123, at *3; *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 2014 WL 12808031, at *4.

The content of the Notice is also reasonable. The Notice includes, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Class; (3) a description of the material terms of the Settlement; (4) a description of the claims being released; (5) instructions for submitting a Former Participant Claim Form; (6) instructions as to how to object to the Settlement and a date by which Class Members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount that Class Counsel will seek in Attorneys' Fees and Expenses (together with any class representative service awards) from the Gross Settlement Amount. Settlement Ex. A. This Notice "'fairly apprise[s] the prospective members of the class of the terms of the proposed

settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Graybill v. Petta Enterprises, LLC*, 2018 WL 4573289, at *3 (S.D. Ohio Sept. 25, 2018) (quoting *Int'l Union*, 497 F.3d at 630 (citation omitted)).

## IV. The Settlement Class Is Consistent with the Class Previously Certified by the Court

Finally, as noted above, the class definition in the Settlement is consistent with the class previously certified by the Court. *Compare* Settlement § 1.10 with Dkt. 172 at PageID 6999 (order certifying class for litigation purposes). This further supports approval of the Settlement. For the reasons previously stated in the Court's class certification order, the proposed Class defined in the Settlement should be approved together with the rest of the Settlement terms.

## CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that the Court grant their Motion Preliminary Approval and enter the proposed Preliminary Approval Order submitted herewith.

Dated: November 4, 2026

Respectfully submitted,

s/ Kai Richter
Kai H. Richter (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL, LLP**
400 S. Fourth Street #401-27
Minneapolis, MN 55415
Tel: (612) 807-1575
Fax: (202) 408-4699
krichter@cohenmilstein.com

Michelle C. Yau (admitted *Pro Hac Vice*)
Daniel R. Sutter (admitted *Pro Hac Vice*)
Daniel S. Sommers (admitted *Pro Hac Vice*)
Caroline E. Bressman (admitted *Pro Hac Vice*)
**COHEN MILSTEIN SELLERS & TOLL LLP**
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com

dsommers@cohenmilstein.com
cbressman@cohenmilstein.com

Eric H. Zagrans (OH #0013108)
*Trial Attorney*
**ZAGRANS LAW FIRM LLC**
1640 Roundwyck Lane
Columbus, Ohio 43064
Telephone: (440) 452-7100
Email: eric@zagrans.com

*Counsel for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2026, I electronically filed the foregoing with attachments with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for Defendants.

*s/ Kai H. Richter*
Kai H. Richter