**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Ryan Sweeney and Bryan Marshall, as individuals, and on behalf of all others similarly situated, and on behalf of the Nationwide Savings Plan,<br><br>Plaintiffs,<br><br>vs.<br><br>Nationwide Mutual Insurance Company; Nationwide Life Insurance Company; and the Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach,<br><br>Defendants. | Case No. 2:20-CV-01569-JLG-CMV |

**DECLARATION OF KAI RICHTER IN SUPPORT OF PLAINTIFFS' MOTION FOR PELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Kai Richter, hereby declare as follows:

1. I am Of Counsel at Cohen Milstein Sellers & Toll LLP ("Cohen Milstein") and a member of the firm's Employee Benefits/ERISA Practice Group. Cohen Milstein is counsel for Plaintiffs and the certified class in this action, and I am currently serving as Cohen Milstein's lead counsel in the action.

2. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.[1]

[1] Unless otherwise defined, all capitalized terms in this declaration have the same meaning as set forth in the Settlement Agreement.

## Settlement Terms

3. Attached hereto as Exhibit 1 is a true and correct copy of the proposed Class Action Settlement Agreement ("Settlement"). This Settlement resolves Plaintiffs' class action claims against Defendants relating to the Guaranteed Fund in the Nationwide Savings Plan.

4. The Settlement applies to the following Class:

> All participants and beneficiaries in the Nationwide Savings Plan who were invested in the Guaranteed Fund at any time from March 26, 2014 through the date of final judgment in this action, excluding the individual Defendants.

This Class is identical to the class that the Court certified for litigation purposes in its Order granting class certification (Dkt.172). According to Defendants, there are approximately 83,000 to 85,000 individuals who fall within the Class definition.

5. Under the terms of the proposed Settlement, the Nationwide Defendants will pay a Gross Settlement Amount of $12,900,000 into a Qualified Settlement Fund for the benefit of the Class. *See* Settlement §§ 1.30, 4.2. This represents between 17% and 20% of the alleged losses that Plaintiffs claimed were due to excess fees associated with the Guaranteed Fund. Prior to settlement, Plaintiffs' investment expert (Richard Kopcke) calculated alleged excess fee losses of $63.7 million with a present value of $74.0 million through Q2 2023.

6. After accounting for any Attorneys' Fees, Attorneys' Expenses, Administrative Expenses, and Class Representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members in accordance with the Plan of Allocation in Article V of the Settlement.

7. In summary, the Plan of Allocation provides for a per capita distribution of the Net Settlement Amount (i.e., the Entitlement Amount of each Class Member shall be calculated by dividing the Net Settlement Amount by the number of Class Members). *See* Settlement § 5.1. Current Participants will automatically receive their settlement payment through a deposit to their

individual account in the Plan. *Id.* § 5.2 Former participants must submit a claim form re-opening their account in the Plan to receive payment. *Id.* § 5.3. To the extent that any settlement payments are unclaimed by Former Participants, the unclaimed funds will be credited to the Guaranteed Fund's Additional Interest Reserve and be used to enhance the Guaranteed Fund's crediting rate for the benefit of Plan participants. *Id.* In no event will any monies in the Qualified Settlement Fund revert to Nationwide Mutual or any other Defendant for its own business purposes. *Id.* § 5.6.

8. In exchange for the benefits provided by the Settlement, Plaintiffs and the Class will release the Released Defendant Parties (as defined in Settlement § 1.47) from claims that were asserted in the Action or could have been asserted in the Action that that arise out of, relate to, are based on, or have any connection with the Guaranteed Fund or Annuity Contract. *See* Settlement § 1.39(a). The release also encompasses claims that would be barred by res judicata, claims relating to the calculation of Settlement payments, and claims that relate to the Independent Fiduciary's approval of the Settlement and release on behalf of the Plan.[2] *Id.* § 1.39(b)-(d). This is only a summary. The full release terms are set forth in the Settlement Agreement.

9. Given the risks of litigation (which are outlined in the accompanying Memorandum of Law), the attendant costs, and potential delays associated with prosecuting the case through trial and any appeals, I believe that the Settlement is fair, reasonable, and adequate, and in the best interest of the Class.

