# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Ryan Sweeney and Bryan Marshall, as individuals, and on behalf of all others similarly situated, and on behalf of the Nationwide Savings Plan,

Plaintiffs,

vs.

Nationwide Mutual Insurance Company; Nationwide Life Insurance Company; and the Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach,

Defendants.

Case No. 2:20-cv-01569-SDM-CMV

Judge Sarah D. Morrison

Magistrate Judge Chelsey M. Vascura

# CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Settlement Agreement") is made and entered into by and among: (i) Plaintiffs Ryan Sweeney and Bryan Marshall, on behalf of themselves, the Nationwide Savings Plan, and the Class; and (ii) Defendants Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, the Investment Committee of the Nationwide Savings Plan (also known as the Benefits Investment Committee), David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach.[1] The Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle Plaintiffs' Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Settlement Agreement.

## ARTICLE I
## DEFINITIONS

1.1 "Action" means the civil action captioned *Sweeney, et al. v. Nationwide Mutual Insurance Company, et al.*, Civil Action No. 2:20-cv-01569, pending in the United States District Court for the Southern District of Ohio.

1.2 "Additional Interest Reserve" means a reserve of additional interest maintained to enhance the crediting rate provided through the Guaranteed Fund.

[1] Except as otherwise specified, all capitalized terms shall have the meanings set forth in Article I of this Settlement Agreement.

1.3 "Administrative Expenses" means all expenses incurred in the administration of this Settlement Agreement, including but not limited to (a) all fees, expenses, and costs associated with the production and dissemination of the Notice to Class Members; (b) all expenses incurred by the Settlement Administrator in administering and effectuating this Settlement and related tax expenses (including taxes and tax expenses described in Section 4.5); (c) all fees and expenses associated with the Settlement Website and telephone support line described in Article III; (d) all other fees and expenses charged by the Settlement Administrator; (e) all fees and expenses charged by the Independent Fiduciary and Escrow Agent; and (f) all fees and expenses charged by the Recordkeeper in connection with administering this Settlement (up to a maximum of $100,000 for such Recordkeeper fees and expenses). All Administrative Expenses shall be paid from the Gross Settlement Amount or interest earned thereon.

1.4 "Alternate Payee" means a person, other than a Current Participant, Former Participant, or Beneficiary, who is entitled to a benefit under the Plan as a result of a Qualified Domestic Relations Order.

1.5 "Annuity Contract" means Annuity Contract GA-P L941 issued May 1, 1975 and restated September 1, 2002.

1.6 "Attorneys' Fees" means the amount awarded by the Court as compensation for the services provided by Class Counsel in connection with the Action, including the investigation leading to it, which shall be recovered from the Gross Settlement Amount.

1.7 "Attorneys' Expenses" means the amount awarded by the Court as compensation for the expenses incurred by Class Counsel in connection with the Action, including the investigation leading to it, which shall be recovered from the Gross Settlement Amount.

1.8 "Beneficiary" means a person who currently is entitled to receive a benefit under the Plan that is derivative of the interest of a Current Participant or Former Participant, other than an Alternate Payee. A Beneficiary includes, but is not limited to, a spouse, surviving spouse, domestic partner, or child who currently is entitled to a benefit.

1.9 "CAFA Notice" means the notice required to be provided pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA").

1.10 "Class" means the class certified by the Court in its Order dated March 28, 2024 (ECF No. 172), defined as follows:

> All participants and beneficiaries in the Nationwide Savings Plan who were invested in the Guaranteed Fund at any time from March 26, 2014 through the date of final judgment in this action, excluding the individual Defendants.

1.11 "Class Counsel" means Cohen Milstein Sellers & Toll LLP and Zagrans

Law Firm LLC.

1.12 "Class Member" means a member of the Class.

1.13 "Class Period" means March 26, 2014 through the date of the Court's Final Approval Order in the Action.

1.14 "Class Representatives" or "Plaintiffs" means the named Plaintiffs in this Action: Ryan Sweeney and Bryan Marshall.

1.15 "Committee" means the Investment Committee of the Nationwide Savings Plan (also known as the Benefits Investment Committee) and each of its individual members.

1.16 "Complaint" means collectively the Class Action Complaint docketed in the Action at ECF No. 1 on March 26, 2020 and the Amended Class Action Complaint docketed in the Action at ECF No. 34 on October 22, 2020.

1.17 "Confidentiality Order" means the Stipulation and Agreed Protective Order in *Edwards v. Nationwide Mutual Insurance Company*, No. 2:20-cv-1525 (S.D. Ohio) (filed at ECF No. 27 in *Edwards*), which the Parties have treated as also applying to this Action.

1.18 "Court" means the United States District Court for the Southern District of Ohio.

1.19 "Current Participant" means a Class Member who has an active account in the Plan.

1.20 "Defendants" means Nationwide Mutual, Nationwide Life, the Committee, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach.

1.21 "Defendants' Counsel" means Jones Day and Carpenter Lipps LLP.

1.22 "Effective Date" means one business day following the later of (a) the date of the Final Approval Order, or in the event of any objections to the Settlement, the date upon which the time expires for filing or noticing any appeal of the Final Approval Order; or (b) if there are any appeals, the date of dismissal or completion of any appeal, in a manner that finally affirms and/or leaves in place the Final Approval Order without any material modifications, following all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or rehearing or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand).

1.23 "Entitlement Amount" means that portion of the Net Settlement Amount payable to an individual Class Member, as determined according to the procedures described in Article V herein.

1.24 "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

1.25 "Escrow Account" means a segregated account at a financial institution established by Class Counsel for the deposit of the Gross Settlement Amount and amounts relating to it, such as income earned on the investment of the Gross Settlement Amount.

1.26 "Escrow Agent" means an independent contractor to be retained by Class Counsel that will serve as the escrow agent for any portion of the Gross Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Settlement Agreement.

1.27 "Fairness Hearing" means the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23 to determine whether the Settlement Agreement should receive final approval by the Court.

1.28 "Final Approval Order" means the order and final judgment of the Court approving the Settlement, in substantially the form submitted in connection with Plaintiffs' motion for final approval of the Settlement.

1.29 "Former Participant" means any Class Member who had an account in the Plan with a balance greater than $0.00 within the Class Period but who does not otherwise fall within the definition of Current Participant and does not have an active account in the Plan.

1.30 "Gross Settlement Amount" means the sum of twelve million and nine hundred thousand U.S. dollars (USD $12,900,000.00), contributed to the Qualified Settlement Fund as described in Article IV herein. The Gross Settlement Amount shall be the full and sole monetary payment made on behalf of Defendants in connection with this Settlement Agreement.

1.31 "Guaranteed Fund" means the Guaranteed Fund investment option in the Plan, supported by the Annuity Contract.

1.32 "Independent Fiduciary" means the person or entity selected by the Administrative Committee of the Nationwide Savings Plan in consultation with Class Counsel to serve as an independent fiduciary with respect to the Settlement Agreement for the purpose of rendering the determination described in Section 2.2 herein.

1.33 "Nationwide Defendants" means Nationwide Mutual and Nationwide Life.

1.34 "Nationwide Life" means Nationwide Life Insurance Company.

1.35 "Nationwide Mutual" means Nationwide Mutual Insurance Company.

1.36 "Net Settlement Amount" means the Gross Settlement Amount, plus any interest or income earned on the Qualified Settlement Fund, less Administrative Expenses, Attorneys' Fees, Attorneys' Expenses, any Service Awards, and any other Court-approved

deductions.

1.37 "Notice" means the form of Court-approved notice of this Settlement that is disseminated to Class Members. The Parties shall propose that the Court approve the form of notice attached as Exhibit A hereto.

1.38 "Parties" means Plaintiffs and Defendants.

1.39 "Plaintiffs' Released Claims" means any and all actual or potential claims, allegations, actions, demands, rights, obligations, benefits, liabilities, damages, attorneys' fees, expenses, fees, costs, and any other liability or cause of action, whether by statute, regulation, or common law, or whether by law or in equity, or federal, state or local law, including both known and Unknown Claims (as defined herein), or whether class, derivative, or individual in nature, or whether fixed or contingent or matured or unmatured, against any of the Released Defendant Parties and Defendants' Counsel:

(a) that were asserted in the Action, or relate to any of the allegations, acts, failures to act, failures to advise, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, or transactions or occurrences set forth in the Action, or that could have been asserted in the Action that arise out of, relate to, are based on, or have any connection with the Guaranteed Fund, Annuity Contract, the conduct of the Committee or any other committee of the Plan or any advisors to such committees that in any way relates to the Guaranteed Fund or Annuity Contract, including but not limited to:

(i) selection, monitoring, oversight, retention of, contributions to, or costs, fees, expenses, compensation, consideration, profits from, or performance of or for the Guaranteed Fund or the Annuity Contract;

(ii) calculation of the crediting rate under the Annuity Contract, or any prior crediting rates, including anything relating to the development or operation of the Additional Interest Reserve account or other interest maintenance reserve account or facility;

(iii) fees, costs, compensation, or expenses charged to, paid by, or reimbursed by the Plan or any Plan participants, directly or indirectly in connection with the Guaranteed Fund;

(iv) the investigation or failure to investigate the crediting rate of the Guaranteed Fund or the margin or spread or any costs, fees, compensation, or charges or loads to arrive at such crediting rate;

(v) disclosures of or failures to disclose to any Plan participant, fiduciary, service provider or other third party any information relating to the Guaranteed Fund or Annuity Contract, including but not limited to disclosure or non-disclosure by any Defendant of any step, element, consideration or process in calculating crediting rates generally or any prior crediting rates under the Annuity Contract;

(vi) engagement, selection or use or non-use of vendors, consultants, and providers for or to the Plan whose services related to the Guaranteed Fund or Annuity Contract;

(vii) any revenue or investment income relating to the Annuity Contract paid, received, retained, amortized, or otherwise generated that is not captured fully or recaptured by the Plan or any Plan participants;

(viii) compliance or non-compliance with the Plan's governing document (including but not limited to § 14.05), investment policy statement, or the Annuity Contract (including but not limited to § 2.2) with respect to the Guaranteed Fund;

(ix) training or lack of training of any fiduciary or committee relating to the Plan in connection with the Guaranteed Fund;

(x) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or obligations, including in connection with training of fiduciaries, or procedures or fiduciary oversight relating to the Guaranteed Fund or the Annuity Contract;

(xi) any self-dealing or other prohibited transactions under ERISA in relation to the Guaranteed Fund or the Annuity Contract or services provided in relation to the Guaranteed Fund or the Annuity Contract;

(xii) application of, compliance with or failure to comply with 29 C.F.R. § 2550.401c-1 (Transition Policy); and/or

(xiii) any assertions with respect to any fiduciaries of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing; or

(b) that would be barred by res judicata based on entry by the Court of the Final Approval Order;

(c) that relate to the direction to calculate, the calculation of, and/or the method or manner of payment to any Class Member of the Net Settlement Amount or Plan of Allocation; or

(d) that relate to the approval by the Independent Fiduciary of the Settlement Agreement.