**Case Investigation and Proceedings**

10. Cohen Milstein has vigorously prosecuted this action on behalf of Plaintiffs and the Class.

[2] Section 2.2 of the Settlement provides that an Independent Fiduciary shall review the Settlement to determine whether to approve the Settlement and the release of claims on behalf of the Plan, pursuant to applicable Department of Labor Regulations.

11. Prior to filing the action, Cohen Milstein conducted a thorough investigation of the relevant facts and claims, and subsequently defeated a motion to dismiss and early summary judgment motion. *See* Dkts. 67, 158.

12. Cohen Milstein served multiple rounds of discovery requests on Defendants, including five sets of Requests for Production (spanning 104 document requests in total), five sets of Interrogatories, and one set of Requests for Admissions. In addition, Plaintiffs also served third-party Callan LLC ("Callan"), the Plan's investment consultant, with a document subpoena.

13. In response to Plaintiffs' discovery requests, Defendants produced over a quarter million pages of documents and dozens of spreadsheets in electronic format. In addition, Callan produced over 9,000 pages of documents.

14. Defendants also served each of the named Plaintiffs with Requests for Production and Interrogatories. In response to these Requests, Plaintiffs produced hundreds of pages of documents themselves.

15. Deposition discovery was also extensive. In total, we took fact depositions of eight defense witnesses, deposed an additional witness from Callan, and defended depositions of both named Plaintiffs. In addition, we took or defended depositions of five expert witnesses.

16. We engaged two experienced experts (Dr. Richard Kopcke as Plaintiffs' financial expert and Marcia Wagner as Plaintiffs' fiduciary process expert), submitted reports from each of those experts, and defended their depositions. In addition, we deposed all three of Defendants' experts (Wesley Whiteman, Richard Cahill, and Kelly Driscoll), after receiving their reports.[3]

[3] All five experts served both opening reports and rebuttal reports, with the exception of Ms. Wagner who only served a rebuttal report (as she was engaged as a rebuttal expert to Ms. Driscoll). In addition, both Dr. Kopcke and Mr. Whiteman issued supplemental reports after fact discovery was briefly reopened by the Court.

17. Throughout the course of the litigation, we repeatedly met and conferred with defense counsel regarding discovery, and raised certain disputes with Magistrate Judge Vascura when the parties reached impasse. In total, Magistrate Judge Vascura issued over a half dozen discovery orders, *see* Dkts. 96, 135, 103, 144, 145, 155, 177, as well an order on a motion for reconsideration of a discovery order, *see* Dkt. 200.

18. While discovery was still proceeding, we filed a motion for class certification, which was granted by the Court on March 28, 2024. *See* Dkt.172.

19. Thereafter, we filed a motion for partial summary judgment and *Daubert* motion, and responded to Defendants' motion for summary judgment and *Daubert* motion.

20. Following the Court's ruling on those motions and order scheduling a trial date, we engaged in extensive trial preparation and filed a lengthy joint pretrial statement (as well as deposition designations and objections) with the Court. *See* Dkts. 281, 282. We also responded to a motion to decertify the class that was filed by Defendants shortly before trial was scheduled to begin (which remained pending at the time of settlement).

21. In connection with this and other work on the case, Cohen Milstein attorneys and staff have expended over 8,000 hours on the action to date, with a lodestar value exceeding $7 million at the firm's customary billing rates.[4] In addition, Mr. Zagrans has spent additional time on this matter as local trial counsel.

22. Under the Settlement, Class Counsel have agreed to limit any request for attorneys' fees to no more than $4 million, which is significantly less than the lodestar value of their time. *See* Settlement § 6.1. The Settlement is not contingent on the Court's approval of any requested

---

[4] These figures are preliminary. Class Counsel will provide final lodestar figures before submitting their application for Attorneys' Fees and related expenses.

attorneys' fees (or expenses or class representative service awards), which are left to the Court in its discretion.

## Mediation and Settlement Negotiations

23. During the course of the proceedings, the Parties participated in three mediation sessions with a private mediator, Frank Ray, in February-March 2024, February 2025, and February 2026.[5] Mr. Ray is an experienced and well-respected mediator in Ohio. A copy of his curriculum vitae is attached as Exhibit 2.