1.40 "Plan" or "Nationwide Savings Plan" means the defined contribution plan known as the Nationwide Savings Plan or as any other past or present naming convention given to such benefit plan arrangement.

1.41 "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Amount as described in Article V herein.

1.42 "Preliminary Approval Order" means the order of the Court preliminarily approving the Settlement Agreement, in substantially the form submitted in connection with Plaintiffs' motion for preliminary approval of the Settlement.

1.43 "PTE 2003-39" means U.S. Department of Labor Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), as amended.

1.44 "Qualified Domestic Relations Order" means a judgment, decree, or order (including the approval of a property settlement) that is made pursuant to state domestic relations law (including community property law) and that relates to the provision of child support, alimony payments, or marital property rights for the benefit of a spouse, former spouse, child, or other dependent of a Current Participant or Former Participant and which has been determined qualified pursuant to the Plan's procedures.

1.45 "Qualified Settlement Fund" means the interest-bearing settlement fund account to be established and maintained by the Escrow Agent as described in Article IV herein.

1.46 "Recordkeeper" means Fidelity Management Trust Company, or any successor entity engaged to provide or responsible for providing recordkeeping services for the Plan.

1.47 "Released Defendant Parties" (each a "Released Defendant Party") means (a) each Defendant and its insurers; (b) each Defendant's past, present or future parent corporation(s); (c) each Defendant's past, present or future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns; (d) with respect to (a) through (c) above, each of their respective boards of directors and managers, past, present or future members of the boards of directors or any committee of such board of directors, boards of trustees, and past, present or future trustees, officers, partners, agents, managers, members, shareholders (in their capacity as such), insurance policyholders, affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, assigns, employees, subrogees, independent contractors, representatives, attorneys, administrators, insurers, co-insurers, reinsurers, accountants, auditors, actuaries, advisors, consultants, personal representatives, spouses, heirs, executors, associates, members of their immediate families, and

all persons acting under, by, through or in concert with any of them; (e) the Plan and its predecessors and successors; and (f) each of the Plan's past, present or future fiduciaries and administrators (except for the Independent Fiduciary) including but not limited to the Committee and each of the Plan's past, present or future operating or administrative or investment or management committees, and each of their past, present or future members, and each of the Plan's past, present or future sponsors, administrators, recordkeepers, counsel, trustees, service providers, parties in interest to, investment consultants, investment managers, and agents. Released Defendant Parties are intended third-party beneficiaries of this Settlement Agreement and are entitled to enforce its terms.

1.48 "Service Awards" means any service awards that the Court awards to the Plaintiffs for their participation in the Action and services as class representatives.

1.49 "Settlement" or "Settlement Agreement" means the compromise and resolution embodied in this agreement and its exhibits.

1.50 "Settlement Administrator" means an independent contractor to be retained by Class Counsel, with Defendants' approval (not to be unreasonably withheld), for purposes of administering the Settlement.

1.51 "Settlement Website" means the internet website established by the Settlement Administrator as described in Section 3.3 herein.

1.52 "Unknown Claims" means any and all of Plaintiffs' Released Claims which any Plaintiff or any Class Member does not know or suspect to exist in his, her, their or its favor at the time of the release of the Released Defendant Parties, which if known by him, her, they, or it might have affected his, her, their or its decision(s) with respect to the release of the Released Defendant Parties, or might have affected his, her, their or its decision(s) not to object to this Settlement Agreement. With respect to any and all of Plaintiffs' Released Claims, the Parties stipulate and agree that upon the Effective Date, the Parties and Class Members shall be deemed to have waived, and by operation of the entry of the Final Approval Order shall have expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Plaintiffs' Released Claims was bargained for and was a material and necessary element of the Settlement.

## ARTICLE II
## SETTLEMENT APPROVAL

2.1 Preliminary Approval by Court. Within two weeks of the execution of this Settlement Agreement by all Parties, Plaintiffs, through Class Counsel, shall apply to the Court for entry of a Preliminary Approval Order, in substantially the form attached hereto as Exhibit C, which shall include, among other provisions, a request that the Court:

(a) preliminarily approve this Settlement subject to final review in connection with the Fairness Hearing;

(b) approve the form and contents of the Notice and hold that mailing copies of the Notice to Class Members by first class mail, postage prepaid, complies fully with the requirements of Federal Rule of Civil Procedure 23, the United States Constitution, and any other applicable law;

(c) preliminarily bar and enjoin all Class Members from the institution and prosecution of any of Plaintiffs' Released Claims against any of the Released Defendant Parties pending final approval of this Settlement Agreement;

(d) provide that Class Members may object to the Settlement prior to the Fairness Hearing according to a designated schedule; and

(e) schedule a Fairness Hearing to (1) review any objections regarding this Settlement and/or Class Counsel's request for any Attorneys' Fees, Attorneys' Expenses and Service Awards, (2) consider the fairness, reasonableness, and adequacy of this Settlement Agreement, (3) consider whether the Court should issue a Final Approval Order approving this Settlement Agreement, awarding Attorneys' Fees and Attorneys' Expenses and Service Awards, approving Administrative Expenses incurred and a reserve for any anticipated future Administrative Expenses, and dismissing this Action with prejudice, and (4) consider such other matters as the Court may deem appropriate.

2.2 Review by Independent Fiduciary. The Administrative Committee of the Nationwide Savings Plan ("Administrative Committee") shall select and retain the Independent Fiduciary, on behalf of the Plan, to determine whether to approve the Settlement and authorize Plaintiffs' Released Claims as exempt from certain prohibited transaction restrictions as set forth in PTE 2003-39 on behalf of the Plan.

(a) The Independent Fiduciary shall comply with all relevant requirements set forth in PTE 2003-39.

(b) The Independent Fiduciary shall notify the Administrative Committee of its determination in writing and in accordance with PTE 2003-39, which notification shall be delivered no later than fifty (50) calendar days before the Fairness Hearing. The Administrative Committee, through Defendants' Counsel, will provide Class Counsel with a copy of the Independent Fiduciary's written notification promptly after it is received and no later than fourteen (14) calendar days before the deadline to move for final approval of the Settlement, for the purpose of submitting the Independent Fiduciary's written notification to the Court in connection with the final approval process.

(c) The Parties shall comply with reasonable requests for information made by the Independent Fiduciary.

(d) All fees and expenses associated with the Independent Fiduciary's retention and determination shall be considered Administrative Expenses.

2.3 Final Approval by Court. No later than fourteen (14) calendar days before the Fairness Hearing, or by such other deadline as specified by the Court, Class Counsel shall apply to the Court for entry of the Final Approval Order, in the form agreed to by the Parties, which shall include, among other provisions, a request that the Court:

(a) dismiss the Action with prejudice and without costs, except as contemplated by this Settlement Agreement;

(b) decree that neither the Final Approval Order nor this Settlement Agreement constitutes an admission by any Defendant or any of the Released Defendant Parties of any liability, wrongdoing, or harm to Class Members whatsoever;

(c) bar and enjoin all Class Members, Alternate Payees, and Beneficiaries from asserting any of Plaintiffs' Released Claims, on their own behalf or on behalf of the Class Members, or derivatively to secure relief for the Plan against any of the Released Defendant Parties, in accordance with this Settlement Agreement;

(d) determine that this Settlement Agreement is entered into in good faith and represents a fair, reasonable, and adequate settlement that is in the best interests of the Class Members;

(e) order that each Class Member shall release the Released Defendant Parties, Plaintiffs, Class Counsel, and the Plan from any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount pursuant to the Settlement, and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses, in connection with this Settlement Agreement;

(f) determine that all applicable CAFA requirements have been satisfied;

(g) provide that the Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member pursuant to the Plan of Allocation approved by the Court; and

(h) preserve the Court's continuing and exclusive jurisdiction over the Parties and all Class Members to administer, construe, and enforce this Settlement Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Final Approval Order.

## ARTICLE III
## SETTLEMENT ADMINISTRATION

3.1 CAFA Notice. No later than ten (10) calendar days after Plaintiffs' filing of this Settlement Agreement with the Court and motion for preliminary approval of the Settlement, the Settlement Administrator shall provide appropriate notice of this Settlement Agreement to all appropriate federal officials and any appropriate state official of a state in which a Class Member resides, as specified in 28 U.S.C. § 1715(b). Upon completing such notice, the Settlement Administrator shall provide written notice to Class Counsel and Defendants' Counsel.

3.2 Notice to Class Members.

(a) Nationwide Mutual shall cause the Recordkeeper (or its designee) to provide to the Settlement Administrator all information necessary to disseminate the Notice to Class Members no later than sixty (60) calendar days after the entry of the Preliminary Approval Order, and shall provide all information necessary to implement the Plan of Allocation no later than sixty (60) days after the Court's Final Approval Order.

(b) No later than seventy-five (75) calendar days after the entry of the Preliminary Approval Order, or by such other deadline as specified by the Court, the Settlement Administrator shall send the Notice by first-class mail, postage prepaid to Class Members.

(c) The Notice shall be in the form approved by the Court, which shall be in substantially the form attached as Exhibit A hereto. The Notice to Former Participants (as of the date of the Preliminary Approval Order) will include the Former Participant Claim Form attached as Exhibit B and/or information on how to download or otherwise obtain it.

(d) The Notice shall be sent to the last known address of each Class Member provided by the Recordkeeper (or its designee), unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known address provided by the Recordkeeper (or its designee). If any updated mailing address is obtained by the Settlement Administrator, the Settlement Administrator shall provide the address to Nationwide Mutual and the Recordkeeper for purposes of administration of the Plan.