24. Following the most recent session, the Parties continued their settlement discussions while keeping Mr. Ray in the loop as to their communications. After extensive back and forth (on which Mr. Ray was copied), the Parties reached a settlement-in-principle on July 9, 2026 and promptly informed the Court of the same.

25. Thereafter, the Parties negotiated the comprehensive Settlement Agreement that is the subject of the present motion for preliminary approval. At all times, the parties' negotiations were at arm's length.

26. For the reasons explained above and in Plaintiffs' motion papers, I believe the Settlement is fair and in the best interests of the Class.

## Personal Background and Qualifications

27. I am a member in good standing of the State Bar of Minnesota, and I am admitted to practice before this Court *pro hac vice*. I also have been admitted in numerous federal courts across the country, including the following:

| |
|---|
| United States Supreme Court |
| 1st Circuit Court of Appeals |
| 2nd Circuit Court of Appeals |

[5] The first mediation took place over two dates in February and March 2024 due to an unexpected power outage on the first date.

| |
|---|
| 3rd Circuit Court of Appeals |
| 4th Circuit Court of Appeals |
| 6th Circuit Court of Appeals |
| 8th Circuit Court of Appeals |
| 9th Circuit Court of Appeals |
| 10th Circuit Court of Appeals |
| District of Colorado |
| District of Minnesota |
| Eastern District of Michigan |
| Western District of New York |
| Eastern District of Wisconsin |

28. I have been actively engaged in the practice of law since 1999, and have substantial class action experience and other complex litigation experience.

29. For the past sixteen years, at both Cohen Milstein and my former law firm, my practice has focused exclusively on class action cases. I have been appointed class counsel for litigation or settlement purposes in at least forty class action cases in total. In connection with those cases, I have personally negotiated class action settlements providing for more than $600 million in available relief to class members nationwide.

30. The principal types of class action cases that I have handled are consumer class actions and ERISA class actions. In the course of my former consumer practice, I spearheaded class action litigation against several major financial institutions, including JPMorgan Chase, Bank of America, U.S. Bank, Wells Fargo, Citibank, GMAC Mortgage, RBS Citizens, and MidFirst Bank. For example, I successfully argued contested class certification motions in *Hofstetter v. Chase Home Finance, LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) and *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014), successfully argued before the First Circuit Court of Appeals in *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012), and successfully argued and/or briefed dispositive motions in a number of other consumer class cases, including *Jackson v. Wells Fargo Bank, N.A.*, 2013 WL 5945732 (W.D. Pa. Nov. 6, 2013);

*Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093 (N.D. Cal. 2013); *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255 (N.D.N.Y. 2013); *Berger v. Bank of America, N.A.*, 931 F. Supp. 2d 292 (D. Mass. 2013); *Morris v. Wells Fargo Bank, N.A.*, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012); *Ulbrich v. GMAC Mortgage, LLC*, 2012 WL 3516499 (S.D. Fla. Aug. 15, 2012); *Walls v. JPMorgan Chase Bank, N.A.*, 2012 WL 3096660 (W.D. Ky. July 30, 2012); *Skansgaard v. Bank of America, N.A.*, 896 F. Supp. 2d 944 (W.D. Wash. 2011); and *Wulf v. Bank of America, N.A.*, 798 F. Supp. 2d 586 (E.D. Pa. 2011).

31. More recently, I have focused on ERISA class action litigation. I was a co-founder of the ERISA litigation practice at my former law firm, and have continued to focus on ERISA class cases since joining Cohen Milstein in March 2021. I have been appointed class counsel for litigation and/or settlement purposes in approximately thirty breach of fiduciary duty cases involving retirement plans, including this case and *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153 (S.D. Ohio Feb. 18, 2021) in this District. Other ERISA cases in which I have served as appointed class counsel include:

- *Andrus v. NY Life Ins. Co.*, No. 1:16-cv-05698 (S.D.N.Y.);
- *Main v. Am. Airlines, Inc.*, No. 3:16-cv-01033 (N.D. Tex.);
- *Sims v. BB&T Corp.*, No. 1:15-cv-00732 (M.D.N.C.);
- *Stevens v. SEI Invs. Co.*, No. 2:18-cv-04205 (E.D. Pa.);
- *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614 (C.D. Cal.);
- *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 5:15-cv-03698 (N.D. Cal.);
- *In re M&T Bank Corp. ERISA Litig.*, No. 1:16-cv-00375 (W.D.N.Y.);
- *Wildman v. Am. Century Servs., LLC*, No. 4:16-cv-00737 (W.D. Mo.);
- *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 1:15-cv-09936 (S.D.N.Y.);
- *Clark v. Oasis Outsourcing Holdings Inc.*, No. 9:18-cv-81101 (S.D. Fla.);
- *Velazquez v. Mass. Fin. Servs. Co.*, No. 1;17-cv-11249 (D. Mass.);