(e) The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Notice is returned and mail such Notice to any such Class Member one additional time if feasible.

(f) The Settlement Administrator shall post a copy of the Notice and the Former Participant Claim Form on the Settlement Website.

(g) The Settlement Administrator shall be bound by the Confidentiality Order and must safeguard participant data and use processes consistent with the U.S. Department of Labor's cybersecurity standards. The Settlement Administrator shall use the data provided by Nationwide Mutual and the Plan's Recordkeeper solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

3.3 <u>Settlement Website.</u>

(a) No later than sixty (60) calendar days after the entry of the Preliminary Approval Order, the Settlement Administrator shall establish the Settlement Website with the consent and approval of Class Counsel and Defendants' Counsel. The Settlement Administrator shall maintain the Settlement Website until one year after the Effective Date or thirty (30) calendar days after providing the notice referenced in Section 5.5, whichever is later, at which point the Settlement Administrator shall take down the Settlement Website.

(b) The Settlement Website shall contain a copy of the Amended Class Action Complaint, Notice, Former Participant Claim Form, this Settlement Agreement, and all documents filed with the Court in connection with the Settlement or any application for Attorneys' Fees, Attorneys' Expenses, Administrative Expenses, or Service Awards. No other documents will be posted on the Settlement Website or on any website controlled by Plaintiffs or Class Counsel unless agreed to by the Parties in writing.

(c) The Settlement Website shall also include a toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator (or its designee) directly. With approval and input from Class Counsel and Defendants' Counsel, the Settlement Administrator may develop a question-and-answer script for use with callers to the toll-free telephone number.

3.4 <u>Opportunity to Object.</u>

(a) Any Class Member who wishes to object to the Settlement, or any proposed Attorneys' Fees, Attorneys' Expenses, Administrative Expenses, and/or Service Awards, must file with the Clerk of Court and serve on Class Counsel and Defendants' Counsel, no later than twenty-eight (28) days before the Fairness Hearing, a statement of the objection, the specific reason(s) for the objection, and the other information set forth in Section 3.4(c) below. Any Class Member who files and serves a written objection, as described herein, must state whether they intend to appear at the Fairness Hearing.

(b) Class Members filing a written objection in accordance with this Section may do so either on their own or through an attorney hired at their own expense. If a

Class Member hires an attorney to represent them (at their own cost and expense), the attorney must file and serve a notice of appearance on all counsel in the Action no later than twenty-eight (28) days prior to the Fairness Hearing. If any attorney intends to be heard at the Fairness Hearing, they must file a pleading stating this intention no later than twenty-eight (28) days prior to the Fairness Hearing.

(c) Any objection must include the objector's name, mailing and email addresses, the reasons for the objection, all legal support and evidence the objector intends to rely upon (if any), whether the objector intends to appear at the Fairness Hearing, and the identity and contact information of their counsel (if any). Failure to comply waives the objection and any right to appeal, to the fullest extent permitted by law.

(d) Failure to timely serve an objection on either the Clerk of Court, Defendants' Counsel, or Class Counsel in the Action shall constitute a waiver of the objection. Any Class Member or other person who does not timely file and serve a written objection complying with the terms of this Settlement Agreement shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred.

3.5 Distribution of Net Settlement Amount. The Net Settlement Amount shall be distributed to Class Members in accordance with the Plan of Allocation as described in Article V herein.

3.6 Maintenance of Records. The Settlement Administrator shall maintain reasonably detailed records of its activities carried out under this Settlement Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and provide the same to Class Counsel and Defendants' Counsel upon their request. The Settlement Administrator shall provide such information as may reasonably be requested by Plaintiffs or Defendants or their counsel relating to the administration of the Settlement Agreement.

3.7 No Liability. Defendants, Defendants' Counsel, Plaintiffs, Class Counsel, the Plan, and the Released Defendant Parties shall have no responsibility or liability whatsoever with respect to:

(a) any act, omission, or determination of the Settlement Administrator or Escrow Agent;

(b) any act, omission, or determination of another party or another party's counsel or designees or agents in connection with the administration of the Settlement Agreement;

(c) the management, investment, or distribution of the Qualified Settlement Fund; or

(d) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund.

## ARTICLE IV
## ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND

4.1 Establishment of the Qualified Settlement Fund. Following the entry of the Preliminary Approval Order, the Escrow Agent shall establish the Escrow Account. The Parties agree that the Escrow Account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of U.S. Department of Treasury Regulation § 1.468B-1 (26 C.F.R. § 1.468B-1). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in 26 C.F.R. § 1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Escrow Account.

4.2 Funding of the Qualified Settlement Fund.

(a) In consideration of all the promises and agreements set forth in the Settlement Agreement, the Nationwide Defendants will contribute, or cause to be contributed, the Gross Settlement Amount to the Qualified Settlement Fund. No other Defendant shall have any obligation to contribute financially to the Qualified Settlement Fund.

(b) Within thirty (30) calendar days after the later of (i) the date the Preliminary Approval Order is entered, or (ii) the Escrow Account described in Section 4.1 is established and the Escrow Agent shall have furnished to Defendants in writing the Escrow Account name, IRS W-9 form, and all necessary wiring instructions, the Nationwide Defendants shall deposit the Gross Settlement Amount to the Qualified Settlement Fund.

(c) All expenses of Notice and other Administrative Expenses necessary to effectuate the Settlement prior to the date of the entry of the Final Approval Order shall be paid out of the Qualified Settlement Fund without prior Court approval.

4.3 Qualified Settlement Fund Administrator. For the purpose of § 468B of the Internal Revenue Code of 1986, as amended (26 U.S.C. § 468B), and the regulations promulgated thereunder, the administrator of the Qualified Settlement Fund shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a taxpayer identification number for the Qualified Settlement Fund and filing the returns described in 26 C.F.R. § 1.468B-2(k)). Such returns, as well as the election described in Section 4.1, shall be consistent with this Article and, in all events, shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Qualified Settlement Fund shall be deducted and paid from the Qualified Settlement Fund as described in Section 4.5 herein.

4.4 Investment of the Qualified Settlement Fund. The Escrow Agent shall invest the Qualified Settlement Fund in short-term United States agency or Treasury securities or other instruments backed by the full faith and credit of the United States government or an agency thereof, or fully insured by the United States government or an agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

4.5 Taxes on the Income of the Qualified Settlement Fund. All taxes on any income of the Qualified Settlement Fund and expenses and costs incurred in connection with the taxation of the Qualified Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) are Administrative Expenses and shall be timely paid by the Escrow Agent out of the Qualified Settlement Fund. The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it. Defendants, Defendants' Counsel, the Released Defendant Parties, and Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

4.6 The Escrow Agent shall not disburse the Qualified Settlement Fund or any portion except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Defendants' Counsel. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

## ARTICLE V
## PLAN OF ALLOCATION

5.1 Calculation of Payments to Individual Class Members. The Settlement Administrator shall calculate the Entitlement Amount of each Class Member by dividing the Net Settlement Amount by the number of Class Members. By way of example only, if the Net Settlement Amount is $8,000,000 and there are 80,000 Class Members, the Entitlement Amount for each Class Member would be $100. Payment of the Entitlement Amount to Current Participants will be made as set forth below in Section 5.2 and to Former Participants as set forth in Section 5.3 below. Any Former Participant Entitlement Amounts that are unclaimed by Former Participants shall be credited to the Guaranteed Fund's Additional Interest Reserve as set forth in Section 5.3 below.

(a) The aggregate of all Class Members' Entitlement Amounts may not exceed the Net Settlement Amount. In the event that the Settlement Administrator determines that aggregate monetary payment pursuant to the Plan of Allocation would exceed the Net Settlement Amount, the Settlement Administrator is authorized to make such pro rata changes as are necessary to ensure that the aggregate monetary payment pursuant to the Plan of Allocation does not exceed the Net Settlement Amount.

5.2 Payments to Current Participants.

(a) No later than fifteen (15) calendar days following the Effective Date, the Settlement Administrator shall provide Defendants' Counsel, Class Counsel, and the Recordkeeper information in a mutually agreeable format concerning each Current Participant's Entitlement Amount, and any other information necessary to effectuate this Article.

(b) No later than fifteen (15) calendar days after completing the steps described in Section 5.2(a) herein and upon written notice to Nationwide Mutual and the Recordkeeper, the Settlement Administrator shall effect a transfer from the Qualified Settlement Fund to the Plan of all funds necessary to make the credits to Current Participants as specified in Section 5.2(c) herein. Said funds shall be initially invested in the Guaranteed Fund in accordance with the Annuity Contract.

(c) Within fifteen (15) days of receipt of the transfer specified in Section 5.2(b) herein, the Recordkeeper shall credit each Current Participant's individual account in the Plan in an amount equal to that individual's Entitlement Amount. Each Current Participant's Entitlement Amount shall be initially allocated to the Guaranteed Fund. Thereafter, Current Participants shall be free to transfer the amount so invested to a different investment in the Plan as provided by the Plan.

(d) If, as of the date on which the Recordkeeper makes the credits to Current Participants' individual accounts as provided by Section 5.2(c), an individual believed to be a Current Participant no longer has an active account in the Plan, he or she will be treated as a Former Participant and, within 10 days thereof, will be given notice of the opportunity to submit a Claim Form to receive his or her Entitlement Amount as provided by Section 5.3(a) below.

5.3 Payments to Former Participants.

(a) Former Participants shall be given the opportunity to re-open their individual account in the Plan to receive a distribution under the Settlement. To make such an election, Former Participants must complete and return the Claim Form attached as Exhibit B to this Settlement Agreement no later than the date of the Fairness Hearing (or within thirty (30) days of the mailing of the notice set forth in Section 5.2(d) herein, if applicable).

(i) Former Participants who elect to re-open their individual Plan accounts shall not be responsible for a fee for the reopening or for the receipt or withdrawal of the amounts credited to their individual Plan accounts under this Settlement Agreement. Any such fees described in this Section 5.3(a)(i) shall be treated as Administrative Expenses of the Recordkeeper under this Settlement Agreement and paid as such under this Settlement Agreement.

(ii) Subject to the above, once reopened, Former Participants' individual Plan accounts shall be subject to all administrative and other fees applicable under the Plan.