- *Beach v. JPMorgan Chase Bank, N.A.*, No. 1:17-cv-00563 (S.D.N.Y);
- *Intravaia v. Nat'l Rural Elec. Coop. Assoc.*, No. 1:19-cv-00973 (E.D. Va.);
- *Larson v. Allina Heath Sys.*, No. 17-cv-03835 (D. Minn.);
- *Brotherston v. Putnam Invs., LLC*, No. 1:15-cv-13825 (D. Mass.);
- *Mass v. The Regents of the Univ. of Cal.*, No. RG17-879223 (Alameda County Super. Ct.);
- *Moitoso v. FMR LLC*, No. 1:18-cv-12122 (D. Mass.);
- *Reetz v. Lowe's Cos., Inc.*, No. 5:18-cv-00075 (W.D.N.C.);
- *Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633 (D. Mass);
- *Bhatia v. McKinsey & Co., Inc.*, No. 1:19-cv-01466 (S.D.N.Y.);
- *Kirk v. Ret. Comm. of CHS/Cmty. Health Sys., Inc.*, No. 3:19-cv-00689 (M.D. Tenn.);
- *Baker v. John Hancock Life Ins. Co. (U.S.A.)*, No. 1:20-cv-10397 (D. Mass.);
- *Kinder v. Koch Indus., Inc.*, No. 1:20-cv-02973 (N.D. Ga.);
- *Hill v. Mercy Health Corp.*, No. 3:20-cv-50286 (N.D. Ill.);
- *Urlaub v. Citgo Petroleum Corp*., No.1:21-cv-04133 (N.D.Ill.);
- *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, No.1:21-cv-00304 (D. Col.);
- *Lloyd v. Argent Tr. Co.*, No.1:22-cv-04219 (S.D.N.Y.); and
- *Krohnengold v. NY Life Ins. Co.*, No. 1:21-cv-01778 (S.D.N.Y.).

32. I have tried three ERISA class action cases: the *Putnam* case in 2017, the *American Century* case in 2018, and the *Lowe's* case in 2021. I also have negotiated numerous settlements that have received final court approval, including in *New York Life* (both the *Andrus* and *Krohnengold* cases), *American Airlines*, *SEI*, *Allianz*, *Fujitsu*, *M&T*, *Deutsche Bank*, *Oasis Outsourcing*, *Massachusetts Financial Services*, *National Rural Electric Cooperative Association*

("NRECA"), *Putnam*, *Huntington*, *FMR* ("Fidelity"), *Demoulas*, *McKinsey*, *CHS, John Hancock, Koch*, *Mercy Health*.[6]

33. In several of the above cases, I also successfully briefed and/or argued contested class certification motions, including *BB&T*, *Allianz*, *American Century*, *Deutsche Bank*, *JPMorgan Chase*, *Putnam*, *University of California*, *Citgo*, *Envision*, and *Argent* (as well as this case), and reached stipulations concerning class certification in cases with Massachusetts Financial Services, Fidelity, Lowe's, and John Hancock.

34. I have spoken by invitation at several national conferences and seminars on ERISA litigation, including (1) two Practising Law Institute seminars on ERISA Investment Basics (March 2025 and March 2023); (2) an ABA seminar on the "Next Frontiers of Fee Litigation" (May 2024); (3) four annual employee benefits programs sponsored by the American Law Institute (October 2019 – October 2022); (4) a webinar on "Fee Litigation" sponsored by the American Bar Association (November 12, 2019); (5) a Professional Liability Directors & Officers conference on a panel regarding "Plan Fee Litigation" (February 6, 2019); (6) an American Bankers Association Insurance Risk Management Conference on a panel concerning excessive fee ERISA class actions (February 5, 2019); (7) an American Law Institute webcast on Excessive Fee Litigation (November 28, 2018); (8) the American Law Institute's tax-exempt and government plans education series (September 24, 2018), where I co-presented on "The Current State of Fee Litigation and Its Implications"; (9) the American Conference Institute's National Forum on ERISA Litigation (on both March 1, 2017 and November 2, 2017), where I was a member of the "Fiduciary Investment Litigation Update" panel; and (10) the Retirement Advisor Council's