(b) Every thirty (30) calendar days following the mailing of the Notice, the Settlement Administrator shall provide Defendants' Counsel, Class Counsel, and the Recordkeeper an interim report in a mutually agreeable format concerning each Former Participant who has submitted a satisfactory Claim Form as of the date of such interim report.

(c) No later than one hundred and five (105) calendar days after the Effective Date, the Settlement Administrator shall provide Defendants' Counsel, Class Counsel, and the Recordkeeper a final report in a mutually agreeable format concerning each Former Participant who timely submitted a satisfactory Claim Form and each Current Participant treated as a Former Participant under Section 5.2(d) who timely submitted a satisfactory Claim Form.

(d) No later than one hundred and twenty (120) calendar days after the Effective Date, and upon written notice to Nationwide Mutual and the Recordkeeper, the Settlement Administrator shall effect a transfer from the Qualified Settlement Fund to the Plan of all funds necessary to make, as specified in Section 5.3(e) herein, the credits to eligible Former Participants who timely submitted a satisfactory Claim Form as specified in Section 5.3(a) herein.

(e) Within thirty (30) days of receipt of the transfer specified in Section 5.3(d) herein, the Recordkeeper shall credit each eligible Former Participant's individual account in the Plan in an amount equal to that individual's Entitlement Amount. Each eligible Former Participant's Entitlement Amount shall be initially allocated to the Guaranteed Fund. Thereafter, Former Participants shall be free to transfer the amount so invested to a different investment in the Plan or to request a rollover, as provided by the Plan.

(f) No later than one hundred and sixty five (165) calendar days after the Effective Date, and upon written notice to Nationwide Mutual and the Recordkeeper, the Settlement Administrator shall effect a transfer from the Qualified Settlement Fund to the Plan, which transfer shall be treated as a contribution to the Deposit Fund under the Annuity Contract, in an amount equal to the total combined value of the Entitlement Amounts of Former Participants who failed to submit timely a satisfactory Claim Form as specified in Section 5.3(a) herein. Such amount shall be credited as an addition to the Additional Interest Reserve and will be used to enhance the crediting rate of the Guaranteed Fund for the benefit of Plan participants.

5.4 <u>Payments to Beneficiaries and Alternate Payees.</u>

(a) Beneficiaries who are entitled to receive all or a portion of a Current Participant's or eligible Former Participant's Entitlement Amount shall receive their consideration in the same manner as specified for Current Participants and eligible Former Participants, unless otherwise provided by the Plan.

(b) Alternate Payees of Current Participants and eligible Former Participants who are entitled to receive all or a portion of a Current Participant's or eligible Former Participant's Entitlement Amount shall receive their consideration in the same manner as specified for Current Participants and eligible Former Participants, unless otherwise provided by the applicable Qualified Domestic Relations Order.

(c) The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries and Alternate Payees in accordance with the Plan of Allocation set forth in this Article and as ordered by the Court.

5.5 Notice of Completion of Plan of Allocation. Within ten (10) business days of completing all aspects of the Plan of Allocation, the Settlement Administrator shall provide written notice of its implementation of the Plan of Allocation to Class Counsel and Defendants' Counsel. Such notice shall provide, in reasonable detail, a summary of the steps taken to implement the Plan of Allocation.

5.6 Disbursement of Undistributed Monies from the Qualified Settlement Fund. Following distribution of all Entitlement Amounts as specified in this Article, and no later than fifteen (15) calendar days after the notice of completion of the Plan of Allocation described in Section 5.5 herein and all Court-approved distributions have been made, including distributions for Administrative Expenses, taxes and tax expenses, Attorneys' Fees and Attorneys' Expenses, any Service Awards, and any other Court-approved deductions, any portion of the Qualified Settlement Fund then remaining shall be transferred to the Plan, which transfer shall be treated as a contribution to the Deposit Fund under the Annuity Contract. In no event shall any monies in the Qualified Settlement Fund revert to Nationwide Mutual or any other Defendant for its own business purposes. Any amount so transferred shall be credited as an addition to the Additional Interest Reserve and will be used to enhance the crediting rate of the Guaranteed Fund for the benefit of Plan participants.

5.7 Responsibility for Taxes. Each Class Member who receives a payment pursuant to the Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received by such person. Each Class Member shall hold Defendants, Defendants' Counsel, the Released Defendant Parties, Class Counsel, and the Settlement Administrator harmless from (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Settlement Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit) related to such tax liability.

5.8 Restorative Payments. The Net Settlement Amount to be allocated and distributed to Class Members in accordance with the Plan of Allocation shall constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 for all purposes.

## ARTICLE VI
## ATTORNEYS' FEES, ATTORNEYS' EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS

6.1 Attorneys' Fees and Attorneys' Expenses. No later than fourteen (14) days prior to the deadline for Class Members to file objections, Class Counsel may file an application with the Court for payment of their reasonable Attorneys' Fees and Attorneys' Expenses, to be deducted from the Gross Settlement Amount, as well as for Administrative

Expenses incurred to date and a reserve for anticipated future Administrative Expenses. Class Counsel's request for Attorneys' Fees shall not exceed $4 million (31% of the Gross Settlement Amount) and their request for Attorneys' Expenses (in combination with any requested Service Awards, Administrative Expenses, and reserve for anticipated future Administrative Expenses) shall not exceed $900,000 (exclusive of any Administrative Expenses paid to the Recordkeeper from interest earned on the Qualified Settlement Fund). Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for Attorneys' Fees and Attorneys' Expenses sought by Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

6.2 Service Awards. No later than fourteen (14) days prior to the deadline provided in the Preliminary Approval Order for Class Members to object to the Settlement Agreement, Class Counsel may file an application with the Court for payment of reasonable Service Awards to Plaintiffs not to exceed ten thousand dollars (USD $10,000) each. Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for a Service Award to Plaintiffs shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

6.3 Payment of Attorneys' Fees and Attorneys' Expenses. Any Attorneys' Fees and Attorneys' Expenses awarded by the Court shall be paid from the Qualified Settlement Fund within 5 business days of the Final Approval Order notwithstanding any objections or appeals. If the Settlement is terminated pursuant to the terms of this Settlement Agreement or, if as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of Attorneys' Fees and Attorneys' Expenses is reduced or reversed, Class Counsel shall make the appropriate refund or repayment, along with interest at the same rate of interest earned by the Qualified Settlement Fund, in full no later than twenty (20) days after (a) receiving notice of a termination of the Settlement, or (b) any order reducing or reversing the award of Attorneys' Fees and Attorneys' Expenses becoming final.

## ARTICLE VII
## RELEASES AND COVENANT NOT TO SUE

7.1 Releases. Subject to Article IX below, the obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of any and all of Plaintiffs' Released Claims and of the other claim(s) specified in Section 7.1(b).

(a) Upon the Effective Date, Plaintiffs, and every Class Member, every Alternate Payee, and every Beneficiary of any Class Member, on behalf of themselves, their heirs, executors, administrators, successors, and assigns, and the Plan (subject to Independent Fiduciary approval) shall, with respect to each and every of Plaintiffs' Released Claims, be deemed to fully, finally and forever release, relinquish and forever discharge each and every of Plaintiffs' Released Claims against any and all of the Released Defendant Parties, and forever shall be enjoined from prosecuting any of such Plaintiffs' Released Claims, whether or not such Class Member, Alternate Payee, or Beneficiary received the Notice, whether or not such Class Member, Alternate Payee, or Beneficiary received a payment in connection with this Settlement Agreement, whether or not such Class Member has filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Attorneys' Expenses, whether

or not the objections or claims for distribution of such Class Member have been approved or allowed, and whether or not any Beneficiary or Alternate Payee received any information or payment in connection with this Settlement.

(b) Upon the Effective Date, Defendants, on behalf of themselves and their successors and assigns, shall be deemed to fully, finally and forever release, relinquish and discharge Plaintiffs from any and all claims, liabilities, damages, attorneys' fees, or expenses relating to the institution, prosecution or settlement of this Action by Plaintiffs, including any claim that Plaintiff Bryan Marshall breached the terms of his severance agreement by participating in this Action or is required to return his severance payment or otherwise compensate Defendants under his severance agreement as a result of his bringing suit against Defendants in the Action.

(c) Nothing herein shall preclude any action to enforce the Settlement Agreement.

7.2 Covenant Not to Sue. As of the Effective Date, Plaintiffs, the Class Members and the Plan (subject to Independent Fiduciary approval as described in Section 2.2 herein) shall not sue or seek to institute, maintain, prosecute, or assert in any action or proceeding any cause of action, demand, or claim adverse to the Released Defendant Parties on the basis of any of Plaintiffs' Released Claims. Nothing herein shall preclude any action to enforce the Settlement Agreement.

7.3 Acknowledgement. Plaintiffs, Class Counsel, the Plan, Class Members, Beneficiaries, or Alternate Payees may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Plaintiffs' Released Claims. Such facts, if known by them, might have affected the decision to settle with Defendants and the Released Defendant Parties, or the decision to release, relinquish, waive, and discharge the Plaintiffs' Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, the Plaintiffs and each Class Member and the Plan shall expressly, upon the Effective Date, be deemed to have, and by operation of the Final Approval Order, shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Plaintiffs' Released Claims, including Unknown Claims. The Plaintiffs and each of the Class Members and the Plan acknowledge and shall be deemed by operation of the Final Approval Order to have acknowledged that the foregoing waiver is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

## ARTICLE VIII
## REPRESENTATIONS AND WARRANTIES

8.1 Parties' Representations and Warranties. The Parties represent and warrant as follows, and each Party acknowledges that each other Party is relying on these representations and warranties in entering into the Settlement Agreement:

(a) they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations, and in executing this Settlement Agreement they are relying solely upon their own judgment, belief,

and knowledge, and upon the advice and recommendations of counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

(b) they assume the risk of mistake as to facts or law;

(c) they recognize that additional evidence may come to light, but they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement Agreement;

(d) they have carefully read the contents of the Settlement Agreement, and the Settlement Agreement is signed freely by each individual executing the Settlement Agreement on behalf of each Party; and

(e) they have made such investigation of the facts pertaining to the subject matter of the Settlement Agreement as they deem necessary.

8.2 Signatories' Representations and Warranties. The persons executing the Settlement Agreement represent that they have been duly authorized to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement in order to effectuate its terms.