[6] In addition to the foregoing, I also helped litigate *BB&T*, *JPMorgan Chase*, *Allina*, *Citgo*, and *Argent* to court-approved settlements, but was not directly involved in the negotiation of those settlements.

annual meeting (May 22, 2018), where I was a member of a panel on "The Moving Litigation Frontier."

35. Prior to my work at Cohen Milstein and my former firm, I served as the Manager of the Complex Litigation Division of the Office of the Minnesota Attorney General. During my tenure there (from February 2008 to March 2010), I supervised and handled a large number of complex matters. For example, in June and September of 2009, I co-chaired a three-week trial involving claims for fraudulent sales of annuities and legal plans to over 1,200 Minnesota senior citizens, which ultimately resulted in a favorable judgment from the trial court. In addition, I handled a significant consumer enforcement action against Sprint Nextel related to wrongfully imposed contracts and termination fees, which resulted in a comprehensive settlement in October of 2009.

36. I also had significant prior class action experience, including two multi-week class action trials: a statewide wage and hour class action against Wal-Mart Stores in Minnesota (tried in 2007) and a landmark class action against the University of Michigan Law School. *See Grutter v. Bollinger*, 539 U.S. 306 (2003).

37. I have been recognized in *The Best Lawyers in America* for "Litigation – ERISA" since 2022, and also have received a Band One or Band Two ranking from Chambers USA for "ERISA Litigation: Mainly Plaintiffs" since 2023.

38. I received my law degree from University of Minnesota Law School in 1999, and my B.A. from Dartmouth College in 1995.

## Cohen Milstein Firm and Practice Group Background

39. I am honored to be a member of Cohen Milstein's ERISA litigation team. Cohen Milstein is widely-recognized as a leader in class action litigation, and has a highly-regarded ERISA class action practice.

40. Cohen Milstein was named one of the ten "Most Feared Plaintiffs Firms" by *Law360*, and *Forbes* has called the firm a "class action powerhouse." In 2025, the *National Law Journal* named Cohen Milstein "Plaintiff Law Firm of the Year."

41. Cohen Milstein's Employee Benefits/ERISA Practice Group has specifically been recognized for the quality of its work. For 2025, our Practice Group was named by *Law360* as "Practice Group of the Year – Benefits" and has earned that distinction four of the past six years. Also in 2026, *Chambers USA* gave Cohen Milstein its highest ranking for ERISA litigation on behalf of plaintiffs nationwide (Band 1). In conferring this honor, *Chambers USA* noted that "Cohen Milstein Sellers & Toll is highly regarded for its representation of plaintiffs in ERISA class actions. The firm is regularly sought out to represent plan participants and beneficiaries in a range of ERISA claims including breach of fiduciary duty."

42. Cohen Milstein's Employee Benefits/ERISA Practice Group has successfully litigated and resolved numerous ERISA cases on behalf of its clients, including in the area of proprietary funds affiliated with 401(k) plan sponsors. In the past five years, the practice group received final approval of five class action settlements in cases involving proprietary funds: *Andrew-Berry v. Weiss*, No. 3:23-cv-00978, ECF 81 (D. Conn. Sept. 19, 2025) ($7.9 million); *Krohnengold v. New York Life Ins. Co.*, No.1:21-cv-01778, ECF 202 (S.D.N.Y. July 18, 2024) ($19 million); *Becker v. Wells Fargo & Co.*, No. 0:20-cv-02016, ECF 283 (D. Minn. Aug. 31, 2022) ($32.5 million); *Feinberg v. T. Rowe Price Group, Inc., et al.*, No. 1:17-cv-00427, ECF 258 (D.