**ARTICLE IX**
**TERMINATION**

9.1 Right to Terminate by Each Party. Each Party shall have the right to terminate and abandon the Settlement Agreement by providing written notice of their election to do so to the other Party no later than fourteen (14) calendar days after:

(a) the Court declines to approve the Settlement Agreement or any material part of it;

(b) the Court declines to enter the Preliminary Approval Order or materially modifies the contents of the Preliminary Approval Order or any of its exhibits;

(c) the Court declines to enter the Final Approval Order or materially modifies the contents of the Final Approval Order; or

(d) the Final Approval Order is vacated, reversed, or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date.

Notwithstanding anything herein, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning Attorneys' Fees and Attorneys' Expenses or any Service Awards shall constitute grounds for termination of the Settlement Agreement.

9.2 Right to Terminate by Defendants. If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement, or refuses to approve the Plan's release of Plaintiffs' Released Claims, and the Parties are unable to modify the Settlement to address the Independent Fiduciary's objections to the Settlement after meeting and conferring in good faith, Defendants shall have the right to terminate and abandon the Settlement Agreement. In such an event, no later than twenty-one (21) calendar days after receipt of the Independent Fiduciary's determination, Defendants shall provide written notice to Plaintiffs of their election to exercise their right to terminate and abandon the Settlement Agreement.

9.3 Right to Terminate by Plaintiffs. Plaintiffs shall have the right to terminate and abandon the Settlement Agreement in the event that the Nationwide Defendants fail to fund the Settlement in accordance with Section 4.2.

9.4 Reversion to Prior Positions. If the Settlement Agreement is terminated in accordance with this Article, then (i) the Parties and Class Members will be restored to their respective positions immediately before the execution of the Settlement Agreement, (ii) the Gross Settlement Amount, plus all interest and accretions thereto shall revert to the Nationwide Defendants based on their respective contributions to the Escrow Account (subject to Section 9.5 below), (iii) this Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered, (iv) any order entered by the Court pursuant to the terms of this Settlement Agreement shall be treated as vacated *nunc pro tunc*, (v) the fact of this Settlement Agreement and the terms contained herein shall not be admissible in any proceeding for any purpose, and (vi) the Parties expressly and affirmatively reserve all rights as to all claims, defenses, and requests for relief that might have been or might be later asserted in the Action.

9.5 In the event that the Settlement Agreement is terminated, Administrative Expenses incurred prior to the termination shall be paid first from the interest earned, if any, on the Qualified Settlement Fund. Administrative Expenses in excess of the interest earned on the Qualified Settlement Fund shall be split evenly and paid by Class Counsel, on the one hand, and the Nationwide Defendants, on the other hand.

**ARTICLE X**
**NO ADMISSION OF WRONGDOING**

10.1 The Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it, is for settlement purposes only and entered into solely for the purpose of avoiding possible future expenses, burdens, risks, or distractions of litigation, and Defendants and the Released Defendant Parties deny any and all wrongdoing. Defendants and the Released Defendant Parties specifically and expressly deny any and all liability in connection with any claims that have been made or could have been made, or which are the subject matter of, arise from, or are connected, directly or indirectly, with or related in any way to the Action, including, but not limited to, any violation of ERISA or any other federal or state law (whether statutory or common law), rule, or regulation. Defendants and the Released Defendant Parties further specifically and expressly deny that Plaintiffs, the Class Members, the Plan, or any of the Plan's current or former participants suffered any losses, or that the Plan at any time paid, directly or indirectly, more than adequate consideration to any Defendant or Released Defendant

Party, or that any Defendant or Released Defendant Party profited from any transaction involving the Guaranteed Fund. Defendants and the Released Defendant Parties maintain that they acted prudently and loyally at all times when acting in any fiduciary capacity with respect to the Plan.

10.2 Based upon their investigation, prosecution, and mediation of the case, Plaintiffs and Class Counsel have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate to Plaintiffs and the Class. The Settlement Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Plaintiffs of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of Defendants' defenses to liability had any merit.

10.3 The Settlement Agreement, whether or not consummated, and any negotiations, proceedings, or agreements relating to the Settlement Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

(a) shall not be offered or received against Defendants, or any of the Released Defendant Parties as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by Defendants or a Released Defendant Party of the truth of any fact alleged by Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or of the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing on the part of Defendants or any of the Released Defendant Parties, or that any of Plaintiffs' claims are typical of the claims of others or suitable for class treatment;

(b) shall not be offered or received against Defendants or any of the Released Defendant Parties as evidence of a presumption, concession or admission of any liability, fault, negligence, misrepresentation, omission, or wrongdoing; and

(c) shall not be construed against Defendants or any of the Released Defendant Parties as an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial of the Action.

10.4 For the avoidance of doubt, nothing in this Settlement Agreement shall preclude or limit the Committee's ability and authority in any way, including but not limited to its ability or authority to:

(a) adopt or utilize an investment policy statement for the Plan, including any provisions therein that may relate to the Guaranteed Fund;

(b) continue to include or not include the Guaranteed Fund in the Plan investment fund line-up, or as part of any fund or funds offered in the line-up;

(c) select or deselect any other type of investment option in the fund line-up;

(d) monitor the Guaranteed Fund as an investment option;

(e) carry out its fiduciary duties with respect to the Plan, the plan trust, the trustee, investment managers, and other service providers or investment-related products or services;

(f) modify, redesign, restructure, benchmark, close, freeze, map, transfer, replace, or terminate the Guaranteed Fund, in whole or in part;

(g) renegotiate, amend, replace, novate, terminate, or otherwise change the Annuity Contract, or any contract, wrapper, guarantee, insurance arrangement, unitization structure, administrative framework, or other arrangement supporting the Guaranteed Fund; or

(h) evaluate, acquire, or implement a different structure, contract, vehicle, insurer, issuer, investment manager, benchmark, or operating model for the Guaranteed Fund or any successor capital preservation option.

10.5 For the further avoidance of doubt, the Settlement Agreement does not and shall not be construed to:

(a) create any presumption for or against the Guaranteed Fund, Nationwide Life, or any affiliated product or service;

(b) alter, constrain, or predetermine the Committee's fiduciary standard of review, decision-making process, deliberations, reliance on advisors, or exercise of independent fiduciary judgment under ERISA based on the facts and circumstances existing at the time of any future decision;

(c) constitute a determination, concession, or admission that continued use of the Guaranteed Fund is imprudent;

(d) constitute a determination, concession, or admission that removal of the Guaranteed Fund is required;

(e) constitute a determination, concession, or admission that any future retention, modification, mapping, restructuring, replacement, or removal of the Guaranteed Fund would itself be a prohibited transaction or a breach of fiduciary duty;

(f) create any evidentiary presumption regarding any future fiduciary act, omission, process, or decision;

(g) prohibit the Committee from, or require the Committee to, consider proprietary, affiliated, or Nationwide-related products or services in the future;

(h) limit the Committee's authority to take any action necessary or appropriate to identify, avoid, mitigate, manage, document, or address actual or potential prohibited transactions, conflicts of interest, self-dealing concerns, or other fiduciary risk issues;

(i) limit Nationwide Life's ability to set the crediting rate of the Guaranteed Fund;

(j) limit Nationwide Life's ability to determine the portfolio return for the crediting rate of the Guaranteed Fund;

(k) limit Nationwide Life's ability to operate its general account;

(l) limit the rights of the Plan or Nationwide Life under the Annuity Contract; or

(m) create any fiduciary duty, monitoring obligation, reporting obligation, special review process, court-supervision mechanism, notice requirement, or approval right beyond what is expressly set forth in the Settlement Agreement and otherwise required by applicable law.

10.6 Other.

(a) Under the Settlement Agreement, ordinary future fiduciary decisions remain within the Committee's authority and are not subject to approval by Plaintiffs, Class Counsel, the Court, or any other third party;

(b) Neither the Settlement Agreement itself nor any act taken to resolve the litigation may be used to establish a benchmark, comparator, required alternative, or evidentiary inference for future fiduciary decisions regarding the Guaranteed Fund or any other investment option;

(c) Except as necessary to enforce this Settlement Agreement, no Party may rely on the Settlement Agreement to argue that any particular future action was required, prohibited, feasible, imprudent, or necessarily superior; and

(d) If any provision of the Settlement Agreement is (or could be) construed to restrict the Committee's ability or obligation to comply with ERISA, the Internal Revenue Code, securities law, insurance law, or other applicable law, that provision shall be interpreted narrowly so as not to create such a restriction.

## ARTICLE XI
## MISCELLANEOUS

11.1 Exhibits Included. The exhibits to the Settlement Agreement are integral parts of the Parties' agreement and are incorporated by reference as if set forth herein.

11.2 Cooperation. Class Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court entry of the Preliminary Approval Order and Final Approval Order.

11.3 Non-Disparagement. Plaintiffs agree that they will not make any disparaging public statements about the Defendants, Released Defendant Parties, or Defendants' Counsel relating to the Action that are (i) known to be false or are deliberate or reckless falsehoods, (ii) misleading, defamatory or otherwise unlawful, (iii) attacks upon Defendants, the Released Defendant Parties, or Defendants' Counsel in a manner reasonably calculated to harm their reputation or reduce their income, or (iv) false or misleading and deliberately inflict on Defendants, the Released Defendant Parties, or Defendants' Counsel economic harm unnecessary to legitimate concerted activities. Defendants similarly agree that they will not make any disparaging public statements about Plaintiffs or Class Counsel relating to the Action that are (i) known to be false or are deliberate or reckless falsehoods, (ii) misleading, defamatory or otherwise unlawful, (iii) attacks upon Plaintiffs or Class Counsel in a manner reasonably calculated to harm their reputation or reduce their income. This paragraph does not prevent the Parties from maintaining their position that the claims asserted in the Action were or were not meritorious when filed or were or were not subject to class treatment, or engaging in any speech or conduct that is protected by the National Labor Relations Act or other applicable law.

11.4 Compliance with Confidentiality Order. Within thirty (30) calendar days after the Effective Date, the Parties shall either (a) return to the producing parties, or (b) destroy, all documents, communications, or things produced in discovery under a claim of confidentiality pursuant to the Confidentiality Order, including, but not limited to, documents, information, or things produced under a claim of privilege. Upon request, each Party shall serve a written notice to each producing party certifying that the Party has carried out the obligations imposed by this Section 11.4. The Parties, Class Counsel, and Defendants' Counsel agree that at all times they will honor the requirements of the Confidentiality Order, notwithstanding the settlement of the Action.