Md. July 6, 2022) ($7 million); and *Baird v. BlackRock Institutional Trust Co*., No. 4:17-cv-01892, ECF 490 (N.D. Cal. Nov. 3, 2021) ($9.65 million). Moreover, the Group previously has achieved extraordinary results in other ERISA cases as well, including *Scott v. AT&T, Inc.*, 3:20-cv-07094 (N.D. Cal.) ($184 million settlement – approval pending); *In re: Merrill Lynch, & Co., Inc. Securities, Derivative and ERISA Litig.*, No. 07-cv-10268 (S.D.N.Y.) ($75 million settlement) and *In re Beacon Assoc. Litig.*, No. 09-cv-00777 (S.D.N.Y.) ($219 million).

43. In the past year, we achieved a favorable appellate ruling in *Duke v. Luxottica U.S. Holdings Corp.*, 167 F.4th 16 (2d Cir. 2026) and favorable rulings on several dispositive motions at the trial court level as well (including in this case, where Nationwide's motion for summary judgment was denied in substantial part).

44. Each of my current and former colleagues who have served as counsel of record in this case are seasoned class action litigators with experience handling high-profile ERISA cases such as this.

45. The Chair of the Practice Group, Michelle Yau, has over 20 years of ERISA litigation experience since graduating from Harvard Law School in 2003 (including as an Honors Program attorney at the Department of Labor before joining Cohen Milstein), and also has financial expertise as a former financial analyst in the Financial Institutions Group of the Investment Banking Division at Goldman Sachs. Like myself, Ms. Yau is a frequent speaker at ERISA seminars across the country. She has received numerous industry accolades over the years, including The National Law Journal's Elite Women of the Plaintiffs Bar Award (2025) and Law360's MVP – Benefits ranking (2021, 2024). Since 2022, Chambers USA has ranked her in "Band 1" for ERISA Litigation.

46. Daniel Sutter is a partner in the firm with extensive experience litigating ERISA class actions. Mr. Sutter was named by *Chambers USA* as "Up and Coming" in the area of plaintiff-side ERISA Litigation in 2024 and 2025, and an "Associate to Watch" in prior years. Mr. Sutter graduated from George Washington Law School in 2016 prior to joining the Employee Benefits/ERISA Practice Group. Before that, he was a Fellow in the Practice Group, and also worked for Cohen Milstein as both a law clerk and analyst.

47. Daniel Sommers is a parter in the firm's Securities Litigation & Investor Protection practice. During his nearly four-decade career at Cohen Milstein, he was the co-chair of the Securities Litigation & Investor Protection practice and served on the firm's Executive Committee for twelve years. A graduate of The George Washington University Law School in 1986, Mr. Sommers has been recognized by Lawdragon as a Leading Plaintiff Financial Lawyer every year since 2021, and a Super Lawyer every year since 2011.

48. Caroline Bressman has exclusively practiced plaintiff-side employment and employee benefits litigation since she graduated *cum laude* from the University of Minnesota Law School in 2018. Ms. Bressman has practiced in the Cohen Milstein Employee Benefits group since 2023, and, before then, she prosecuted class and collective actions, as well as individual plaintiff actions, under ERISA, the FLSA, Title VII, and state wage and hour and anti-discrimination laws at another nationally-recognized plaintiff-side firm. Ms. Bressman has been named a Rising Star by *Super Lawyers* since 2023.

49. Eleanor Frisch was a lead author of plaintiffs' appeal brief in *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17, 31 (1st Cir. 2018), a successful appeal that resulted in a partial vacatur of the trial court's adverse judgment on plaintiffs' ERISA claims (and ultimately, to an eight-figure settlement post-appeal). Ms. Frisch also has significant additional class action

experience since graduating *magna cum laude* from the University of Minnesota Law School in 2014 and clerking for the Eighth Circuit. In May 2025, Ms. Frisch withdrew from the matter to take an Assistant Professor position at Mitchell Hamline School of Law.

50. Further information regarding Cohen Milstein's Employee Benefits/ERISA Practice Group and the attorneys in the Group is available at https://www.cohenmilstein.com/practice-area/employee-benefits-erisa.

51. In addition to being able to draw on Cohen Milstein's deep experience in class action and ERISA matters, we were fortunate to have support from an experienced trial counsel in this District, Eric Zagrans. A summary of his professional qualifications is available on his website at https://www.zagrans.com/attorney/zagrans-eric-h/.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: November 4, 2026

*/s/ Kai H. Richter*
Kai Richter