11.5 Entire Agreement. This Settlement Agreement and all of the exhibits appended hereto constitute the entire agreement of the Parties with respect to their subject matter and supersede any prior agreement, whether written or oral, as to that subject matter. There are no side agreements between the Parties, and no representations or inducements have been made by any Party hereto concerning the Settlement Agreement or its exhibits other than those contained and memorialized in such documents. The provisions of the Settlement Agreement and its exhibits may not be modified or amended, nor may any of their provisions be waived, except by a writing signed by all Parties hereto or their successors-in-interest.

11.6 Waiver. The waiver by any Party of a breach of the Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of the Settlement Agreement.

11.7 Construction of Agreement. This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that the Settlement Agreement is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to its preparation.

11.8 Headings. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.9 Governing Law. The Settlement Agreement and all documents necessary to effectuate it shall be governed by the laws of the State of Ohio without regard to its conflict of law doctrines, except to the extent that federal law requires that federal law govern, and except that all computations of time with respect to the Settlement Agreement shall be governed by Federal Rule of Civil Procedure 6.

11.10 Fees and Expenses. Except as otherwise expressly set forth herein, each Party shall pay its own fees, costs, and expenses incurred in connection with the Action, including fees, costs, and expenses incident to the negotiation, preparation, or compliance with the Settlement Agreement, and including any fees, expenses, and disbursements of its counsel and other advisors. Nothing in the Settlement Agreement shall require Defendants to pay any monies other than as expressly provided herein.

11.11 Execution in Counterparts. The Settlement Agreement may be executed in one or more counterparts and may be executed by facsimile signature or Docusign. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves signed counterparts.

11.12 Notices. Unless otherwise provided herein, any notice, demand, or other communication under the Settlement Agreement (other than Notices to Class Members or other notices provided at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and delivered by hand, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier as follows:

(a) if to Plaintiffs:

Daniel Sutter
COHEN MILSTEIN SELLERS & TOLL LLP
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005

(b) if to Defendants:

Michael Carpenter
CARPENTER LIPPS LLP
280 North High Street, Suite 1300
Columbus, Ohio 43215

11.13 Retention of Jurisdiction. The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Settlement Agreement.

AGREED TO BY PLAINTIFFS, individually and on behalf of the Plan and Class:

Dated: 11/3/2026 | 3:15 PM EST

DocuSigned by:
Ryan Sweeney
5B01EBE18E9E431...

Ryan Sweeney

Dated: ______________________

______________________________
Bryan Marshall

AGREED TO ON BEHALF OF DEFENDANTS Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, the Investment Committee of the Nationwide Savings Plan; David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach.

Dated**:** ______________________

______________________________
Michael Carpenter
**Carpenter Lipps LLP**
280 North High Street, Suite 1300
Columbus, OH 43215
Tel: (614) 365-4100
carpenter@carpenterlipps.com

AGREED TO BY PLAINTIFFS, individually and on behalf of the Plan and Class:

Dated: ______________________

______________________
Ryan Sweeney

Dated: 11/4/2026 | 9:25 AM CST

DocuSigned by:
Bryan Marshall
8883EA1DE40C4E5
Bryan Marshall

AGREED TO ON BEHALF OF DEFENDANTS Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, the Investment Committee of the Nationwide Savings Plan; David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach.

Dated: ______________________

______________________
Michael Carpenter
**Carpenter Lipps LLP**
280 North High Street, Suite 1300
Columbus, OH 43215
Tel: (614) 365-4100
carpenter@carpenterlipps.com

AGREED TO BY PLAINTIFFS, individually and on behalf of the Plan and Class:

Dated: ______________________

______________________________
Ryan Sweeney

Dated: ______________________

______________________________
Bryan Marshall

AGREED TO ON BEHALF OF DEFENDANTS Nationwide Mutual Insurance Company, Nationwide Life Insurance Company, the Investment Committee of the Nationwide Savings Plan; David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach.

Dated: 11/3/26

______________________________
Michael Carpenter
**Carpenter Lipps LLP**
280 North High Street, Suite 1300
Columbus, OH 43215
Tel: (614) 365-4100
carpenter@carpenterlipps.com

# EXHIBIT A

*Sweeney, et al. v. Nationwide Mutual Insurance Company, et al.*, No. 2:20-cv-01569 (S.D. Ohio)

NOTICE OF CLASS ACTION SETTLEMENT
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

**If you participated in or were a beneficiary of the Nationwide Savings Plan and invested in the Guaranteed Fund in the Plan at any time from March 26, 2014 to the present, you are a part of a class action settlement.**

PLEASE READ THIS NOTICE CAREFULLY
THIS NOTICE RELATES TO THE SETTLEMENT OF A CLASS ACTION LAWSUIT AND CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND CERTAIN DEADLINES

*A Federal Court authorized this notice. You are not being sued.*
*This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against Nationwide Mutual Insurance Company ("Nationwide Mutual"), Nationwide Life Insurance Company ("Nationwide Life"), the Investment Committee of the Nationwide Savings Plan ("Committee"), and certain members of the Committee (collectively, the "Defendants").[1] The class action lawsuit involves whether the Defendants complied with the Employee Retirement Income Security Act ("ERISA") with respect to the Guaranteed Fund investment option in the Nationwide Savings Plan ("Plan").

- You are included as a Class Member if you were a Plan participant or beneficiary and invested in the Guaranteed Fund at any time during the Class Period, which runs from March 26, 2014 through the date of final judgment in the lawsuit.

- Nationwide Mutual and Nationwide Life (collectively, "Nationwide") have agreed to pay $12,900,000.00 into a settlement fund to resolve the claims of the Class. Class Members are eligible to receive a share of the Net Settlement Amount, which is the amount in the settlement fund remaining after payment of administrative expenses, any attorneys' fees and attorneys' expenses that the Court awards to Class Counsel, and any class representative service awards to the named Plaintiffs. The amount of each Class Member's payment will be based on a per capita Plan of Allocation that provides an estimated $90 to $100 to eligible Class Members. Payments to current Plan participants (or their beneficiaries) will be automatically deposited into their individual Plan accounts. Former Plan participants and their beneficiaries will only receive a settlement payment if they submit a claim form. **If you are a <u>former</u> Plan participant (or beneficiary of a former participant) and wish to receive a settlement payment, you must complete, sign, and mail a Former Participant Claim Form.** A copy of the claim form is included at the end of this Notice of Settlement. You can also download a copy of the Former Participant Claim Form at [web address], or contact the Settlement Administrator to receive a copy. Contact information for the Settlement Administrator is provided at the end of this Notice.

- Please read this Notice carefully. Your legal rights are affected whether you act, or don't act.

[1] The named Committee member defendants are David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach.

| THIS TABLE CONTAINS A SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING – If you do nothing, you will receive a settlement payment only if you are a current Plan participant or beneficiary.** | If you do nothing and are a current Plan participant or beneficiary, you will automatically receive any settlement payment to which you are entitled via a deposit to your individual Plan account. If you are a former participant or beneficiary, you will not receive a settlement payment unless you submit a claim form. All class members will give up their right to sue the Defendants and other related parties concerning the Released Claims (as described below) regardless of whether they receive a settlement payment. |
| **SUBMIT A CLAIM FORM – Former participants and beneficiaries who timely submit a claim form are eligible to receive a settlement payment.** | If you are a former Plan participant or beneficiary, and wish to receive a settlement payment, you must complete, sign, and return the Former Participant Claim Form by [**DATE**]. By signing the claim form, you authorize Nationwide Mutual to re-open your Plan account and deposit your settlement payment in your account. |
| **FILE AN OBJECTION** | You may file a written objection with the Court (as discussed further below) if you don't like the Settlement to explain why you object. If you wish to object, you must do so by **[DATE]**. You are not required to personally appear in Court at the fairness hearing, but if you wish to do so, you must so indicate with your objection. |

## BASIC INFORMATION

### 1. What is this notice and why should I read it?

A court authorized this notice to let you know about a proposed settlement of a class action lawsuit called *Sweeney, et al. v. Nationwide Mutual Insurance Company, et al.*, No. 2:20-cv-01569 (the "Action"), brought on behalf of the Class Members (as described in Question 5 below), and pending in the United States District Court for the Southern District of Ohio. This notice describes the Settlement. Please read this notice carefully. Your rights and options – and the deadlines to exercise them – are explained in this notice. Please understand that if you are a Class Member, your legal rights are affected regardless of whether you act.

### 2. What is a class action lawsuit?

A class action is a lawsuit in which one or more plaintiffs – in this case certain individuals who participated in the Plan and invested in the Guaranteed Fund – sue on behalf of a group of people who allegedly have similar claims. After the Parties reached an agreement to settle this case, the Court granted preliminary approval of the Settlement and authorized the distribution of this notice to the Class. Among other things, this permits Class Members to voice their support for or opposition to the Settlement before the Court makes a final determination as to whether to approve the Settlement. In a class action, the court resolves the issues for all class members.

## THE CLAIMS IN THE LAWSUIT AND THE SETTLEMENT

### 3. What is this lawsuit about?

Plaintiffs filed a class action complaint against Nationwide and other Defendants on behalf of a class of participants in the Plan alleging that Defendants breached their fiduciary duties and engaged in prohibited transactions under ERISA by failing to adequately monitor the compensation Nationwide received in connection with the Guaranteed Fund, and ensure that it was reasonable. A more complete description of what Plaintiffs alleged is in the Amended Complaint, which is available on the settlement website at [web address].

The Defendants deny Plaintiffs' claims of wrongdoing or liability, and assert that they have always acted prudently and in the best interests of the Plan's participants and beneficiaries when taking actions as fiduciaries of the Plan. The Defendants believe that the Guaranteed Fund provides a tremendous benefit to Plan participants, and are settling the lawsuit solely to avoid the expense, inconvenience, and inherent risk and disruption of litigation.

### 4. Why is there a Settlement?

The Court has not decided in favor of either side in the case. Instead, both sides agreed to a settlement. That way, both sides avoided the cost and risk of a trial, and Class Members are eligible to receive benefits that they would not have received if Plaintiffs had litigated the case and lost. The Plaintiffs and their attorneys believe the Settlement is in the best interests of the Class.

## THE CLASS

### 5. Who is included in the Class?

The Court has decided that everyone who fits the following description is a member of the **Class**:

> All participants and beneficiaries in the Nationwide Savings Plan who were invested in the Guaranteed Fund at any time from March 26, 2014 through the date of final judgment in this action, excluding the individual Defendants.

If you meet the definition above, you are a member of the Class.

## THE SETTLEMENT BENEFITS

### 6. What does the Settlement provide?

Gross Settlement Amount. Nationwide has agreed to pay $12,900,000.00 to settle the lawsuit. That amount, less amounts for expenses associated with administering the Settlement, attorneys' fees and attorneys' expenses, and class representative service awards to Plaintiffs (which must be approved by the Court), is the "Net Settlement Amount" that will be paid to the Class. The Net Settlement Amount will be allocated to Class Members in accordance with the Plan of Allocation in the Settlement.

Plan of Allocation. Payments to individual Class Members will be calculated by the Settlement Administrator in accordance with the Plan of Allocation in the Settlement Agreement. In summary, the Plan of Allocation provides for a per capita distribution of the Net Settlement Amount (i.e., the amount that each Class Member is entitled to

be paid will be calculated by dividing the Net Settlement Amount by the number of Class Members). It is currently estimated that there are approximately 83,000 to 85,000 Class Members, and the estimated settlement payment is approximately $90 to $100 per Class Member. Current Plan participants will automatically receive their settlement payment through a deposit to their individual account in the Plan. Former participants must submit a Former Participant Claim Form re-opening their account in the Plan to receive a settlement payment. To the extent that any settlement payments are unclaimed by former participants, the unclaimed funds will be credited to the Guaranteed Fund's Additional Interest Reserve and be used to enhance the Guaranteed Fund's crediting rate for the benefit of Plan participants. In no event will any monies in the Qualified Settlement Fund revert to Nationwide Mutual or any other Defendant.

Release. In exchange for the monetary relief provided above, all Class Members (regardless of whether they submitted a claim form) will release and forever discharge the Defendants and other Released Defendant Parties from Plaintiffs' Released Claims.

The Released Defendant Parties include, but are not limited to: (a) each Defendant and its insurers; (b) each Defendant's past, present or future parent corporation(s); (c) each Defendant's past, present or future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns; (d) certain other persons and entities related to the Defendants; (e) the Plan and its predecessors and successors; and (f) each of the Plan's past, present or future fiduciaries and administrators (except for the Independent Fiduciary), including but not limited to the Investment Committee of the Plan and each of the Plan's past, present or future operating or administrative or investment or management committees.

Plaintiffs' Released Claims include all claims that were asserted in the Action or that could have been asserted in the Action that arise out of, relate to, are based on, or have any connection with the Guaranteed Fund, Annuity Contract, conduct of the Investment Committee or any other committee of the Plan (or any advisors of such committee) that in any way relate to the Guaranteed Fund or Annuity Contract. The Plaintiffs' Released Claims also include those that would be barred by the legal doctrine of res judicata; that relate to the direction to calculate, the calculation of, and/or the method or manner of payment to any Class Member of the Net Settlement Amount or Plan of Allocation; or that relate to the approval by the Independent Fiduciary of the Settlement Agreement.

This is only a summary of the Released Defendant Parties and Plaintiffs' Released Claims, and is not a binding description of either. The governing release language is found within the Settlement Agreement, which is available at [web address]. Generally, the release means that Class Members will not have the right to sue the Defendants, the Plan, or related parties for conduct during the Class Period arising out of or relating to the allegations in the lawsuit.

## HOW TO GET BENEFITS

### 7. How do I get benefits?

If you are a Class Member and are currently a Plan participant or beneficiary of a Plan participant, your settlement payment will be automatically deposited into your Plan account and invested in the Guaranteed Fund.

**If you are a former participant or beneficiary of a former participant in the Plan, you must submit a Former Participant Claim Form by [DATE] to be eligible to receive a settlement payment.** By submitting this claim form, you authorize Nationwide Mutual to re-open your Plan account, deposit your settlement payment

in your account, and invest your settlement payment in the Guaranteed Fund. A copy of the Former Participant Claim Form is included at the end of this Notice. You can also download a copy of the Former Participant Claim Form at [web address], or contact the Settlement Administrator to receive a copy. Contact information for the Settlement Administrator appears at the end of this Notice (see Question 20).

If you are an alternate payee of a current participant or former participant in the Plan pursuant to a Qualified Domestic Relations Order, you will receive any settlement payment to which you are entitled in the same manner as specified for current participants and eligible former participants, unless otherwise provided by the applicable Qualified Domestic Relations Order.

### 8. When will I get my payment?

Payments to Class Members will be distributed within approximately 150 days after the Effective Date of the Settlement, if the Settlement is finally approved by the Court. The Fairness Hearing at which the Court will give final consideration to the fairness of the Settlement is scheduled for [Fairness Hearing Date]. If the Settlement is not approved by the Court, the Settlement will not become effective.

## THE LAWYERS REPRESENTING THE CLASS

### 9. Who represents the Class?

The Court has appointed lawyers from the law firm of Cohen Milstein Sellers & Toll LLP and Zagrans Law Firm LLC to represent the Class as Class Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense. In addition, the Court appointed the named Plaintiffs, Ryan Sweeney and Bryan Marshall, to serve as the Class Representatives. They are also Class Members.

Subject to approval by the Court, up to $10,000 may be paid to each of the named Plaintiffs as the Class Representatives in recognition of time and effort they expended on behalf of the Class. The Court will determine the proper amount of any award to the Plaintiffs. The Court may award less than that amount.

### 10. How will the lawyers be paid?

From the beginning of the case, which was filed in March 2020, to the present, Class Counsel have not received any payment for their services in prosecuting the case or obtaining the Settlement, nor have they been paid for the expenses they have incurred. Class Counsel will apply to the Court for an award of attorneys' fees not to exceed $4,000,000 (31% of the Gross Settlement Amount), plus their attorneys' expenses and any administrative expenses of Settlement that are not paid from the interest on the settlement fund (which, together with any requested service awards, shall not exceed $900,000). The Court will determine the proper amount of any attorneys' fees and expenses to award Class Counsel.

Any attorneys' fees and expenses awarded by the Court will be paid to Class Counsel from the settlement fund. Class Members will not have to separately pay anything toward the fees or expenses of Class Counsel.

## INDEPENDENT FIDUCIARY

### 11. Will the Settlement be reviewed by anyone other than the Court?

Yes. The Plan's Administrative Committee will select and retain an Independent Fiduciary to review the

Settlement on behalf of the Plan and determine whether to authorize the Plan to release the Plan's claims against Defendants. As an impartial third party, the Independent Fiduciary will review the Action and the Settlement, including the claims alleged against the Defendants, the terms of the Settlement, and the Plan of Allocation. The Independent Fiduciary will submit its findings to the Administrative Committee in a written report, which will then provide that report to Class Counsel. Class Counsel will file the Independent Fiduciary's report with the Court before the Fairness Hearing.

## YOUR RIGHTS AND OPTIONS

### 12. What is the effect of final approval of the Settlement?

If the Court grants final approval of the Settlement, a final order and judgment dismissing the case will be entered in the Action. Payments under the Settlement will then be processed and distributed in accordance with the Settlement, and the release by Class Members will also take effect. No Class Member will be permitted to continue to assert Plaintiffs' Released Claims in any other litigation against the Defendants or the other persons and entities covered by the release, as described in Question No. 6.

If the Settlement is not approved, the case will proceed as if no settlement had been attempted or reached. In that event, there is no assurance that members of the Class will recover more than what is provided for under the Settlement, or anything at all.

### 13. What happens if I do nothing at all?

If you do nothing, you will release any claims you may have against the Defendants and other Released Defendant Parties that are included in the Plaintiffs' Released Claims (*see* Question 6). You may also receive a settlement payment if you are a current participant or beneficiary in the Plan as described above. You will not receive a settlement payment if you are a former participant or beneficiary and do nothing. **Former participants and their beneficiaries <u>must</u> submit a Former Participant Claim Form to receive a settlement payment.**

### 14. Can I exclude myself from the Settlement?

If the Court approves the Settlement, you will be bound by it (including the release) and will receive whatever benefits you are entitled to under its terms. You cannot exclude yourself from the Settlement (i.e., opt-out), but you may notify the Court of any objection you may have to the Settlement. (*See* Question No. 16.) The Court has certified the Class under Federal Rule of Civil Procedure 23(b)(1), which does not permit Class Members to opt out of the Class.

### 15. Can I sue Nationwide for the same thing later?

No. If the Court approves the Settlement, you will have given up any right to sue Nationwide or any of the Released Defendant Parties for the Plaintiffs' Released Claims.

### 16. Can I object to the Settlement?

Yes. You can object to the Settlement if you don't like any part of it. Your objection must be filed with the Clerk of Court via the Court's electronic case filing system (or by mail if you do not have e-filing access) and served on Class Counsel and Defendants' Counsel listed below no later than [OBJECTION DEADLINE].

| Clerk of Court | Class Counsel | Defendants' Counsel |
|---|---|---|
| U.S. District Court<br>Office of the Clerk<br>Joseph P. Kinneary U.S. Courthouse<br>85 Marconi Boulevard, Room 121<br>Columbus, Ohio 43215 | Daniel Sutter<br>Cohen Milstein Sellers & Toll LLP<br>1100 New York Ave. NW<br>Eighth Floor<br>Washington, DC 20005 | Michael Carpenter<br>Carpenter Lipps LLP<br>280 North High Street<br>Suite 1300<br>Columbus, Ohio 43215 |

The objection must be in writing and include the case name *Sweeney et al. v. Nationwide Mutual Insurance Company, et al.*, Civil Action No. 2:20-cv-01569 (S.D. Ohio). In addition, you must include the following information: (a) name, (b) mailing and email address, (c) the reasons for your objection, (d) all legal support and evidence you intend to rely upon (if any) to support your objection, (e) whether you intend to appear at the Fairness Hearing (either personally or through your own counsel), and (f) the identity and contact information of your counsel (if any). If you do not timely file and serve an objection with the required information as set forth above, you will be deemed to have waived any objection that you may have and will be foreclosed from objecting to the Settlement or appealing any order by the Court approving the Settlement.

## THE COURT'S FAIRNESS HEARING

### 17. When and where will the Court hold a hearing on the fairness of the Settlement?

A Fairness Hearing has been set for [date] at [time], before The Honorable Chief Judge Sarah D. Morrison in Courtroom 132 of the Joseph P. Kinneary United States Courthouse, 85 Marconi Boulevard, Columbus, OH 43215. At the hearing, the Court will hear any comments, objections, and arguments concerning the fairness of the proposed Settlement, including the amount requested by Class Counsel for attorneys' fees, attorneys' expenses, administrative expenses, and service awards to Plaintiffs as the Class Representatives. You do not need to attend this hearing. You also do not need to attend to have an objection considered by the Court.

**Note**: The date, time, and location of the Fairness Hearing are subject to change by Court Order, but any changes will be posted at [web address].

### 18. Do I have to come to the Fairness Hearing?

No. Class Counsel will answer any questions the Court may have. You are welcome to come at your own expense, but don't have to attend the Fairness Hearing. As long as any written objection was submitted on time and meets the criteria described above (*see* Question 16), the Court will consider it. However, if you wish to speak at the hearing (or have another lawyer speak on your behalf), you must advise the Court in advance.

### 19. May I speak at the hearing?

You may ask the Court for permission to speak at the hearing concerning any part of the proposed Settlement by following the instructions in Question 16 above.

## GETTING MORE INFORMATION

### 20. Where can I get additional information?

This notice provides only a summary of information relating to the Settlement. For more detailed information,

you are encouraged to review the Settlement Agreement. You can view the Settlement Agreement and get more information at [web address]. You can also get more information by contacting the Settlement Administrator at [email address], writing to [mailing address], or calling toll-free at 1-[number].

The Settlement Agreement and all other pleadings and papers filed in the case are available for inspection and copying during regular business hours at the office of the Clerk of Court, located at the Joseph P. Kinneary United States Courthouse, 85 Marconi Boulevard, Columbus, OH 43215.

All capitalized terms herein have the meaning set forth in the Settlement Agreement.

**PLEASE DO NOT CONTACT THE COURT, THE JUDGE, OR NATIONWIDE WITH QUESTIONS ABOUT THE SETTLEMENT.**

# EXHIBIT B

# CLAIM FORM – SWEENEY V. NATIONWIDE CLASS ACTION SETTLEMENT

A settlement has been reached in a class action regarding the Guaranteed Fund ("Fund") in the Nationwide Savings Plan ("Plan"). Class members who are former Plan participants or beneficiaries and who were previously invested in the Fund are eligible to receive a settlement payment. If you are a former Plan participant or beneficiary and wish to receive a settlement payment, you must complete, sign and return this claim form with a postmark date no later than [DATE]. **By submitting this claim form, you authorize the Recordkeeper for the Plan to re-open your Plan account and deposit the settlement payment into your account.** Please do not call or write the Court, Nationwide or Nationwide's counsel with questions about completing this Claim Form.

## PART 1: Contact Information

Last Name | First Name:

Street Address

City | State | Zip Code

Country

Phone

E-mail Address

Social Security Number (last 4 digits)

## PART 2: Questions Regarding Eligibility to Participate in Settlement

1. Were you an employee of Nationwide or one of its affiliates?
   Yes ___ No ___

2. Were you a participant in the Nationwide Savings Plan, and if so, when?
   Yes ___ No ___
   If yes, years you participated (give your best estimate): ___________

3. Were you invested in the Guaranteed Fund (either directly or through a target date fund or target maturity model)?
   Yes ___ No ___
   If yes, years invested (give your best estimate): ___________

## PART 3: Sign and Date Your Claim Form.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that I have read this Claim Form and all information on this Claim Form is true and correct to the best of my knowledge.

Print Name ________________________________ Date _________________

Signature

## PART 4: Mail Your Claim Form

Your Claim Form must be postmarked by [DATE] and mailed to: [INSERT ADDRESS]

DRAFT

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Ryan Sweeney and Bryan Marshall, as individuals, and on behalf of all others similarly situated, and on behalf of the Nationwide Savings Plan,

Plaintiffs,

vs.

Nationwide Mutual Insurance Company; Nationwide Life Insurance Company; and the Investment Committee of the Nationwide Savings Plan, David Berson, David LaPaul, Kevin O'Brien, Klaus Diem, Michael Mahaffey, and Michael P. Leach,

Defendants.

Case No. 2:20-cv-01569-SDM-CMV

Judge Sarah D. Morrison

Magistrate Judge Chelsey M. Vascura

**[PROPOSED]**
**ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, APPROVING PROCEDURE AND FORM OF NOTICE, AND SCHEDULING FAIRNESS HEARING**

This matter came before the Court on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion").[1] Upon reviewing the proposed Settlement Agreement, the Preliminary Approval Motion papers, and the arguments of counsel, the Court hereby grants Plaintiffs' Preliminary Approval Motion and finds and orders as follows:

1. The Court has subject matter jurisdiction over the Action.

2. The Court preliminarily approves the Settlement Agreement in its entirety.

3. The Court has conducted an initial evaluation of the Settlement under Federal Rule of Civil Procedure 23, and preliminarily finds that the Settlement is fair, reasonable, and adequate.

[1] Unless specifically defined herein, all capitalized terms have the meaning ascribed to them in Article I of the proposed Settlement Agreement.

Subject to further consideration at the Fairness Hearing, the Court will likely be able to grant final approval of the Settlement based on the factors set forth in Rule 23(e)(2) and finally certify the Class (which is consistent with the Court's earlier class certification order, Dkt. 172) for purposes of judgment. Accordingly, the Court determines that it is appropriate to provide notice of the Settlement to the Class.

4. On [date] at [time], in Courtroom 132 of the Joseph P. Kinneary United States Courthouse, 85 Marconi Boulevard, Columbus, Ohio, 43215, the Court will hold a Fairness Hearing to (i) review any objections regarding this Settlement and/or Class Counsel's request for any Attorneys' Fees, Attorneys' Expenses, Administrative Expenses, and Service Awards, (ii) consider the fairness, reasonableness, and adequacy of the Settlement, (iii) consider whether the Court should issue a Final Approval Order approving the Settlement, awarding Attorneys' Fees and Attorneys' Expenses and Service Awards, approving Administrative Expenses incurred and a reserve for any anticipated future Administrative Expenses, and dismissing this Action with prejudice, and (iv) consider such other matters as the Court may deem appropriate.

5. No later than fourteen (14) days prior to the Fairness Hearing, Plaintiffs shall file papers in support of final approval of the Settlement and in response to any written objections. Defendants may also file a response to any objections at that time.

6. No later than fourteen (14) days prior to the deadline for Class Members to object to the Settlement, Class Counsel shall file a motion for approval of Attorneys' Fees and Attorneys' Expenses, Administrative Expenses, and Class Representative Service Awards.

7. The Court hereby approves the form and contents of the proposed Notice of Settlement, and finds that mailing copies of the Notice to Class Members by first class mail constitutes the best notice practicable under the circumstances and complies fully with the

requirements of Federal Rule of Civil Procedure 23, the United States Constitution, due process, and applicable law. No later than seventy-five (75) days following the entry of this Preliminary Approval Order, the Settlement Administrator shall disseminate the proposed Notice to the Class.

8. The Court also approves the establishment of a Settlement Website and toll-free telephone support line as set forth in the Settlement Agreement. No later than sixty (60) days following the entry of this Preliminary Approval Order, the Settlement Administrator shall establish the Settlement Website and telephone support line.

9. Any Former Participant Class Member who wishes to submit a Claim Form must do so no later than the date of the Fairness Hearing (or within 30 days of mailing of the notice set forth in Section 5.2(d) of the Settlement Agreement, if applicable).

10. Any Class Member who wishes to object to the Settlement, or any proposed Attorneys' Fees, Attorneys' Expenses, Administrative Expenses, and/or Service Awards, must file with the Clerk of Court and serve on Class Counsel and Defendants' Counsel, no later than twenty-eight (28) days before the Fairness Hearing, a statement of the objection. Any such objection must include the objector's name, mailing and email addresses, the reasons for the objection, all legal support and evidence the objector intends to rely upon (if any), whether the objector intends to appear at the Fairness Hearing, and the identity and contact information of their counsel (if any). Any Class Member who fails to timely or properly object in the manner prescribed herein shall be deemed to have waived such Class Member's objections and forever be barred from making any such objections in this Action or in any other action or proceeding, including any appeals. If a Class Member hires an attorney to represent them (at their own cost and expense), the attorney must file and serve a notice of appearance no later than twenty-eight (28) days prior to the Fairness Hearing, and if the attorney intends to be heard at the Fairness

Hearing, they must also file a pleading stating this intention no later than twenty-eight (28) days prior to the Fairness Hearing.

11. Each Class Member is preliminarily barred and enjoined from the institution or prosecution of any Plaintiffs' Released Claims against any of the Released Defendant Parties pending final approval of the Settlement.

12. Neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendants of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind.

13. In the event that the Settlement Agreement is terminated pursuant to its terms or is not finally approved by the Court, or such approval is reversed, vacated, or modified by this or any other Court, then the Parties and Class Members will be restored to their respective positions immediately before the execution of the Settlement Agreement; the Gross Settlement Amount, plus all interest and accretions thereto shall revert to the Nationwide Defendants based on their contributions to the Escrow Account (subject to Section 9.5 of the Settlement Agreement); this Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered; any order entered by the Court pursuant to the terms of the Settlement Agreement shall be treated as vacated; the fact of the Settlement Agreement and the terms contained therein shall not be admissible in any proceeding for any purpose; and the Parties shall reserve all claims, defenses, arguments, and requests for relief that might have been or might be later asserted in the Action.

14. The Court reserves the right to reschedule or adjourn the date of the Fairness Hearing by entering an order on the Court's ECF docket without further notice to the Class.

15. The Court retains jurisdiction to consider all further matters arising out of or connected to the proposed Settlement.

**IT IS SO ORDERED** this ___ day of __________, 2026.

____________________________________

Hon. Sarah Morrison
Chief District Court Judge